**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SOFIA RECA and JAMES K. SUPPLES, Individually and on Behalf of All Others Similarly Situated,<br><br>                          Plaintiffs,<br><br>       -vs.-<br><br>FLASHDOT LIMITED f/k/a PHOENIXFIN LIMITED, MEK GLOBAL LIMITED, PEKEN GLOBAL LIMITED, and PHOENIXFIN PRIVATE LIMITED (collectively d/b/a KUCOIN), CHUN (a/k/a "MICHAEL") GAN, KE (a/k/a "ERIC") TANG, and CHAINALYSIS, INC.,<br><br>                         Defendants. | Civil Action No.: 1:24-cv-06316-GHW<br><br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS FLASHDOT LIMITED, PEKEN GLOBAL LIMITED, CHUN GAN, AND KE TANG'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ...........................................................................................................4

      A.    The Parties ...............................................................................................4

      B.    Plaintiffs Were Defrauded By Bad Actors Unrelated And Unknown To Defendants ...........................................................................................5

      C.    Plaintiffs Previously Sued Other Parties To Recover Their Stolen Cryptocurrency .........................................................................................6

      D.    Plaintiffs Latched Onto Recent Enforcement Actions Against Defendants As The Basis For This Action ...............................................7

ARGUMENT .................................................................................................................................9

    I.    PLAINTIFFS' CIVIL RICO CLAIM SHOULD BE DISMISSED WITH PREJUDICE ...............................................................................................9

      A.    The Amended Complaint Fails To Adequately Allege That Defendants' Purported Racketeering Activity Caused Plaintiffs' Injury ..........................................................................................10

          1.    Defendants' Alleged Racketeering Activity Was Not The Proximate Cause Of Plaintiffs' Purported Injury ...........................11

          2.    Defendants and Chainalysis' Alleged Racketeering Activity Also Was Not The "But For" Cause Of Plaintiffs' Purported Injury .........................................................................................14

      B.    The Amended Complaint Fails To Adequately Allege The Existence Of A Requisite RICO "Enterprise"...........................................................17

      C.    The Amended Complaint Fails To Adequately Allege A "Conspiracy" Sufficient To Sustain A Civil RICO Claim Under § 1962(d)...................20

      D.    The Amended Complaint Fails To Allege A Domestic Injury ................21

    II.    PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED WITH PREJUDICE .............................................................................................22

      A.    Plaintiff Reca's Conversion And Aiding And Abetting Claims Are Time-Barred ..........................................................................................22

      B.    The Amended Complaint Fails To Plead The Required Elements For The Conversion And Aiding And Abetting Conversion Claims ..............24

i

1.    Plaintiffs' Conversion Claim Is Defective As A Matter Of Law ........................................................................24

2.    Plaintiffs' Aiding And Abetting Conversion Claim Fails As A Matter Of Law......................................................26

CONCLUSION...............................................................................................29

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*101 McMurray, LLC v. Porter*,
  2012 WL 997001 (S.D.N.Y. Mar. 26, 2012) ........................................................................20

*Acklin v. Eichner*,
  2024 WL 775191 (S.D.N.Y. Feb. 26, 2024) (Woods, J.) ...............................................10, 18

*In re Agape Litig.*,
  773 F. Supp. 2d 298 (E.D.N.Y. 2011) ................................................................................28

*Amusement Indus., Inc. v. Midland Ave. Assocs., LLC*,
  820 F. Supp. 2d 510 (S.D.N.Y. 2011)................................................................................25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................................9, 16

*Beter v. Murdoch*,
  2018 WL 3323162 (S.D.N.Y. June 22, 2018) ...............................................................14, 20

*Bigio v. Coca-Cola Co.*,
  675 F.3d 163 (2d Cir. 2012)................................................................................................28

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
  69 F. Supp. 3d 342 (S.D.N.Y. 2014)..................................................................................18

*Cedar Swamp Holdings, Inc. v. Zaman*,
  487 F. Supp. 2d 444 (S.D.N.Y. 2007)................................................................................18

*City of Almaty, Kazakhstan v. Ablyazov*,
  2018 WL 3579100 (S.D.N.Y. Jul. 25, 2018) ......................................................................22

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013)................................................................................................17

*Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  2006 WL 335357 (S.D.N.Y. Feb. 15, 2006)........................................................................27

*DDR Constr. Servs. Inc. v. Siemens Indus., Inc.*,
  770 F. Supp. 2d 627 (S.D.N.Y. 2011)................................................................................14

*DLJ Mortg. Cap., Inc. v. Kontogiannis*,
    726 F. Supp. 2d 225 (E.D.N.Y. 2010) ...................................................................10

*Doe v. Trump Corp.*,
    385 F. Supp. 3d 265 (S.D.N.Y. 2019)............................................................10, 12

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
    423 F. Supp. 2d 173 (S.D.N.Y. 2006)....................................................................22

*Empire Merchs., LLC v. Reliable Churchill LLP*,
    902 F.3d 132 (2d Cir. 2018)...................................................................10, 12, 13

*Fed. Ins. Co. v. Am. Home Assur. Co.*,
    639 F.3d 557 (2d Cir. 2011)..................................................................................23

*Flexborrow LLC v. TD Auto Fin. LLC*,
    255 F. Supp. 3d 406 (E.D.N.Y. 2017) ...................................................................21

*Franck v. N.Y. Health Care, Inc.*,
    2022 WL 4363855 (S.D.N.Y. Sept. 21, 2022).......................................................25

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*,
    479 F. Supp. 2d 349 (S.D.N.Y. 2007)...................................................................27

*Glob. Network Commc'ns, Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006).....................................................................................7

*Grgurev v. Licul*,
    229 F. Supp. 3d 267 (S.D.N.Y. 2017) (Woods, J.) ...............................................25

*Gross v. Waywell*,
    628 F. Supp. 2d 475 (S.D.N.Y. 2009)...................................................................10

*Gruber v. Gilbertson*,
    2019 WL 4458956 (S.D.N.Y. Sept. 17, 2019).........................................................9

*Gurung v. MetaQuotesLtd.*,
    2024 WL 3849460 (E.D.N.Y. Aug. 16, 2024).......................................................19

*Jus Punjabi, LLC v. Get Punjabi Inc.*,
    2015 WL 2400182 (S.D.N.Y. May 20, 2015) (Woods, J.)................................10, 11

*Kinsey v. New York Times Co.*,
    2020 WL 1435141 (S.D.N.Y. Mar. 23, 2020) .........................................................7

*Kirschner v. Bennett*,
    648 F. Supp. 2d 525 (S.D.N.Y. 2009).............................................................27, 28

iii

*Kumaran v. Nat'l Futures Assoc., LLC,*
    2022 WL 1805936 (S.D.N.Y. June 2, 2022) (Woods, J.) ......................................................24

*Lerner v. Fleet Bank, N.A.,*
    318 F.3d 113 (2d Cir. 2003) (Sotomayor, J.) ..............................................................................9

*Lewin v. Richard Avedon Found.,*
    2015 WL 3948824 (S.D.N.Y. June 26, 2015) ................................................................24, 25

*Licht v. Binance Holdings Ltd.,*
    2025 WL 624025 (D. Mass. Feb. 26, 2025) ..................................................................................9

*Licht v. Binance Holdings Ltd.,*
    2025 WL 625303 (D. Mass. Feb. 5, 2025) ............................................................... *passim*

*Lynn v. McCormick,*
    760 F. App'x 51 (2d Cir. 2019) ..................................................................................................20

*Mahmood v. Rsch. in Motion Ltd.,*
    2012 WL 242836 (S.D.N.Y. Jan. 24, 2012) ..............................................................................24

*Manhattan Telecomms. Corp., Inc. v. DialAmerica Mktg., Inc.,*
    156 F. Supp. 2d 376 (S.D.N.Y. 2001) .......................................................................................19

*Marketxt Holdings Corp. v. Engel & Reiman, P.C.,*
    693 F. Supp. 2d 387 (S.D.N.Y. 2010) .......................................................................................23

*Marks v. Energy Materials Corp.,*
    2015 WL 3616973 (S.D.N.Y. June 9, 2015) (Woods, J.) ....................................................26, 27

