UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:  
SOFIA RECA and JAMES K. SUPPLES,         :
Individually and on Behalf of All Others         :
Similarly Situated,         :
:  
                      Plaintiff,       :     Civ. No. 1:24-cv-06316-GHW-SLC
:  
          - against -         :
:  
FLASHDOT LIMITED f/k/a PHOENIXFIN   :
LIMITED, MEK GLOBAL LIMITED,       :
PEKEN GLOBAL LIMITED, and         :
PHOENIXFIN PRIVATE LIMITED         :
(collectively d/b/a KUCOIN), CHUN (a/k/a   :
"MICHAEL") GAN, KE (a/k/a "ERIC")     :
TANG, and CHAINALYSIS, INC.,         :
:  
                    Defendants.     :
:  
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT CHAINALYSIS INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

                  Alexander C. Drylewski
                  Lara A. Flath
                  James M. Johnston
                  SKADDEN, ARPS, SLATE,
                    MEAGHER & FLOM LLP
                  One Manhattan West
                  New York, NY 10001

                  *Counsel for Defendant Chainalysis Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND .................................................................................................................. 3

    A.    KuCoin Licenses Chainalysis's Compliance Tools ................................ 3

    B.    After Unidentified Thieves Steal Plaintiffs' Assets on Other Trading Platforms, Plaintiffs Sue the KuCoin Defendants .................................... 4

    C.    Plaintiffs Tack-On Chainalysis To Try to Conjure A RICO Theory ....... 4

ARGUMENT ........................................................................................................................ 5

I.    PLAINTIFFS FAIL TO STATE A VIABLE RICO CLAIM AGAINST CHAINALYSIS (COUNT I) ...................................................................... 5

    A.    Plaintiffs Fail to Plead Chainalysis's Participation in a RICO Enterprise ............. 6

    B.    Plaintiffs Fail to Plead That Chainalysis Engaged in Two Predicate Acts ............. 8

    C.    Plaintiffs Fail to Plead a RICO Conspiracy Against Chainalysis ........... 9

    D.    Plaintiffs Fail to Plead That Chainalysis's Alleged Conduct Was the But-For or Proximate Cause of Their Injuries ................................................ 9

II.    PLAINTIFFS FAIL TO STATE AN AIDING AND ABETTING CONVERSION CLAIM AGAINST CHAINALYSIS (COUNT III) ................ 12

CONCLUSION .................................................................................................................... 14

## TABLE OF AUTHORITIES

**CASES**                                                                **PAGE(S)**

*Achtman v. Kirby, McInerney & Squire, LLP*,
    464 F.3d 328 (2d Cir. 2006) ............................................................................7, 12

*Alarmex Holdings, LLC v. JP Morgan Chase Bank, N.A.*,
    48 N.Y.S.3d 19 (1st Dep't 2017) ...........................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................3, 5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................3, 5

*Berman v. Morgan Keegan & Co., Inc.*,
    2011 WL 1002683 (S.D.N.Y. Mar. 14, 2011),
    *aff'd*, 455 F. App'x 92 (2d Cir. 2012) .....................................................................13

*Bigio v. Coca-Cola Co.*,
    675 F.3d 163 (2d Cir. 2012) ...................................................................................13

*Democratic National Committee v. Russian Federation*,
    392 F. Supp. 3d 410 (S.D.N.Y. 2019) ..................................................................6, 8

*Doe v. Trump Corp.*,
    385 F. Supp. 3d 265 (S.D.N.Y. 2019) .....................................................................11

*Edmondson v. Raniere*,
    751 F. Supp. 3d 136 (E.D.N.Y. 2024) ................................................................10, 11

*Empire Merchants, LLC v. Reliable Churchill LLLP*,
    2017 WL 5559030 (E.D.N.Y. Mar. 16, 2017), *aff'd*, 902 F.3d 132 (2d Cir. 2018) .....10, 12

*Goldfine v. Sichenzia*,
    118 F. Supp. 2d 392 (S.D.N.Y. 2000) .................................................................6, 7, 9

*Huang v. Hong Kong & Shanghai Banking Corp. LTD*,
    2022 WL 4123879 (S.D.N.Y. Sept. 9, 2022) ...........................................................13

*Kaufman v. Cohen*,
    760 N.Y.S.2d 157 (1st Dep't 2003)..........................................................................14