*Martin v. Binance Holdings, Ltd.,*
    No. 2:24-cv-01264-BJR (W.D. Wash. filed Aug. 16, 2024) ....................................................15

*Med. Marijuana, Inc. v. Horn,*
    145 S. Ct. 931 (2025) ..................................................................................................................21

*Merlino v. Knudson,*
    184 N.Y.S.3d 820 (App. Div., 2d Dep't 2023) .........................................................................23

*Meyer v. Seidel,*
    89 F.4th 117 (2d Cir. 2023) .......................................................................................................24

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n,*
    298 F.3d 768 (9th Cir. 2002) .....................................................................................................16

*Peralta v. Peralta,*
    2018 WL 1384509 (S.D.N.Y. Mar. 16, 2018) ..........................................................................15

*Petrosurance, Inc. v. Nat'l Ass'n Ins. Com'rs*,
    888 F. Supp. 2d 491 (S.D.N.Y. 2012) ................................................................15

*In re Refco Inc. Sec. Litig.*,
    2011 WL 13168450 (S.D.N.Y. Dec. 8, 2011) ......................................................28

*Regions Bank v. Wieder & Mastroianni, P.C.*,
    526 F. Supp. 2d 411 (S.D.N.Y. 2007) ................................................................26

*RJR Nabsico, Inc. v. Eur. Cmty.*,
    579 U.S. 325 (2016) ............................................................................................21

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013) ..................................................................................21

*Singh v. Illysory Sys., Inc.*,
    727 F. Supp. 3d 500 (D. Del. 2024) ....................................................................13

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008) ................................................................................23

*In re Tether & Bitfinex Crypto Asset Litig.*,
    576 F. Supp. 3d 55 (S.D.N.Y. 2021) ........................................................9, 10, 11

*United States v. Pipola*,
    83 F.3d 556 (2d Cir. 1996) ..................................................................................11

*Weir v. Cenlar FSB*,
    2018 WL 3443173 (S.D.N.Y. July 17, 2018) ......................................................19

*Yakubov v. Sharon Towers Realty*,
    227 F. App'x 64 (2d Cir. 2007) ..........................................................................23

*Yegiazaryan v. Smagin*,
    599 U.S. 533 (2023) ......................................................................................21, 22

*Zuhovitzky v. UBS AG CHE 101.329.562*,
    2023 WL 4584452 (S.D.N.Y. July 18, 2023) ......................................................10

**Statutes**

18 U.S.C. § 1962 ..........................................................................................................9

18 U.S.C. § 1964 ..........................................................................................................9

**Other Authorities**

N.Y. C.P.L.R. § 214(3) ..............................................................................................23

Defendants Flashdot Limited and Peken Global Limited (together the "Corporate Defendants") and Chun Gan and Ke Tang (together the "Individual Defendants," and collectively the "Defendants") respectfully submit this memorandum in support of their motion to dismiss Plaintiffs' Amended Class Action Complaint (ECF No. 49), dated April 14, 2025 (the "Amended Complaint," cited using "AC ¶ __") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs' lawsuit impermissibly attempts to hold Defendants liable because Plaintiffs were allegedly defrauded of their cryptocurrency years ago by bad actors entirely unrelated and unknown to Defendants.  Plaintiffs allege that these bad actors, after a long series of intermediary transactions, eventually deposited the stolen assets into one or more accounts at KuCoin and other unrelated cryptocurrency exchanges.  Both named Plaintiffs—Sofia Reca and James Supples— first attempted to sue other parties in separate litigations to recover their stolen crypto and, apparently having had no success, now set their sights on Defendants.  While Ms. Reca brought the original complaint in this action against Defendants, Plaintiffs amended the complaint after reviewing Defendants' motion to dismiss and added Mr. Supples as a Plaintiff and Chainalysis as a Defendant in an apparent attempt to salvage glaring pleading deficiencies.  However, rather than cure the fatal defects in the original complaint, the Amended Complaint instead reinforces the extraordinary disconnect between Plaintiffs' purported injuries and Defendants' (and now Chainalysis') alleged conduct.

The original complaint surmised on farfetched conjecture that bad actors sought out the KuCoin exchange because of KuCoin's allegedly deficient know your customer ("KYC") and anti-money laundering ("AML") policies intended to increase its user base and generate more transactions fees for Defendants.  The Amended Complaint now inexplicably elevates Chainalysis—which merited only a brief reference in the original complaint—to the role of co-

conspirator, alleging that KuCoin partnered with Chainalysis to obtain information that would have ferreted out the bad actors' schemes had Defendants purportedly not chosen to disregard that information.  Unsurprisingly, Plaintiffs fail to allege the terms of any agreement between Defendants and Chainalysis, nor allege why or how Chainalysis would benefit from this purported scheme.  Further, Plaintiffs inexplicably inject more steps into the already attenuated causal chain by surmising that Chainalysis could have identified the complex transactions that the bad actors used to conceal their alleged fraud, that Chainalysis would have timely alerted Defendants to this information, and that Defendants could have otherwise taken steps to prevent the movement of Plaintiffs' cryptocurrency on the KuCoin platform.

Moreover, Plaintiffs' doubling down on their flawed "getaway car" theory further exemplifies the absurdity of their claims.  Plaintiffs contend that Defendants sidestepped U.S. regulations so that Defendants could drive the "getaway car" for bad actors to generate more transaction fees for KuCoin.  But Plaintiffs' analogy is implausible; a getaway driver waits nearby, knows the particulars of the crime, and knows of and colludes with the robber.  In contrast, the Amended Complaint, even with the addition of Chainalysis, alleges that KuCoin had no knowledge of the purported bad actors who stole from Plaintiffs.

Accordingly, even when viewed under the standards applied to a motion to dismiss, the Amended Complaint fails to allege a claim for civil RICO for several independent reasons.

*First*, the Amended Complaint fails to sufficiently allege that Defendants and Chainalysis' alleged racketeering activity was either the "proximate" or "but for" cause of Plaintiffs' alleged injury, as Plaintiffs' theory that KuCoin's implementation of more robust policies would have stopped the theft of their cryptocurrency overlooks numerous intervening steps and is too attenuated and remote to establish causation.

*Second*, the Amended Complaint's "enterprise" allegations fail because Plaintiffs impermissibly group plead and fail to allege individualized misconduct by each of the Defendants and Chainalysis.

*Third*, the Amended Complaint fails to allege a RICO "enterprise" that is distinct from Defendants' normal control of KuCoin's business operations, including engaging vendors like Chainalysis.

*Fourth*, the Amended Complaint fails to allege any nefarious "common purpose" that is distinct from KuCoin's business operations and legitimate objective of obtaining transaction fees.

*Fifth*, the supposed "enterprise" as alleged in the Amended Complaint is not structured as a criminal organization with defined roles for its members.

*Sixth*, the Amended Complaint fails to adequately allege any specific information about any "agreement" involving Defendants to further a RICO conspiracy that is needed to sustain a claim under 18 U.S.C. § 1962(d), and the added alleged "partnership" between KuCoin and Chainalysis does not save Plaintiffs' claim.

*Seventh*, the Amended Complaint fails to adequately allege facts showing the requisite "domestic injury". The Amended Complaint improperly substitutes Plaintiffs' residence for allegations that properly ground their purported injury in the United States.

In a kitchen-sink approach, Plaintiffs also lob in state law conversion and aiding and abetting conversion claims based on the same set of deficient allegations. These claims are also irredeemably defective and must be dismissed as a matter of law.

As a threshold matter, New York's three-year statute of limitations bars Ms. Reca's state law claims based on the face of the Amended Complaint. Under well-established New York law,

a conversion claim accrues on the date of the alleged conversion. Any argument by Plaintiffs that equitable tolling applies strains credulity.

Further, the state law claims should be dismissed for additional, independent reasons: (1) the Amended Complaint fails to allege that Defendants were not innocent possessors or that Plaintiffs ever contacted Defendants regarding their stolen cryptocurrency; (2) at most, the conversion claim relies on deficient allegations of passive indifference by Defendants rather than well-pled allegations of some affirmative action required to sustain a conversion claim; (3) the Amended Complaint does not allege that any Defendant had the requisite "actual knowledge" of the alleged conversion that an aiding and abetting claim requires; and (4) the Amended Complaint fails to allege that any Defendant "substantially assisted" the bad actors in any way.