*Khan Funds Management America, Inc. v. Nations Technologies Inc.*,
    2023 WL 6124801 (S.D.N.Y. Sept. 19, 2023) .........................................................10

*Kirschner v. Bennett*,
    648 F. Supp. 2d 525 (S.D.N.Y. 2009) ..............................................................................13

*Kumaran v. Vision Financial Markets, LLC*,
    2022 WL 18774949 (S.D.N.Y. Aug. 4, 2022), *report and recommendation adopted*, 2022 WL 17540669 (S.D.N.Y. Dec. 6, 2022) ................................................6, 7

*Oki Semiconductor Co. v. Wells Fargo Bank, National Association*,
    298 F.3d 768 (9th Cir. 2002) ....................................................................................10, 12

*Petrosurance, Inc. v. National Association of Insurance Commissioners*,
    888 F. Supp. 2d 491 (S.D.N.Y. 2012), *aff'd*, 514 F. App'x 51 (2d Cir. 2013) .................12

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ........................................................................................................6, 7

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
    145 S. Ct. 1556 (2025) .....................................................................................................8, 9

*In re Tether & Bitfinex Crypto Asset Litigation*,
    576 F. Supp. 3d 55 (S.D.N.Y. 2021) ............................................................................10, 11

*Western Energy Opportunities II, LLC v. Finalis Securities, LLC*,
    2025 WL 935201 (S.D.N.Y. Mar. 26, 2025) ........................................................................8

*Williams v. Affinion Group, LLC*,
    889 F.3d 116 (2d Cir. 2018) .................................................................................................9

## STATUTES

18 U.S.C. § 1962(c) ......................................................................................................................9

18 U.S.C. § 1962(d) ......................................................................................................................9

18 U.S.C. § 1964(c) ....................................................................................................................10

Defendant Chainalysis Inc. ("Chainalysis") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Complaint (ECF 49, "AC") with prejudice. As applicable, Chainalysis also expressly adopts and incorporates by reference the arguments set forth in the KuCoin Defendants'[1] memorandum of law in support of their motion to dismiss the Amended Complaint (ECF 66, "KuCoin Motion").

## PRELIMINARY STATEMENT

Plaintiffs' lawsuit is a misguided attempt to hold Defendants liable for the actions of unidentified third-party criminals who stole Plaintiffs' digital assets and later transferred those assets to the KuCoin platform, allegedly to launder them. This theory generally lacks merit for all the reasons set forth in the KuCoin Defendants' motion to dismiss. But as to Chainalysis—which was not initially named as a defendant but later tacked-on to the Amended Complaint in an attempt to manufacture a RICO claim—Plaintiffs' claims are even further afield.

Chainalysis is a blockchain analysis company that creates compliance tools used by private parties, government regulators, and law enforcement agencies to monitor and analyze digital asset transactions. As alleged, KuCoin purchased compliance software from Chainalysis. Plaintiffs do not—and cannot—allege that Chainalysis participated in any way in the theft of Plaintiffs' assets, was even aware of the theft, or had any relationship with Plaintiffs at all. Nor do Plaintiffs allege that Chainalysis owned, operated, or controlled the KuCoin platform, or had any involvement in or knowledge of the alleged laundering activities. To the contrary, the Amended Complaint admits that Chainalysis's tools "enabled KuCoin to have access to information about illicit transactions" in order to prevent them. (AC ¶ 34.) Plaintiffs' convoluted attempt to rope Chainalysis into this

---

[1] Defendants Flashdot Limited f/k/a PhoenixFin Limited, Mek Global Limited, Peken Global Limited, PhoenixFin Private Limited, Chun Gan, and Ke Tang are collectively referred to herein as the "KuCoin Defendants."

lawsuit should be rejected, and the Amended Complaint should be dismissed as to Chainalysis with prejudice for multiple independent reasons.

First, Plaintiffs do not and cannot plead that Chainalysis participated in the operation or management of any alleged "RICO enterprise." (*Infra* § I.A.) The Amended Complaint does not contain a single non-conclusory allegation that Chainalysis aided, or was even aware of, the theft or subsequent laundering of Plaintiffs' digital assets. In fact, Plaintiffs' theory as to Chainalysis is nonsensical, as they admit Chainalysis's products were provided to KuCoin in order to *prevent* illicit transactions—not aid them.