The Amended Complaint should be dismissed in its entirety with prejudice.

## STATEMENT OF FACTS[1]

### A.    The Parties

The Individual Defendants own a majority stake in Flashdot Limited, a Cayman Islands entity, which is the ultimate owner of Peken Global Limited, a Seychelles entity. AC ¶¶ 26, 28, 31-32. Peken Global Limited wholly owns and operates KuCoin, a major cryptocurrency exchange that was founded in 2017. *Id.* ¶ 35.[2] While Peken Global Limited is registered in Seychelles, the Amended Complaint alleges that KuCoin's employees and physical operations are in Singapore and China but does not allege that KuCoin has any presence in the United States. *Id.* ¶ 36.

---

[1] Unless otherwise indicated, the facts described herein are sourced from the Amended Complaint and are taken as true solely for the purpose of this motion.

[2] Defendants Mek Global Limited and PhoenixFin Private Limited were dissolved and removed from the corporate registers of Singapore and Seychelles, respectively, prior to the commencement of this matter.

KuCoin provides a platform for users to deposit and withdraw cryptocurrency and trade cryptocurrency among other KuCoin users and with counterparties on other cryptocurrency exchanges. *Id.* ¶ 1. KuCoin generates revenue by charging a fee to customers for each cryptocurrency transaction that takes place on its platform. *Id.* ¶ 40. According to the Amended Complaint, KuCoin hosts millions of users on its platform and facilitates billions of dollars in cryptocurrency trading annually. *Id.* ¶ 44.

Chainalysis is a blockchain analytics company with several proprietary software tools used by its customers to identify and prevent money laundering and illicit activity using cryptocurrency. *Id.* ¶ 34. KuCoin purchased Chainalysis' software to help enhance KuCoin's security and compliance. *Id.*

Ms. Reca and Mr. Supples are residents of Florida and Puerto Rico, respectively, whose cryptocurrency was supposedly stolen by unknown bad actors. *Id.* ¶¶ 22-23. Both Plaintiffs broadly disclaim having any relationship to KuCoin.[3] *Id.*

### B. Plaintiffs Were Defrauded By Bad Actors Unrelated And Unknown To Defendants

Plaintiffs allege that between May 21, 2021, and May 22, 2021, an unknown "John Doe" stole ten different types of cryptocurrencies worth approximately $1.4 million from Ms. Reca's "Atomic Wallet" account, and Mr. Supples was the victim of a similar theft of approximately $1.2 million in various cryptocurrencies stored in his "MEXC.com" account that was transferred to KuCoin in December 2024.[4] *Id.* ¶¶ 22-23, 161-63. Plaintiffs further allege that their

---

[3] While Plaintiffs allege that Ms. Reca has never "held an account with KuCoin or . . . agreed to any terms of use," AC ¶ 22, no such allegation extends to Mr. Supples. Accordingly, if Mr. Supples has used KuCoin's platform, his claims are likely subject to the binding arbitration provision in KuCoin's user agreement. Defendants reserve the right to move to compel the arbitration of Mr. Supples' claims.

[4] Atomic Wallet and MEXC.com are not affiliated with KuCoin or any Defendant.

cryptocurrency assets were transferred in several transactions through different cryptocurrency exchanges before a "material portion" was "sent to at least one account at KuCoin." *Id.* ¶¶ 22-23, 161-63. Plaintiffs also allege the KuCoin accounts that currently hold or at one time held their cryptocurrency (the Amended Complaint does not specify which) are "believed to be owned, controlled, or maintained" by John Doe scammers. *Id*. ¶ 162. Plaintiffs do not allege that they ever attempted to contact KuCoin to demand the return of their assets.

Plaintiffs allege that the John Doe scammers sought out KuCoin because it implemented deficient KYC and AML policies intended to increase its user base and generate more transaction fees. *Id.* ¶¶ 115, 231. If Plaintiffs are to be believed, KuCoin's implementation of more robust policies would have stopped the theft of their cryptocurrency from accounts wholly unrelated to KuCoin and which (allegedly) were deposited at KuCoin only after a series of intermediate transactions. Plaintiffs insist that their individual misfortune is evidence of a sprawling racketeering enterprise designed to profit from similar efforts by other bad actors. *Id.* ¶¶ 203, 271.

### C. Plaintiffs Previously Sued Other Parties To Recover Their Stolen Cryptocurrency

Both Plaintiffs have attempted to recover their stolen cryptocurrency through separate litigation. On September 24, 2021, Ms. Reca filed a complaint in the Southern District of Florida against a "John Doe" for allegedly luring her into a phishing scam and stealing her cryptocurrency. *See Reca v. Doe*, 1:21-cv-23438-KMW, ECF No. 1 (S.D. Fla. Sept. 24, 2021) [hereinafter "*Reca I*"] (*Reca I* complaint enclosed as Craner Decl. Exhibit ("Ex.") 1).[5] In the *Reca I* complaint, Ms. Reca alleged that Doe posed online as a well-known cryptocurrency writer and investor and offered

---

[5] The Court may take judicial notice of the complaints Plaintiffs filed in other actions, the allegations in the complaints, and the complaint's dismissal in *Reca I*. *See Kinsey v. New York Times Co.*, 2020 WL 1435141, at *1 n.2 (S.D.N.Y. Mar. 23, 2020); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

her an investment opportunity.  Ex. 1 ¶¶ 8-9.  To pursue that opportunity, Ms. Reca alleged that Doe provided her with an address on Atomic Wallet and instructed her to deposit cryptocurrency at that address.  *Id.* ¶¶ 10-11.  Unbeknownst to Ms. Reca, Doe allegedly had control of the Atomic Wallet account, and between May 21, 2021, and May 23, 2021, withdrew Ms. Reca's cryptocurrency, converted many of the assets into different forms of cryptocurrency, and moved it to other accounts Doe owned or controlled on other cryptocurrency exchanges, including Binance, Changenow.io, Shapeshift.io, and KuCoin.  *Id.* ¶ 12.  Ms. Reca's complaint in *Reca I* was ultimately dismissed *sua sponte* because she failed to serve Doe.  *See* Ex. 2.

On April 3, 2025, Mr. Supples was added as a named plaintiff represented by the same law firm representing Plaintiffs here in a putative class action against cryptocurrency exchange OKCoin.  *See Watt v. OKCoin USA Inc.*, 4:25-cv-00368-JSW, ECF No. 25 (C.D. Cal. Apr. 3, 2025) [hereinafter "*OKX*"] (*OKX* complaint enclosed as Ex. 3).  In *OKX*, Mr. Supples alleges that an unknown third party stole from him several cryptocurrency assets valued at more than $1.34 million.  Ex. 3 ¶ 22.  The *OKX* complaint does not specify whether those assets were part of the theft alleged here, but notably, the theft of Mr. Supples' cryptocurrency alleged in *OKX* occurred at the same time (December 2024), involved nearly the same value of cryptocurrency ($1.34 million), and is premised on the same alleged theory of liability (allegations of civil RICO, conversion, and aiding and abetting conversion).  *Id.*  ¶¶ 13, 22.  In other words, it appears Mr. Supples may be attempting to obtain the same alleged damages twice.

### D.    Plaintiffs Latched Onto Recent Enforcement Actions Against Defendants As The Basis For This Action

Apparently unable to recover their stolen cryptocurrency from the other parties they have sued, Plaintiffs filed the instant action.  The Amended Complaint largely recites pleadings from

various enforcement actions brought against Defendants.[6]  *See, e.g.*, AC ¶¶ 88-106.  Those actions concern the same alleged overarching conduct: KuCoin allowed U.S. users access to its platform without registering in the U.S. as a money transmitting business ("MTB"), an exchange, or in other capacities with U.S. regulators, and KuCoin did not maintain sufficient KYC and AML procedures as required by regulations in the U.S.  *Id.*

Plaintiffs further allege that KuCoin's deficient KYC and AML procedures were designed by Defendants to expand KuCoin's user base to generate additional transaction fees.  *Id.* ¶ 43. Plaintiffs surmise that if KuCoin had complied with all related regulations, the alleged scammers would not have stolen and laundered Plaintiffs' cryptocurrency, and Plaintiffs could be reunited with their assets.  *Id.* ¶ 115.  Notably, the Amended Complaint does not allege the John Does were U.S.-based users or knew of KuCoin's deficient procedures and singled out the KuCoin platform among dozens of cryptocurrency exchanges (including others whom Plaintiffs have accused of the same conduct that they allege against Defendants here); that Defendants had any knowledge of, relationship with, or communication with either John Doe; that Defendants had knowledge of the specific transactions involving Plaintiffs' cryptocurrency; or, that Defendants did anything more than engage in the routine tasks of operating and advising a cryptocurrency platform.