Second, for similar reasons, Plaintiffs do not plead that Chainalysis engaged in two or more RICO predicate acts. (*Infra* § I.B.) The Amended Complaint asserts alleged predicate acts related to the operation of an unlicensed money transmitting business and money laundering (AC ¶ 208), but includes no facts that Chainalysis engaged in either.

Third, Plaintiffs fail to state a RICO conspiracy claim against Chainalysis because they do not plead that Chainalysis entered into an agreement to commit a substantive RICO offense. (*Infra* § I.C.)

Fourth, Plaintiffs cannot plead that Defendants' alleged conduct was the but-for and proximate cause of their losses, as they must. (*Infra* § I.D.) As to Chainalysis in particular, Plaintiffs' theory of causation is non-existent. The Amended Complaint alleges that Chainalysis provided KuCoin with investigative and compliance tools that KuCoin allegedly failed to use to prevent the laundering of Plaintiffs' digital assets. Plaintiffs' attenuated string of causation suffers from multiple intervening events, including the actions of third-party thieves and the alleged conduct of KuCoin—none of which can be attributed to Chainalysis.

Finally, Plaintiffs' state law claim for aiding and abetting conversion fails because they cannot allege that Chainalysis had "actual knowledge" of and "substantially assisted" in the third-party thieves' conversion of their assets.  (*Infra* § II.)  If anything, Chainalysis's products support *deterrence* of such illicit activity, and the Amended Complaint offers no basis for imposing liability on Chainalysis for the alleged acts of others.

The Amended Complaint should be dismissed with prejudice as against Chainalysis.

<h1 style="text-align:center">BACKGROUND[2]</h1>

### A.    KuCoin Licenses Chainalysis's Compliance Tools

Chainalysis offers compliance and investigative tools to analyze blockchain data.  (AC ¶ 34.)  These tools include Reactor, which enables users to link blockchain transactions to real-world entities and perform monitoring, and KYT ("Know Your Transaction"), which alerts users of high-risk activity and allows them to identify and block illicit transactions.  (*Id.* ¶¶ 34, 201.)  Chainalysis's customers include operators of digital asset platforms that use its software to monitor crypto asset transactions but Chainalysis itself does not operate or control any digital asset exchange or platform.  (*Id.* ¶ 34.)

In June 2020, the KuCoin platform announced it had procured Chainalysis tools to enhance its security and compliance.  (AC ¶ 70.)  Specifically, KuCoin purchased Chainalysis software, which it planned to employ to investigate suspicious activities, identify bad actors, and block illicit transactions.  (*Id.* ¶ 70.)  Chainalysis's product was effective: in September 2020, Chainalysis's

---

[2] The following facts are drawn from the Amended Complaint and, where indicated, materials incorporated by reference therein.  Chainalysis reserves all rights to contest Plaintiffs' factual allegations at the appropriate time, but, to the extent they are not conclusory or merely recite the gravamen of a cause of action, they are deemed true solely for this motion.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

tools assisted KuCoin and government authorities in identifying hackers who stole more than $275 million in cryptocurrency from the KuCoin platform.  (*Id.* ¶ 75.)

### B.  After Unidentified Thieves Steal Plaintiffs' Assets on Other Trading Platforms, Plaintiffs Sue the KuCoin Defendants

Plaintiffs are users of non-party trading platforms whose digital assets were allegedly stolen by unknown third-party hackers.  (AC ¶¶ 22-23.)  They claim that their digital assets were stolen in 2021 and 2024 and the third-party thieves eventually deposited "a material portion" of their assets into "at least one account" on the KuCoin platform.  (*Id.*)  To date, Plaintiffs vaguely claim to have been unable to recover "some, if not all," of their stolen digital assets.  (*Id.* ¶ 166.)

In August 2024, Plaintiff Reca commenced this lawsuit against the KuCoin Defendants, which Plaintiff Supples later joined.  (ECF 1; AC.)  While Plaintiffs do not (and could not) allege that any Defendant participated in the thefts, Plaintiffs allege that KuCoin functioned as a "get-away driver" for the thieves.  (ECF 1 ¶ 3; AC ¶ 3.)  Specifically, Plaintiffs' theory is that the KuCoin Defendants failed to implement adequate KYC and AML procedures, which "enabled bad actors to launder crypto at KuCoin."  (ECF 1 ¶ 76; AC ¶ 115.)  Based on this theory, Plaintiffs asserted claims against the KuCoin Defendants for RICO violations, conversion, and aiding and abetting conversion.  (ECF 1 ¶¶ 9-10; AC ¶¶ 12-13.)