---

[6] On January 11, 2024, Defendants settled with the New York Attorney General's Office.  *New York v. Mek Global, et al.*, No. 450703-2023 (N.Y. Sup. Ct.), Dkt. No. 44.  On February 6, 2025, Defendants settled with the Department of Justice.  *United States v. Flashdot Limited, et al,* 1:24-cr-00168-ALC (S.D.N.Y.), ECF No. 20.  Defendants have also negotiated a settlement with the Commodities Future Trading Commission, pending the Commission's authorization.  *Commodity Futures Trading Commission v. Mek Global Limited, et al.,* 1:24-cv-02255-VEC (S.D.N.Y.), ECF No. 42.

**ARGUMENT**

## I.    PLAINTIFFS' CIVIL RICO CLAIM SHOULD BE DISMISSED WITH PREJUDICE

To survive a motion to dismiss under Rule 12(b)(6), plaintiffs must plead facts that "nudg[e] their claims across the line from conceivable to plausible." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs have no basis to bring a civil RICO claim. RICO was enacted to "eradicate organized crime in the United States." *In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 115 (S.D.N.Y. 2021) (citation modified). It is not meant to provide private plaintiffs with a pathway to treble damages and attorneys' fees when they are injured by unknown and unrelated third parties. *See* 18 U.S.C. §§ 1962, 1964; *Licht v. Binance Holdings Ltd.*, 2025 WL 625303, at *40 (D. Mass. Feb. 5, 2025), *Report and Recommendation Adopted*, 2025 WL 624025 (D. Mass. Feb. 26, 2025) (dismissing civil RICO claim where plaintiff's injury was purportedly caused by third-party scammers, not defendants); *see also Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 116 (2d Cir. 2003) (Sotomayor, J.) ("[RICO's] treble damages provisions are not available to remedy every possible injury that can, with some ingenuity, be attributed to a defendant's injurious conduct."). "[C]ourts should strive to flush out" meritless civil RICO claims early in litigation, *Gruber v. Gilbertson*, 2019 WL 4458956, at *5 (S.D.N.Y. Sept. 17, 2019), and routinely dismiss civil RICO claims at the pleading stage.[7] Courts also "express skepticism toward civil RICO claims" because

---

[7] *See, e.g.*, *Acklin v. Eichner*, 2024 WL 775191 (S.D.N.Y. Feb. 26, 2024) (Woods, J.); *Jus Punjabi, LLC v. Get Punjabi Inc.*, 2015 WL 2400182 (S.D.N.Y. May 20, 2015) (Woods, J.); *Empire Merchs., LLC v. Reliable Churchill LLP*, 902 F.3d 132 (2d Cir. 2018); *In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55 (S.D.N.Y. 2021); *Zuhovitzky v. UBS AG CHE 101.329.562*, 2023 WL 4584452 (S.D.N.Y. July 18, 2023); *see also Gross v. Waywell*, 628 F. Supp. 2d, 478-80

of the "potential financial rewards for plaintiffs, and the stigma that may attach to RICO defendants," which frequently result in the "overzealous" pursuit of civil RICO claims. *Zuhovitzky*, 2023 WL 4584452, at *8; *DLJ Mortg. Cap., Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 236 (E.D.N.Y. 2010).

Plaintiffs allege that Defendants are liable under RICO subsections § 1962(c) and (d). AC ¶ 13. To state a claim under § 1962(c), Plaintiffs must plead that each Defendant conducted a criminal enterprise through a pattern of racketeering activity. *See Acklin*, 2024 WL 775191, at *6. Section 1962(d) makes it unlawful "to conspire to violate" one of the other three RICO subsections. *Id.* at *15 (citing § 1962(d)). The Amended Complaint fails to state a claim under either subsection for several independent reasons.

### A.      The Amended Complaint Fails To Adequately Allege That Defendants' Purported Racketeering Activity Caused Plaintiffs' Injury

A "rigorous" standard exists in this Circuit for alleging causation under civil RICO, and courts frequently dismiss similar claims at the pleading stage for failure to allege a "causal connection between the defendant's conduct and the plaintiff's injury." *See, e.g.*, *Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 276-77 (S.D.N.Y. 2019). Here, Plaintiffs must allege that Defendants' purported racketeering activity—the alleged failure to register and inadequate AML and KYC protocols—was both the "proximate" and "but for" cause of their injury.[8] *See Tether*, 576 F. Supp. 3d at 116.

Plaintiffs do not and cannot adequately plead that Defendants' alleged racketeering activity, even if accepted as true for purposes of this motion, caused their alleged injury. Plaintiffs

---

(S.D.N.Y. 2009) (noting that, of thirty-six civil RICO cases resolved on the merits over a four-year period, thirty were dismissed under Rule 12(b)(6) and three were dismissed *sua sponte* for lack of merit).

[8] While Defendants do not concede committing any of the alleged predicate offenses, the only theoretically well-pled activity concerns the failure to register KuCoin and comply with the BSA's

do not allege that Defendants stole from them or colluded with the unrelated bad actors who allegedly stole from Plaintiffs. In fact, Plaintiffs explicitly disavow ever having interacted with Defendants. *See* AC ¶¶ 14, 22. The gravamen of Plaintiffs' claim is instead that Defendants' mere existence emboldened bad actors to scam Plaintiffs because they knew they could evade detection and launder cryptocurrency through the KuCoin platform, despite no allegations that Defendants conspired with, participated with, or had knowledge of the bad actors. *E.g.*, *id.* ¶¶ 3, 160-63. That theory requires numerous speculative leaps in logic and is far too attenuated to establish either proximate or "but for" causation under RICO.

### 1. Defendants' Alleged Racketeering Activity Was Not The Proximate Cause Of Plaintiffs' Purported Injury

Proximate causation requires a "direct" and "straightforward" connection between alleged racketeering activity and a plaintiff's injury. *See Tether*, 576 F. Supp. 3d at 116 (citations omitted). It cannot involve "'intricate, uncertain inquiries' into the extent of the defendant's responsibility for the loss." *Id.* Dismissal is required where "intervening factors attenuate the causal connection between the defendant's conduct and the plaintiff's injury." *Trump Corp.*, 385 F. Supp. 3d at 277. Courts routinely dismiss civil RICO claims where a causal link is "too remote," "purely contingent," or "indirect." *See Empire Merchs.*, 902 F.3d at 141 (quoting *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010)). At the pleading stage, courts rarely "go beyond the first step" in the causal chain when evaluating proximate causation. *Id.*

---

reporting requirements. *See* AC ¶ 208. The Amended Complaint does not adequately allege an indictable offense of any other alleged predicate acts (*see id.*), which are all variations of aiding and abetting money laundering requiring "specific intent" of furthering the underlying crime. *See United States v. Pipola*, 83 F.3d 556, 562 (2d Cir. 1996). No alleged non-conclusory facts meet that standard. *See Jus Punjabi, LLC*, 2015 WL 2400182, at *8 (dismissing civil RICO claim based on money laundering where the predicate act allegations "are no more than 'unadorned, the-defendant-unlawfully-harmed-me accusation[s]," (quoting *Ashcroft*, 556 U.S. at 678)).

Here, the Amended Complaint cannot establish proximate causation as a matter of law because the bad actors were intervening causes that severed any purported link to Plaintiffs' alleged injuries. According to Plaintiffs, the bad actors stole their cryptocurrency, converted that cryptocurrency into other forms of cryptocurrency through multiple transactions to evade detection, and later deposited some of those assets into various accounts at KuCoin and other cryptocurrency exchanges. *See* AC ¶¶ 22-23, 161-63.