### C.  Plaintiffs Tack-On Chainalysis To Try to Conjure A RICO Theory

In March 2025, the KuCoin Defendants moved to dismiss Plaintiff Reca's original complaint.  (ECF 46.)  In their motion, the KuCoin Defendants argued, among other things, that the complaint failed to state a RICO claim because it failed to adequately allege the existence of a RICO enterprise distinct from the KuCoin Defendants.  (*Id.* at 16-17.)

Rather than oppose the motion, Plaintiffs filed the Amended Complaint and named Chainalysis as an additional defendant.  (AC ¶ 34.)  The Amended Complaint admits that

Chainalysis "enabled KuCoin to have access to information about illicit transactions," and conclusorily asserts that Chainalysis was aware that KuCoin "refused to implement adequate KYC and AML policies and procedures" and thus was "a magnet and hub for bad actors to launder cryptocurrency." (*Id.* ¶¶ 34, 78.) Therefore, the Amended Complaint vaguely concludes, Chainalysis was "complicit with the KuCoin Defendants' refusal to prevent money laundering . . . in order to maintain the benefits of its partnership with KuCoin." (*Id.* ¶ 78.) Based on this theory, Plaintiffs assert claims against Chainalysis for RICO violations and aiding and abetting conversion. (*Id.* ¶¶ 223-45, 261-74.)

## ARGUMENT

To survive a motion to dismiss, a plaintiff must plausibly plead facts sufficient to establish every element of its claims. *Iqbal*, 556 U.S. at 678. A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the facts alleged would not "state a claim to relief that is plausible on its face," the action must be dismissed. *Id.* at 547.

The Amended Complaint alleges two claims against Chainalysis for (i) civil RICO and (ii) aiding and abetting conversion. (AC ¶¶ 223-45, 261-74.) Both claims fail as a matter of law.

## I.    PLAINTIFFS FAIL TO STATE A VIABLE RICO CLAIM AGAINST CHAINALYSIS (COUNT I)

As set forth in the KuCoin Motion, Plaintiffs have failed to plead (1) that Defendants' purported racketeering activity caused their injuries, (2) the existence of a RICO enterprise, (3) a domestic injury, or (4) a RICO conspiracy. (KuCoin Motion at § I.) Plaintiffs' RICO claim fails as against Chainalysis for the additional reasons that Plaintiffs have failed to plead that (1) Chainalysis participated in the alleged RICO enterprise, (2) Chainalysis engaged in two or

more RICO predicate acts, (3) Chainalysis was part of a RICO conspiracy, or (4) Chainalysis's conduct was the but-for or proximate cause of their injuries.

### A.    Plaintiffs Fail to Plead Chainalysis's Participation in a RICO Enterprise

Plaintiffs' RICO claim should be dismissed as against Chainalysis because Plaintiffs do not and cannot allege that Chainalysis "participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993) (citing 18 U.S.C. § 1962(c)). To establish participation in the "operation or management" of an enterprise, a plaintiff must plead a defendant's "actual control over [the] enterprise." *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 402-03 (S.D.N.Y. 2000) ("[T]he test is not involvement but control." (citation omitted)). In other words, "it is not enough to merely take directions and perform tasks that are necessary and helpful to the enterprise nor simply provide goods and services that ultimately benefit the enterprise." *Kumaran v. Vision Fin. Mkts., LLC*, 2022 WL 18774949, at *9 (S.D.N.Y. Aug. 4, 2022) ("the 'operation and management' test is an extremely rigorous test" (citation omitted)), *report and recommendation adopted*, 2022 WL 17540669 (S.D.N.Y. Dec. 6, 2022). "This standard is not met where a defendant merely attends to its own business." *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 441 (S.D.N.Y. 2019).