Defendants are not alleged to have participated in that scheme or even known about it. For that reason alone, Defendants cannot be held liable under civil RICO for the wrongful acts of unknown, unrelated third parties. Rather than cure this fatal defect identified by Defendants' motion to dismiss the original complaint, Plaintiffs instead alleged even more links in the causal chain by adding Chainalysis, whose alleged actions further separate Defendants from Plaintiffs' alleged injuries.

Unsurprisingly, courts have dismissed civil RICO claims for lack of proximate causation at the pleading stage where similar or the same intervening factors severed the causal chain. In *Licht v. Binance Holdings Ltd.*, plaintiffs alleged that non-parties scammed them into investing cryptocurrency through accounts the scammers could access, and the scammers then stole the cryptocurrency and purportedly laundered it through Binance. *See* 2025 WL 625303, at *1. The *Licht* plaintiffs further alleged that Binance and its founder violated civil RICO by enabling the scammers to evade detection through failing to register as a MTB, violating the BSA, and facilitating money laundering—the same theory of liability Plaintiffs allege here. *Id.* at *20. In granting defendants' motion to dismiss plaintiffs' civil RICO claim, the court held that plaintiffs failed to adequately allege proximate causation because the "cause of plaintiffs' injury was

[conduct] entirely distinct from the operation of Binance as an unlicensed, unregistered MTB . . . and even entirely distinct from putative money laundering." *Id.* at *39.

Similarly, in *Singh v. Illusory Systems, Inc.*, plaintiffs alleged that defendants violated civil RICO by employing a coder who introduced a vulnerability into a cryptocurrency platform that enabled unknown non-party bad actors to execute fraudulent transactions. *See* 727 F. Supp. 3d 500, 508 (D. Del. 2024). The court dismissed the claim for lack of proximate causation, reasoning that "a series of intervening, non-racketeering acts disrupt[ed] any potential causal relationship between Defendants' putative predicate acts (operating an unlicensed money transmitting business and wire fraud) and Plaintiffs' alleged injuries." *Id.* at 508-10.

The same conclusion follows here. Any purported link between Plaintiffs' alleged injuries and Defendants' alleged racketeering activity is "too remote" to satisfy proximate causation for RICO because the causal chain depends on an overly attenuated series of speculative assumptions. *See Empire Merchs.*, 902 F.3d at 141 (alleged injury cannot be "too remote" from defendants' conduct).

In particular, the Court need look no further than paragraph 115 of the Amended Complaint to discern that Plaintiffs' theory of harm requires ***at least seven*** "steps" along the causal chain: **(1)** Had Defendants implemented AML and KYC "policies and protocols,"

> **[2]** bad actors would not have been drawn to KuCoin to launder crypto or, **[3]** if the bad actors had, they would have been prevented from laundering stolen crypto through KuCoin, or **[4]** KuCoin and the authorities would have been able to identify the bad actors and/or **[5]** track the stolen assets that were withdrawn from KuCoin. At a minimum, **[6]** Plaintiffs and members of the Class would not have lost the ability to trace and **[7]** potentially recover their stolen assets.[9] AC ¶ 115.

---

[9] Civil RICO requires a concrete, non-speculative injury to "business or property." *Beter v. Murdoch*, 2018 WL 3323162, at *5 (S.D.N.Y. June 22, 2018). To the extent Plaintiffs purport to have been harmed because they "lost the ability to trace and potentially recover their stolen assets," they lack statutory standing because their claim relies on an intangible and speculative injury to their "ability" to act and not a "concrete financial loss." *Id.* at *5-6 (no RICO standing where

This meandering sequence of logic illustrates the glaring flaws in Plaintiffs' causation theory. *See DDR Constr. Servs. Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 653 (S.D.N.Y. 2011) (no RICO where the alleged "injuries caused by defendants' conduct were, at best, harm in the fourth step"). And, Plaintiffs' allegations imply an additional six assumptions that (8) KuCoin would have flagged these particular transactions as suspicious (even though the Amended Complaint contains no allegation that these particular transactions appeared suspicious); (9) KuCoin had the technological capability to prevent the transactions from happening or freeze the underlying assets in time; (10) U.S. law enforcement would have chosen to investigate those particular transactions; (11) U.S. law enforcement would have identified evidence of wrongdoing, despite the scammers' sophisticated scheme; (12) U.S. law enforcement would have been able to seize the stolen funds and return them to Plaintiffs; and (13) Chainalysis could have assisted in completing any of the foregoing *twelve* steps. This byzantine chain of speculative inferences cannot support proximate causation under RICO because it requires the Court to take at least twelve more steps beyond the first "step." The Court need go no further in dismissing the civil RICO claim.

### 2.    Defendants and Chainalysis' Alleged Racketeering Activity Also Was Not The "But For" Cause Of Plaintiffs' Purported Injury

The failure to adequately allege "but for" causation is another independent ground for dismissal. *See supra* I.A. (both proximate and "but for" causation required for RICO). "But for" causation exists only where a plaintiff's injury would not have happened absent a defendant's alleged misconduct. *See Peralta v. Peralta*, 2018 WL 1384509, at *10 (S.D.N.Y. Mar. 16, 2018) ("[B]ut-for (or transactional) cause . . . 'mean[s] that but for the RICO violation, [plaintiff] would

---

plaintiff alleged that she had "been deprived of her right to file suit").

not have been injured.'" (quoting *UFCW Loc. 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 132 (2d Cir. 2010))); *see also Petrosurance, Inc. v. Nat'l Ass'n Ins. Comm'rs*, 888 F. Supp. 2d 491, 507 (S.D.N.Y. 2012) (no "but for" causation where plaintiff would have been harmed "even in the absence of" the alleged racketeering activity).

Plaintiffs' "but for" causation theory is fundamentally flawed because it rests on numerous faulty assumptions. For example, Plaintiffs' theory assumes that had KuCoin implemented certain procedures the bad actors: (a) would not have stolen Plaintiffs' cryptocurrency and sought to launder the stolen assets through a different platform or some other means (which the bad actors allegedly did because not all of the stolen cryptocurrency was deposited in KuCoin accounts—*see* AC ¶¶ 22-23, 161-63)[10]; (b) would have tried to launder through a different platform that was BSA-compliant; (c) would have been required by the other platform to identify themselves rather than engage anonymously; (d) would have tried to launder through another platform that had not leveraged Chainalysis software in a manner similar to KuCoin; and (e) would have been prevented from absconding with the ill-gotten cryptocurrency.[11] Moreover, to cap off each of these causal

---

[10] Indeed, Plaintiffs' counsel has filed identical lawsuits against other digital asset trading platforms alleging they *also* acted as "get-away driver[s]" for criminals to launder cryptocurrency due to deficient AML and KYC protocols—including one on behalf of Plaintiff Supples. AC ¶ 3, *Martin v. Binance Holdings, Ltd.*, No. 2:24-cv-01264-BJR (W.D. Wash. filed Aug. 16, 2024); *OKX* ¶ 4 (naming Mr. Supples).

[11] In *Licht*, the court determined it was speculative to conclude that an intermediary exchange used by the scammers complied with U.S. laws and that plaintiffs' injuries were attributable to defendants' alleged misconduct alone and not the intermediary exchange's potential non-compliance. *Licht*, 2025 WL 625303, at *40. The court also reasoned that if "the intermediary cryptocurrency exchange was complying with United States law and the [crypto] nevertheless was transferred, that only weakens plaintiffs' already speculative claim of but-for causation." *Id.* at n.53. This reasoning applies here. It is speculative, at best, to conclude that it was KuCoin's non-compliance and not any non-compliance of intermediary exchange(s) that caused Plaintiffs' alleged injury. *See* AC ¶¶ 22-23 (alleging Plaintiffs' assets were held on Atomic Wallet and MEXC, and that the bad actors converted those assets into other forms before transferring them to KuCoin).

leaps, Plaintiffs assume they would have been able to recover their stolen cryptocurrency. "[T]his type of speculative 'but for' causation is insufficient to state a RICO violation." *Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n*, 298 F.3d 768, 774 (9th Cir. 2002); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Similarly, Plaintiffs' theory assumes that the bad actors would not have been able to launder the stolen cryptocurrency through KuCoin's platform even if KuCoin had the protections that Plaintiffs contend did not exist. That assumption is overly speculative given the complex, multi-step scheme that the hackers allegedly undertook before interacting with KuCoin. *See* AC ¶¶ 161-63. As noted, for Plaintiffs to recover their assets, KuCoin would have needed to implement compliant procedures, register with U.S. regulators, flag the specific transactions involving Plaintiffs' crypto as suspicious, and freeze the underlying assets. *See supra* I.A.1. Then U.S. law enforcement would have had to elect to investigate the transactions, find evidence of wrongdoing, seize the underlying assets, and return them to Plaintiffs. *Id.* Plaintiffs allege no non-conclusory facts to explain how any of these hypothetical events would have plausibly happened. *Licht*, 2025 WL 625303, at *38 (no "but for" causation where plaintiffs failed to allege a "non-conclusory, non-speculative" basis to conclude that Binance would have flagged the scammers' transactions as suspicious, frozen their accounts, and reported the transactions to FinCEN).