Here, the Amended Complaint does not come close to meeting these standards. It is devoid of any facts that Chainalysis participated in the "operation or management" of the alleged "KuCoin Crypto-Wash Enterprise." (*See* AC ¶¶ 34, 78, 181, 204.) To the contrary, Plaintiffs admit that Chainalysis's tools were provided to KuCoin to *prevent* illicit transactions—not to aid them. (*Id.* ¶¶ 78, 181.) At the very most, Plaintiffs' theory is that *KuCoin* allegedly failed to use these tools to prevent the laundering of their digital assets. (*Id.* ¶¶ 34, 78, 181.) But Plaintiffs do not and

cannot allege that Chainalysis—an arm's-length software provider—ever had any control over the KuCoin platform, KuCoin, or its compliance efforts.  (*See id.*); *Goldfine*, 118 F. Supp. 2d at 403.

While Plaintiffs allege in generalized fashion that Chainalysis was aware of inadequacies in KuCoin's KYC and AML procedures and continued to provide KuCoin with its software tools (AC ¶¶ 78, 202), these general allegations are far from sufficient.  Plaintiffs do not allege how Chainalysis, as a software provider, would have any knowledge of the effectiveness of KuCoin's KYC and AML procedures.  (*See id.*)  But even if it did, allegations that Chainalysis continued to sell its blockchain analysis software do not come close to adequately pleading that Chainalysis had involvement and control over a RICO enterprise.  Indeed, it is "not enough" to "simply provide goods and services that ultimately benefit the enterprise."  *Kumaran*, 2022 WL 18774949, at *9 (citation omitted); *see also Reves*, 507 U.S. at 185 ("[L]iability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their *own* affairs.").  Nor is it sufficient for Plaintiffs to conclusorily allege that Chainalysis benefited from "fees and revenues generated by the KuCoin Crypto-Wash Enterprise."  (AC ¶¶ 34, 181; *see also id.* ¶¶ 167, 231.)  The Amended Complaint does not allege that Chainalysis received anything beyond the ordinary fees it charged for use of its software.  *See Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (conclusory allegations are insufficient to state a claim); (*see also* AC ¶ 272 (alleging only that Chainalysis "earned lucrative fees from KuCoin"); *see also id.* ¶ 77 (similar)).

Because the Amended Complaint merely alleges that Chainalysis "attend[ed] to its own business" without any well-pled allegation of additional involvement and control, Plaintiffs' claim against Chainalysis should be dismissed. *Democratic Nat'l Comm.*, 392 F. Supp. 3d at 441.[3]

### B.     Plaintiffs Fail to Plead That Chainalysis Engaged in Two Predicate Acts

Plaintiffs' RICO claim also fails because Plaintiffs do not allege that Chainalysis engaged in two or more RICO predicate acts. *See W. Energy Opportunities II, LLC v. Finalis Sec.*, LLC, 2025 WL 935201, at *7 (S.D.N.Y. Mar. 26, 2025). "To establish a 'pattern of racketeering activity,' a plaintiff must plausibly allege that each defendant—not merely the enterprise as a whole—engaged in at least two predicate acts." *Id.* (collecting cases). Here, Plaintiffs allege that "Defendants" engaged in the predicate acts of (i) committing and aiding and abetting the operation of an unlicensed money transmitting business ("MTB") indictable under 18 U.S.C. §§ 1960 and 1961(1)(E); and (ii) aiding and abetting money laundering offenses indictable under 18 U.S.C. §§ 1956, 1957, and 2314. (AC ¶ 208.) But the Amended Complaint does not show how *Chainalysis* engaged in either.

Indeed, Chainalysis does not operate or control an MTB (AC ¶ 34), and Plaintiffs do not plead that Chainalysis aided and abetted (i) the operation of an unlicensed MTB, or (ii) money laundering. (*See id.* ¶ 208.) "To aid and abet a [federal] crime, a person must 'take[] an affirmative act in furtherance of that offense'" and "intend to facilitate [its] commission." *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 145 S. Ct. 1556, 1565 (2025) (second alteration in original) (citations omitted). Here, the only affirmative act Plaintiffs allege Chainalysis took was providing KuCoin with its commercially-available blockchain analysis software. (AC ¶¶ 34, 70.)

---

[3] For similar reasons, Plaintiffs also cannot plead the existence of a RICO enterprise that includes Chainalysis. (*See* KuCoin Motion at § I.B.)

And again, this software was provided to KuCoin to *deter* illicit activity. (*Id.*) Therefore, Plaintiff's RICO claim against Chainalysis fails. *See Smith & Wesson*, 145 S. Ct. at 1565.