Indeed, Plaintiffs' allegations disprove their theory. Plaintiffs concede that KuCoin **had** implemented AML and KYC procedures prior to the alleged theft of Mr. Supples' cryptocurrency, and the bad actor purportedly stole from Mr. Supples and put those stolen assets on the KuCoin exchange. *See* AC ¶¶ 161-63, 236. Accordingly, that Plaintiffs' "harm was directly caused by the scammers, not" Defendants, is fatal to their claim. *See Licht*, 2025 WL 625303, at *40.

### B.    The Amended Complaint Fails To Adequately Allege The Existence Of A Requisite RICO "Enterprise"

The Amended Complaint also fails as a matter of law because it does not adequately allege that Defendants and Chainalysis organized a required racketeering "enterprise."  A RICO enterprise can consist of either a legal entity or a "group of individuals associated in fact."  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013).[12]  Further, the enterprise must be "distinct" from each defendant.  *See id.* ("[A] plaintiff must allege the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name.") (citation modified).  This requirement "cannot be evaded by alleging that a corporation has violated the statute by conducting an enterprise that consists of itself plus all or some of its officers or employees."  *Id.* at 121.  For an association-in-fact to constitute an enterprise, the members "must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes."  *Id.* at 120 (quoting *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004)).  Moreover, pleadings must allege "solid information regarding the hierarchy, organization, and activities" of the enterprise and "explain each participant's role in the alleged course of fraudulent or illegal conduct."  *See Acklin*, 2024 WL 775191, at *14.  Plaintiffs fail to adequately allege the existence of a RICO enterprise in several ways, each of which warrants dismissal.

*First*, the Amended Complaint continues to impermissibly group all Defendants and alleges that all Defendants are both RICO "persons" and comprise a RICO "enterprise."  *See Acklin*, 2024 WL 775191, at *14 (finding failure to plead an enterprise where plaintiffs "attribute[d] much of the alleged conduct . . . to an oft-undefined subset of Defendants"); *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 360 n.9 (S.D.N.Y. 2014) ("Due

---

[12] *See* AC ¶ 184.

to the complaint's failure to make any distinct allegations regarding the particular defendants' roles in the alleged racketeering, Plaintiffs have not alleged a RICO 'person' distinct from the supposed 'enterprise.'").  The Amended Complaint repeatedly references Defendants using collective terms like "Defendants," the "Individual Defendants," the "Defendants," "KuCoin Crypto-Wash Enterprise," all Defendants listed out as a group, and "KuCoin" as an interchangeable proxy for all Defendants generally.  *See, e.g.*, AC ¶¶ 1-8, 14-15, 36-58, 66-70, 76-78, 80-83, 86-87, 93-106, 113, 115-28, 130, 133-60, 164-68, 181-86(d), 186(g)-208, 210-13, 224-25, 227-45; *see also Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007) ("[M]erely stringing together a list of defendants and labeling them an enterprise is insufficient to state a RICO claim.").  In doing so, the Amended Complaint impermissibly fails to distinguish among any specific acts that each Defendant engaged in as a RICO "person" and the supposed "enterprise," which is both troubling given the addition of another defendant, Chainalysis, and unsurprising given the highly speculative nature of Plaintiffs' allegations.

**Second**, Plaintiffs fail to allege facts to establish that the supposed "enterprise" was distinct from KuCoin acting through its owners or vendors.  As alleged, the Individual Defendants owned and Chainalysis was a vendor of KuCoin and are otherwise not alleged to have acted in any other capacity.  As such, no Defendant is "distinct" from the purported enterprise.  *See Manhattan Telecomms. Corp., Inc. v. DialAmerica Mktg., Inc.*, 156 F. Supp. 2d 376, 381-83 (S.D.N.Y. 2001) (no distinctness where alleged enterprise was between defendant and its customers who were "no more united in an enterprise than a vendor and any of its customers"); *Weir v. Cenlar FSB*, 2018 WL 3443173, at *5-7 (S.D.N.Y. July 17, 2018) (no association-in-fact enterprise between defendants and their vendors where plaintiffs alleged that vendors conducted business operations as defendants instructed).

**Third**, the Amended Complaint fails to allege a "common purpose" of the supposed RICO enterprise distinct from KuCoin's legitimate objective to generate transaction fees and Chainalysis' legitimate objective to receive payment for its software services.  Plaintiffs' theory appears to be that the supposed "common purpose" of the alleged enterprise was the normal business pursuit of the transaction fees that KuCoin charges for the use of its platform and Chainalysis' purported "financial benefits from its partnership with KuCoin."  *See, e.g.*, AC ¶¶ 1, 30, 34, 43, 46, 77, 181, 188, 196.  The pursuit of those revenues cannot constitute a common purpose under RICO because those are legitimate business objectives divorced from the alleged criminal conduct.  *See Gurung v. MetaQuotesLtd.*, 2024 WL 3849460, at *1, *9 (E.D.N.Y. Aug. 16, 2024) (finding no common purpose where the alleged profit motive was based on "standard business transaction[s] . . . in exchange for a monthly fee" for software services provided to a cryptocurrency exchange that allegedly allowed bad actors to manipulate user accounts).

**Finally**, the Amended Complaint introduces specious allegations that, if anything, render the composition of the supposed criminal enterprise even more nebulous.  While the Amended Complaint identifies Chainalysis as a new participant in the apparent conspiracy, Plaintiffs impermissibly lump Chainalysis together with Defendants and allege nothing about the organizational structure of the supposed enterprise beyond an alleged "partnership" existing between KuCoin and Chainalysis.  Absent from the Amended Complaint are any well-pled allegations describing the purported agreement that Defendants and Chainalysis entered to work together towards nefarious ends, what role each had in the supposed criminal scheme, or how the standard commercial relationship between them provided the basis for a criminal organization. *See Beter*, 2018 WL 3323162, at *6 (no RICO enterprise where plaintiff failed to identify a "ringleader" or "otherwise provide 'solid information regarding the hierarchy, organization, and

activities'" of the enterprise); *101 McMurray, LLC v. Porter*, 2012 WL 997001, at *7 (S.D.N.Y. Mar. 26, 2012) (similar). Taken to its logical extreme, Plaintiffs' theory means that merely engaging a vendor to perform certain services could establish the basis for a criminal enterprise. There is no basis in law for that proposition.

### C.    The Amended Complaint Fails To Adequately Allege A "Conspiracy" Sufficient To Sustain A Civil RICO Claim Under § 1962(d)

Plaintiffs fail to allege a substantive violation of § 1962(c) for the numerous reasons discussed above. Based on that alone, Plaintiffs' "conspiracy" claim under § 1962(d) fails as a matter of law. *See Lynn v. McCormick*, 760 F. App'x 51, 54 (2d Cir. 2019) ("[F]ailure to plead a substantive RICO claim under 18 U.S.C. § 1962(c) necessarily defeats [plaintiffs'] conspiracy claim under 18 U.S.C. § 1962(d)."). The Court need go no further in dismissing the § 1962(d) claim.

But Plaintiffs' claim is also legally defective because the Amended Complaint does not allege any agreement among Defendants, or between Defendants and Chainalysis, to violate RICO. A RICO conspiracy claim "should be more than a conclusory add-on at the end of a complaint." *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 425 (E.D.N.Y. 2017). The "core of a RICO civil conspiracy is an agreement to commit predicate acts," and a plaintiff must allege "specifically" that ***each defendant*** entered such an agreement to facilitate a pattern of racketeering activity. *Id.* (quoting *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990)).