###     C.     Plaintiffs Fail to Plead a RICO Conspiracy Against Chainalysis

Plaintiffs' RICO conspiracy claim fails as well. A conspiracy claim under 18 U.S.C. § 1962(d) requires a plaintiff first to adequately plead a substantive RICO violation under § 1962(c). *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 126 (2d Cir. 2018) (affirming dismissal of § 1962(d) conspiracy claim where "[t]he alleged conspiracy involved an agreement to commit the same substantive RICO violations we have deemed insufficiently pled"). Because Plaintiffs fail to state a substantive RICO claim for the reasons set forth above and in the KuCoin Motion, any attempt to plead a separate RICO conspiracy claim against Chainalysis necessarily fails. (AC ¶¶ 223-45.)

Any RICO conspiracy claim also fails because the Amended Complaint is "devoid of any factual allegation whatsoever to indicate that [Chainalysis] . . . specifically agreed to further the alleged scheme through the commission or facilitation of any racketeering activity." *Goldfine*, 118 F. Supp. 2d at 407. Plaintiffs' bald conclusion that Defendants "agreed to participate . . . in the conspiracy" (AC ¶¶ 198-99) is insufficient. *See Goldfine*, 118 F. Supp. 2d at 407 ("The mere parroting of the statutory language . . . is insufficient to show that each defendant knowingly agreed to participate in the alleged scheme."); (*see also* KuCoin Motion at § I.C.). For these reasons, Plaintiffs' RICO conspiracy claim against Chainalysis should be dismissed.

###     D.     Plaintiffs Fail to Plead That Chainalysis's Alleged Conduct Was the But-For or Proximate Cause of Their Injuries

Even if Plaintiffs could overcome the above fatal deficiencies (and they cannot), their RICO claim fails for the additional reason that they fail to plead but-for or proximate causation. RICO provides a private right of action for "[a]ny person injured in his business or property *by*

*reason of* a violation of section 1962 of this chapter."  18 U.S.C. § 1964(c) (emphasis added).

Courts strictly construe this requirement to mean that the RICO violation must be both the "but

for" and "proximate" cause of Plaintiffs' losses—distinct elements requiring that an alleged injury

would not have happened "but for" the defendant's alleged conduct and also that there is a "direct"

and "straightforward" connection between the defendant's conduct and the plaintiff's injury.  *In*

*re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 116 (S.D.N.Y. 2021) (citations

omitted).  "A link that is 'too remote, purely contingent, or indirect' is insufficient."  *Id.* (quoting

*Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010)).

As to the RICO enterprise,[4] Plaintiffs' theory is flawed because the proximate cause of

their losses was the *theft* of their assets by third-party thieves—not any subsequent alleged

laundering on the KuCoin platform.  (KuCoin Motion at § I.A.1.)  Courts routinely hold that

"concealment of underlying illegal activity *cannot* be the proximate cause of a plaintiff's injury

because the plaintiff would have suffered the same injury from the underlying illegal activity

regardless of whether the concealment occurred."  *Empire Merchs., LLC v. Reliable Churchill*

*LLLP*, 2017 WL 5559030, at *14 (E.D.N.Y. Mar. 16, 2017), *aff'd*, 902 F.3d 132 (2d Cir. 2018);

*see also Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Association*, 298 F.3d 768, 774 (9th

---

[4] Courts in the Second Circuit are split on whether a plaintiff must plead that each defendant's conduct was the but-for and proximate cause of its injury.  *See Khan Funds Mgmt. Am., Inc. v. Nations Techs. Inc.*, 2023 WL 6124801, at *13 (S.D.N.Y. Sept. 19, 2023) (discussing split).  Some courts hold that causation is satisfied as long as a plaintiff pleads that it was injured by the RICO enterprise as a whole, *id.*, while other courts hold that, to have "RICO standing" to sue a particular defendant, a plaintiff must plead that it was injured by *that* specific defendant's RICO violation, *Tether*, 576 F. Supp. 3d at 116 ("[A] plaintiff must plead . . . causation of the injury by the defendant's violation." (citation omitted)); *see also Edmondson v. Raniere*, 751 F. Supp. 3d 136, 173 (E.D.N.Y. 2024) ("each plaintiff must establish [RICO standing] as to each defendant" by showing that "he has been injured . . . by the conduct constituting the RICO violation").  Here, the Amended Complaint fails to state a claim under either view.