Plaintiffs' spartan allegations (AC ¶¶ 198-99) remain unmodified from the original complaint and including Chainalysis does nothing to change allegations that are too conclusory to satisfy § 1962(d). *Flexborrow*, 255 F. Supp. 3d at 425 (dismissing RICO conspiracy claim where "plaintiffs have only summarily alleged that there was an illicit agreement"); *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) ("[W]e are not required to credit conclusory allegations or legal

conclusions couched as factual allegations.").  While Plaintiffs alleged that a "partnership" existed between "KuCoin" and Chainalysis, the Amended Complaint fails to state the terms of the actual, improper "agreement" between Chainalysis and any of the Defendants, rather than just "KuCoin" broadly.  AC ¶ 70.  In fact, the purpose of the partnership, even as Plaintiffs alleged, was to "further deepen KuCoin's commitment to security and compliance," not to violate RICO.  *Id.*  Defendants thus cannot be held liable under § 1962(d) because of KuCoin's engagement of Chainalysis as a vendor.

### D.    The Amended Complaint Fails To Allege A Domestic Injury

To bring a civil RICO claim, plaintiffs must "allege and prove a domestic injury to business or property."  *RJR Nabsico, Inc. v. Eur. Cmty.*, 579 U.S. 325, 354 (2016).  Plaintiffs satisfy this requirement if "the circumstances surrounding the injury" "sufficiently ground the injury in the United States, such that it is clear the injury arose domestically." *Yegiazaryan v. Smagin*, 599 U.S. 533, 545 (2023); *see Med. Marijuana, Inc. v. Horn*, 145 S. Ct. 931, 941-42 (2025) (affirming the *Yegiazaryan* approach).

The Amended Complaint contains no well-pled facts to establish that Plaintiffs sustained a domestic injury.  Plaintiffs merely toss in the conclusory allegations that their cryptocurrency was "located in" the U.S. or "housed on U.S. servers."  AC ¶¶ 22-24.  But the only conceivable factual support for these allegations is the location of each Plaintiff's residence, which does not support a domestic injury.  *See City of Almaty v. Ablyazov*, 2018 WL 3579100, at *3 (S.D.N.Y. July 25, 2018) (explaining that the Second Circuit employs a "property-focused approach" and not a "residency-based test").  KuCoin is a cryptocurrency exchange with foreign owners that is operated overseas.  AC ¶ 36.  And while the Amended Complaint alleges little regarding the nature of the scams to which Plaintiffs fell victim, Plaintiffs apparently stored their cryptocurrency in

accounts of foreign companies "Atomic Wallet" and "MEXC".[13]  *See Licht*, 2025 WL 625303, at

*42 ("Binance is a Cayman Island corporation, and there is no claim that the stolen cryptocurrency

made its way to the United States.  Nor is there any well-pled allegation that the stolen

cryptocurrency originated in the United States."); *see also* AC ¶¶ 22-23.  Taken together, these

circumstances are insufficient to "ground any injury in the United States." *Yegiazaryan*, 599 U.S.

at 545.

## II.    PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

### A.    Plaintiff Reca's Conversion And Aiding And Abetting Claims Are Time-Barred

New York's three-year statute of limitations bars Ms. Reca's conversion and aiding and

abetting claims.[14]  N.Y. C.P.L.R. § 214(3); *Merlino v. Knudson*, 184 N.Y.S.3d 820, 824 (App.

Div., 2d Dep't 2023); *Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387,

393 (S.D.N.Y. 2010) ("The statute of limitations for [an] aiding and abetting claim is determined

by the underlying tort.").  Under New York law, these claims accrued "when the conversion or

taking occurred . . . not from the discovery or the exercise of diligence to discover" the conversion.

*Merlino*, 184 N.Y.S.3d at 824 (collecting cases and affirming dismissal of conversion claim as

time-barred); *Marketxt Holdings*, 693 F. Supp. 2d at 397-98 (dismissing aiding and abetting

conversion claims).  In other words, the claims accrued when the conversion happened, "even

where the property owner was unaware of the unlawful taking at the time it occurred."  *Yakubov*

---

[13] *See Contact Us*, ATOMIC WALLET, https://atomicwallet.io/contact-us (last visited July 29, 2025); https://www.mexc.com ("MEXC is currently not supported in your region") (last visited July 29, 2025).    The Court may take judicial notice of information on a company's website. *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) (citing Fed. R. Evid. 201(b)) (other citations omitted).

[14] The parties agree that New York law governs the conversion and aiding and abetting claims. "[W]here the parties agree that New York law controls, this is sufficient to establish choice of law."  *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

*v. Sharon Towers Realty*, 227 F. App'x 64, 65 (2d Cir. 2007) (affirming dismissal of conversion claim as time-barred).  Further, a statute of limitations argument, while ordinarily an affirmative defense, can be raised "in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

It is clear on the face of the Amended Complaint that Ms. Reca's tort claims are time-barred.  The Amended Complaint specifies that Ms. Reca's cryptocurrency was stolen between May and July 2021, more than three years before Ms. Reca brought this action in August 2024. AC ¶¶ 22, 161-62.[15]  Thus, Ms. Reca's claims for conversion and aiding and abetting conversion are time-barred.

In Ms. Reca's Letter in Response to Defendants' Pre-Motion Letter (ECF No. 38) ("Reca's Letter"), Ms. Reca contends that, even if the statute of limitations period has run, the tort claims should be equitably tolled because she "exercised reasonable diligence by attempting to sue the bad actor who stole her crypto."  Reca's Letter at 3 n.4.  But, as Ms. Reca's ***own authority*** acknowledges, equitable tolling only applies in "rare and exceptional circumstances" that are plainly not present here.  *See Kumaran v. Nat'l Futures Assoc., LLC*, 2022 WL 1805936, at *4 (S.D.N.Y. June 2, 2022) (Woods, J.) (citation modified); *Lewin v. Richard Avedon Found.*, 2015 WL 3948824, at *5 (S.D.N.Y. June 26, 2015) (quoting *Phillips v. Generations Fam. Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013)); Reca's Letter at 3 (citing *Lama v. Malik*, 58 F. Supp. 3d 226 (E.D.N.Y. 2014)).  Under New York law, equitable tolling "may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deceptions ***to refrain from filing a timely action***."  *Meyer v. Seidel*, 89 F.4th 117, 130 (2d Cir. 2023) (quoting

---

[15] As discussed above, Ms. Reca identified in the *Reca I* complaint the cryptocurrency assets that she alleges were placed on KuCoin's platform, which are the same assets at issue in this matter.

*Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007)); *Mahmood v. Rsch. in Motion Ltd.*, 2012 WL 242836, at *5 (S.D.N.Y. Jan. 24, 2012) ("a key aspect of equitable tolling" for a conversion claim "is affirmative conduct by the adverse party that is the primary reason why the claimant failed to pursue his claims in a timely fashion").

Neither the Amended Complaint nor Ms. Reca's letter allege that Defendants prevented Ms. Reca from discovering sufficient facts to bring her claims in a timely fashion and thus equitable tolling does not apply. Ms. Reca was aware of and could have pursued her claims at an earlier date, as the *Reca I* action demonstrates, which identified KuCoin as one of several cryptocurrency exchanges through which John Doe allegedly laundered her cryptocurrency. *See* Ex. 1 ¶ 12; *Lewin*, 2015 WL 3948824, at *5 ("equitable tolling . . . is only available when the party is unable, through due diligence, to discover that he has any claim at all.") (quoting *Ruso v. Morrison*, 695 F. Supp. 2d 33, 46 (S.D.N.Y. 2010)).

Ms. Reca's conversion and aiding and abetting claims should therefore be dismissed with prejudice. *See Franck v. N.Y. Health Care, Inc.*, 2022 WL 4363855, at *16 (S.D.N.Y. Sept. 21, 2022) ("Claims barred by the statute of limitations are dismissed with prejudice.").

**B.  The Amended Complaint Fails To Plead The Required Elements For The Conversion And Aiding And Abetting Conversion Claims**

Failure to plead the required elements of the state law claims provides a separate, independent basis for dismissal of Plaintiffs' claims.