Cir. 2002) ("The direct and proximate cause of [the plaintiff's] loss was not [the teller]'s money laundering at Wells Fargo; it was theft.").  Indeed, courts have dismissed RICO claims brought against operators of digital asset trading platforms and related applications based on substantially similar allegations to those here for failure to plead proximate causation.  (*See* KuCoin Motion at § I.A.1 (citing *Licht v. Binance Holdings*, 2025 WL 625303, at *1 (D. Mass. Feb. 5, 2025), *report and recommendation adopted*, 2025 WL 624025 (D. Mass. Feb. 26, 2025); *Singh v. Illusory Sys., Inc.*, 727 F. Supp. 3d 500 (D. Del. 2024)).)

Even assuming *arguendo* that KuCoin's alleged failure to prevent money laundering on its platform could somehow serve as the proximate cause of Plaintiffs' losses (and it cannot), Plaintiffs do not plead that *Chainalysis's* alleged RICO violation caused their injuries.  *See Tether*, 576 F. Supp. 3d at 117; *Edmondson*, 751 F. Supp. 3d 173.  Plaintiffs' theory is that Chainalysis provided KuCoin with investigative and compliance tools, which KuCoin failed to use to stop third-party hackers from laundering their stolen assets.  (AC ¶ 78.)  But it is well-settled that there can be no proximate causation where "[p]laintiffs' allegations require the intervening activity of third parties."  *Tether*, 576 F. Supp. 3d at 117; *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 276-77 (S.D.N.Y. 2019) ("RICO's direct relation requirement . . . requires dismissal where substantial intervening factors attenuate the causal connection between the defendant's conduct and the plaintiff's injury." (collecting cases)).  The Amended Complaint itself acknowledges that while "Chainalysis enabled KuCoin to have access to information about illicit transactions, *KuCoin refused to take any steps to prevent them*."  (AC ¶ 34 (emphasis added).)  In other words, Plaintiffs concede that only *KuCoin* could have prevented the alleged money laundering, and Chainalysis is not alleged to have had any control over KuCoin.  (*Id.* ¶¶ 34, 70-78.)  This gap breaks any possible causal chain.  *Tether*, 576 F. Supp. 3d at 117.

Plaintiffs' own analogy of KuCoin serving as a "get-away driver" for crypto thieves (AC ¶ 3) underscores the fatal flaw in their theory. A getaway driver is not the proximate cause of the victim's losses—the theft is. *Oki Semiconductor*, 298 F.3d at 773-74. And Chainalysis is not even alleged to be the getaway driver—only a vendor of compliance software. (AC ¶¶ 34, 78.) Such involvement is "simply too attenuated" to establish proximate causation. *Empire Merchs.*, 2017 WL 5559030, at *15.

Plaintiffs' futile attempt to plead causation is reinforced by the fact that they do not and cannot plead that their alleged injuries would not have happened "but for" Chainalysis's conduct. *See Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs*, 888 F. Supp. 2d 491, 507 (S.D.N.Y. 2012) (plaintiff failed to plead "but for" causation where it would have been harmed "even in the absence of" defendants' alleged conduct), *aff'd*, 514 F. App'x 51 (2d Cir. 2013).[5] In fact, Chainalysis worked *against* the thieves' interests by providing software that could have been used to potentially identify them. (AC ¶¶ 34, 78.) In the absence of Chainalysis's conduct, the thieves would have been *better off* because they would have had an even *lower* chance of having their illicit transactions blocked by KuCoin. (*Id.*) Accordingly, Plaintiffs' RICO claim against Chainalysis should be dismissed.

## II.    PLAINTIFFS FAIL TO STATE AN AIDING AND ABETTING CONVERSION CLAIM AGAINST CHAINALYSIS (COUNT III)

Finally, Plaintiffs' aiding and abetting conversion claim fails because the Amended Complaint does not allege, much less plead with particularity, that Chainalysis had actual

---

[5] Plaintiffs' naked assertion that "[b]ut for Defendants' scheme, Plaintiffs and the putative Class herein would have been able to track and potentially recover their stolen crypto" (AC ¶ 203) lacks any factual support and thus is insufficient. *See Achtman*, 464 F.3d at 337 ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." (second alteration in original) (citation omitted)).