**1.  Plaintiffs' Conversion Claim Is Defective As A Matter Of Law**

To survive dismissal of their conversion claim, Plaintiffs must adequately allege that Defendants "intentionally and without authority, assume[d] or exercise[d] control over personal property belonging to someone else." *Grgurev v. Licul*, 229 F. Supp. 3d 267, 285 (S.D.N.Y. 2017) (Woods, J.) (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y.

2006)).  Conversion requires more than allegations of passive indifference: "[s]ome ***affirmative act***—asportation by the defendant or another person, denial of access to the rightful owner or assertion to the owner of a claim on the goods, sale or other commercial exploitation of the goods by the defendant—has always been an element of conversion." *Amusement Indus., Inc. v. Midland Ave. Assocs., LLC*, 820 F. Supp. 2d 510, 534 (S.D.N.Y. 2011) (emphasis added) (quoting *State v. Seventh Regiment Fund, Inc.*, 774 N.E.2d 702, 711 (N.Y. 2002)).

However, when a defendant's possession of property was "initially lawful," the defendant is not liable for conversion "unless the defendant refuses the owner's demand to return the property or wrongfully transfers or disposes of it before a demand is made." *Regions Bank v. Wieder & Mastroianni, P.C.*, 526 F. Supp. 2d 411, 414 (S.D.N.Y. 2007).  This is true even when the defendant is an innocent possessor of allegedly stolen or tainted property. *See Marks v. Energy Materials Corp.*, 2015 WL 3616973, at *3 (S.D.N.Y. June 9, 2015) (Woods, J.).

Plaintiffs do not allege that Defendants were not innocent possessors of Plaintiffs' cryptocurrency and can be liable for conversion.  ***First,*** Plaintiffs do not allege that they have asked and that Defendants have refused to return their property (to the extent Defendants are still in possession of all or some of it) prior to filing the original or Amended Complaint.

***Second,*** Plaintiffs do not allege that Defendants unlawfully possessed Plaintiffs' cryptocurrency.  While the Amended Complaint strains to establish that Defendants may have been generally aware that "blacklisted" accounts operated by bad actors used the KuCoin platform, AC ¶¶ 53-56, the Amended Complaint does not allege that Defendants were aware of the tainted origins of Plaintiffs' cryptocurrency and nonetheless allowed it to be stored on the KuCoin platform, nor that these "blacklisted" accounts were involved in the theft of Plaintiffs' cryptocurrency.  The Amended Complaint alleges that KuCoin's deficient policies made

Defendants unable to "form a reasonable belief" about the identity of its users and the origin of cryptocurrency on the KuCoin platform, such that Defendants could not, and in fact did not, understand the purported origin of Plaintiffs' assets.  AC ¶ 134.

*Third,* mere allegations of passive indifference, insomuch as Defendants allegedly created a digital environment that "enabled" bad actors to defraud cryptocurrency owners and otherwise failed to monitor the KuCoin platform, falls far short of the pleading requirements for conversion. *See* AC ¶¶ 6, 200; *Marks*, 2015 WL 3616973, at *5 (defendant was an innocent possessor where "Plaintiff alleged only that [Defendant] was 'on notice of the need' to inquire").  Moreover, Plaintiffs allege that the purported thefts of cryptocurrency involved a series of complex transactions through different exchanges, AC ¶ 163, and provide no basis for how Defendants' KYC policies could have identified these transactions as suspicious even with more rigorous monitoring (or why they did not for Plaintiff Supples, whose cryptocurrency was allegedly transferred to the KuCoin exchange after KuCoin implemented KYC policies in 2023).

## 2.    Plaintiffs' Aiding And Abetting Conversion Claim Fails As A Matter Of Law

Under New York law, aiding and abetting conversion requires (i) "actual knowledge" of the underlying violation and (ii) substantial assistance. *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 544 (S.D.N.Y. 2009).  To survive a motion to dismiss, Plaintiffs "must allege facts giving rise to a 'strong inference' of [Defendants'] actual knowledge of the underlying harm." *Id.*  "While wrongful intent is not an essential element of the conversion, a plaintiff must show that the defendant aided and assisted the converter with ***culpable knowledge*** that such funds did not belong to the converter." *Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2006 WL 335357, at *5 (S.D.N.Y. Feb. 15, 2006) (citation modified).  "Allegations of constructive knowledge or recklessness are insufficient." *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp.

2d 349, 367 (S.D.N.Y. 2007).   Further, a plaintiff must show that defendants "affirmatively assisted" or "helped conceal" the underlying harm.  *Kirschner*, 648 F. Supp. 2d at 544 (internal quotations omitted).

Plaintiffs' aiding and abetting conversion claim fails because the Amended Complaint does not plead either of the required elements.  ***First***, the Amended Complaint does not allege that any Defendant had "actual knowledge" of the bad actors' purported theft of Plaintiffs' cryptocurrency. The Amended Complaint's only "support" for this element of Plaintiffs' claims are the wholly conclusory allegations that Defendants "knew that bad actors were transferring crypto to and from KuCoin" or "knew that cryptocurrency stolen from Plaintiffs and the Class members had been transferred to accounts on KuCoin's exchange."  AC ¶¶ 244, 252.  The Amended Complaint lacks non-conclusory allegations demonstrating ***how*** Defendants had actual knowledge that the transfers of Plaintiffs' assets were unlawful or initiated by a bad actor.  *See Bigio v. Coca-Cola Co.*, 675 F.3d 163, 175 (2d Cir. 2012) (affirming dismissal of aiding and abetting conversion claim based on conclusory allegations); *see also supra* Section II.B.1.  Merely leveraging Chainalysis software to help KuCoin detect and prevent illicit activity does not amount to actual knowledge that the assets in question were stolen.  *See* AC ¶ 259.  Accordingly, the Amended Complaint does not satisfy the "heavy" burden of demonstrating actual knowledge.  *In re Agape Litig.*, 773 F. Supp. 2d 298, 325-27 (E.D.N.Y. 2011) (dismissing aiding and abetting conversion claim).

***Second***, the Amended Complaint fails to sufficiently plead that any Defendant provided the required affirmative assistance to the bad actors' theft and laundering of Plaintiffs' property. At most, Plaintiffs allege that KuCoin's allegedly deficient policies passively "enabled" bad actors, whose underlying schemes occurred independently of the KuCoin platform.  *See* AC ¶¶ 6, 47, 69, 113-16.  But New York courts have consistently held that an entity does not provide substantial

assistance to "any customer wrongdoing simply by maintaining a[n] . . . account for the wrongdoer and processing funds in and out of that account." *In re Refco Inc. Sec. Litig.*, 2011 WL 13168450, at *12 (S.D.N.Y. Dec. 8, 2011) (collecting cases). The Amended Complaint's allegations are therefore insufficient to create the "strong inference" required to show that Defendants directly contributed to the conduct constituting conversion. *See Kirschner*, 648 F. Supp. 2d at 544. The aiding and abetting conversion claims should be dismissed.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.


Dated: July 29, 2025             Respectfully submitted,
      New York, New York

ALLEN OVERY SHEARMAN STERLING US LLP

By:   */s/ Matthew L. Craner*
      Matthew L. Craner
      Sean Boren
      599 Lexington Avenue
      New York, NY 10022-6069
      Tel: (212) 848-4000
      Fax: (212) 848-7179
      matthew.craner@aoshearman.com
      sean.boren@aoshearman.com

Joseph Samuels (admitted *pro hac vice*)
Erin Downey (admitted *pro hac vice*)
1101 New York Avenue NW
Washington, D.C. 20005
Tel: (202) 638-3800
joseph.samuels@aoshearman.com
erin.downey@aoshearman.com

*Counsel for Defendants Flashdot Limited,*
*Peken Global Limited, Chun Gan, and Ke Tang*

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(c)

Pursuant to Local Rule of Civil Procedure 7.1(c), the undersigned attorney of record hereby certifies that the total number of words contained in the foregoing brief, exclusive of the caption, any index, table of contents, table of authorities, signature block, and any required certificates, but including footnotes, is 8,746 words. Accordingly, the undersigned attorney of record hereby certifies that the foregoing brief complies with the requirement that briefs in support of motions may not exceed 8,750 words. In preparing this certificate, I have relied on the word count of the word-processing program used to prepare this brief.

Dated: July 29, 2025                    */s/ Matthew L. Craner*
      New York, New York              Matthew L. Craner