knowledge of or substantially assisted in the hackers' conversion of Plaintiffs' digital assets. *See Bigio v. Coca-Cola Co.*, 675 F.3d 163, 172-73 (2d Cir. 2012) (citation omitted); *see also Berman v. Morgan Keegan & Co.*, 2011 WL 1002683, at *7 (S.D.N.Y. Mar. 14, 2011) ("Th[e] heightened pleading requirement of Rule 9(b) applies equally to . . . claims alleging aiding and abetting conversion premised on fraud."), *aff'd*, 455 F. App'x 92 (2d Cir. 2012).[6]

First, Plaintiffs have not alleged any facts that Chainalysis had "actual knowledge" of the hackers' thefts and subsequent money laundering. *See Kirschner v. Bennett*, 648 F. Supp. 2d 525, 544 (S.D.N.Y. 2009). Chainalysis did not operate the KuCoin platform nor is it alleged to have had any knowledge of the transactions involving Plaintiffs' funds. (AC ¶¶ 34, 70-78.) At most Plaintiffs generically assert that Chainalysis was aware that KuCoin had inadequate KYC and AML procedures and was "a magnet and hub for bad actors to launder cryptocurrency" (*id.* ¶¶ 78, 202), but such generalized allegations cannot suffice to plead with particularity actual knowledge of the specific wrongdoing that harmed Plaintiffs. *See Kirschner*, 648 F. Supp. 2d at 545 ("actual knowledge of different wrongful conduct that might have harmed others" does not suffice); *Huang v. Hong Kong & Shanghai Banking Corp. LTD*, 2022 WL 4123879, at *5 (S.D.N.Y. Sept. 9, 2022) ("red flags" and "suspicious circumstances" are insufficient).

Second, Plaintiffs have not pled that Chainalysis "substantially assisted" in the hackers' thefts and laundering of their assets. *Huang*, 2022 WL 4123879, at *5. To plead substantial assistance, Plaintiffs must allege facts that Chainalysis "affirmatively assist[ed], help[ed] conceal or by virtue of failing to act when required to do so, enable[d] the fraud to proceed." *Id.* (citation

---

[6] The Amended Complaint appears to allege that Chainalysis aided and abetted the cryptocurrency thieves' conversion. (AC ¶¶ 261-74.) But, to the extent Plaintiffs attempt to argue that Chainalysis aided and abetted the KuCoin Defendants' conversion, this argument fails for the same reasons and those set forth in KuCoin's Motion. (*See* KuCoin Motion at § II.B.)

omitted).  The Amended Complaint alleges just the opposite—that Chainalysis took actions that were *detrimental* to the thieves by providing KuCoin with tools "to *prevent* bad actors from laundering crypto."  (AC ¶¶ 78, 181 (emphasis added).)  Plaintiffs do not and cannot explain how Chainalysis, as a software provider, would have any knowledge of alleged inadequacies in KuCoin's procedures.  (*See id.* ¶¶ 78, 202.)  And even assuming Chainalysis could have done more to stop the thieves, any inaction by Chainalysis is insufficient to support an aiding and abetting claim.  *See Kaufman v. Cohen*, 760 N.Y.S.2d 157, 170 (1st Dep't 2003) ("[T]he mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.").  Moreover, because Chainalysis did not have actual knowledge of the thieves' wrongdoing, Chainalysis's provision of software to KuCoin was a "routine business service, and does not amount to substantial assistance."  *Alarmex Holdings, LLC v. JP Morgan Chase Bank, N.A.*, 48 N.Y.S.3d 19, 20 (1st Dep't 2017).

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice as against Chainalysis.

Dated: New York, New York
        July 29, 2025

Respectfully submitted,

_/s/ Alexander C. Drylewski_
Alexander C. Drylewski
Lara A. Flath
James M. Johnston
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
alexander.drylewski@skadden.com
lara.flath@skadden.com
james.johnston@skadden.com

_Counsel for Defendant Chainalysis Inc._

## WORD COUNT CERTIFICATION

I hereby certify pursuant to the Local Civil Rule 7.1 of the Joint Local Rules for S.D.N.Y. and E.D.N.Y. that, according to the word count tool in the document processing software used to prepare this memorandum of law, the total number of words herein is 4,317.


*/s/ Alexander C. Drylewski*
Alexander C. Drylewski

*Counsel for Defendant Chainalysis Inc.*