UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

SOFIA RECA and JAMES K. SUPPLES,
Individually and on Behalf of All Others
Similarly Situated,

                        Plaintiffs,

     vs.

FLASHDOT LIMITED f/k/a PHOENIXFIN
LIMITED, MEK GLOBAL LIMITED,
PEKEN GLOBAL LIMITED, and
PHOENIXFIN PRIVATE LIMITED
(collectively d/b/a KUCOIN), CHUN (a/k/a
"MICHAEL") GAN, KE (a/k/a "ERIC")
TANG, and CHAINALYSIS, INC.,

                        Defendants.

———————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:24-cv-06316-GHW-SLC

CLASS ACTION

**PLAINTIFFS' OMNIBUS OPPOSITION
TO DEFENDANTS' MOTIONS TO
DISMISS THE AMENDED COMPLAINT**

**Page**

I.  PRELIMINARY STATEMENT ..................................................................................1

    A.  The KuCoin Crypto-Wash Enterprise...............................................................1

    B.  Plaintiffs and the Class Were Directly Injured by the KuCoin Crypto-Wash Enterprise ..........................................................................................4

II.  ARGUMENT ........................................................................................................5

    A.  Plaintiffs Adequately Allege a RICO Violation Against All Defendants...............6

        1.  The AC Adequately Alleges a RICO Enterprise ........................................7

            a.  The AC Adequately Describes the Role of Each Member of the Crypto-Wash Enterprise............................................................7

            b.  The KuCoin Crypto-Wash Enterprise Is Distinct from KuCoin...............................................................................9

            c.  The AC Plainly Alleges a Common Purpose................................10

        2.  Defendants Engaged in Far More than Two Predicate Acts.....................12

            a.  Defendants' Predicate Acts of Operating an Unlicensed MTB and Violating the BSA .........................................................12

            b.  Defendants Engaged in at Least Two Predicate Acts by Aiding and Abetting Violations of 18 U.S.C. §§1956, 1957, and 2314................................................................................15

        3.  The AC Adequately Alleges Causation ...................................................17

            a.  Plaintiffs Suffered a Concrete Injury When They Lost the Ability to Track, Prove Ownership over, and Potentially Recover Their Stolen Crypto .........................................................18

            b.  Defendants' Racketeering Activity Proximately Caused Plaintiffs' Injuries ........................................................................20

            c.  Defendants' Racketeering Activity Was the "But For" Cause of Plaintiffs' Injuries .........................................................25

        4.  The AC Adequately Alleges a Domestic Injury .......................................28

        5.  The AC Adequately Alleges RICO Conspiracy Under §1962(d).............29

**Page**

B.  Plaintiffs Adequately State Conversion and Aiding and Abetting
Conversion Claims....................................................................................................32

1.  Any Statute of Limitations Defense Is Either Inapplicable or
Without Merit.............................................................................................32

2.  Plaintiffs Adequately State a Conversion Claim .......................................34

3.  Plaintiffs Adequately State a Claim for Aiding and Abetting
Conversion .................................................................................................36

C.  Leave to Amend....................................................................................................37

III.  CONCLUSION......................................................................................................................38

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alix v. McKinsey & Co.*,
  23 F.4th 196 (2d Cir. 2022) ...............................................................18, 20, 23, 24

*Am. Optical Corp. v. N. Am. Optical Corp.*,
  489 F. Supp. 443 (N.D.N.Y. 1979).................................................................27

*Amusement Indus., Inc. v. Midland Ave. Assocs., LLC*,
  820 F. Supp. 2d 510 (S.D.N.Y. 2011)..........................................................35, 36

*Angermeir v. Cohen*,
  14 F. Supp. 3d 134 (S.D.N.Y. 2014).........................................................9, 27, 37

*Astech-Marmon, Inc. v. Lenoci*,
  349 F. Supp. 2d 265 (D. Conn. 2004).............................................................22

*Baisch v. Gallina*,
  346 F.3d 366 (2d Cir. 2003).................................................................25, 29

*Barron v. Helbiz, Inc.*,
  2021 WL 4519887
  (2d Cir. Oct. 4, 2021).......................................................................38

*Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo*,
  346 F. Supp. 3d 432 (S.D.N.Y. 2018)........................................................5, 9, 32

*Bigio v. Coca-Cola Co.*,
  675 F.3d 163 (2d Cir. 2012).....................................................................37

*Bove v. PBW Stock Exch., Inc.*,
  382 So.2d 450 (Fla. 2d DCA 1980) ............................................................ 32-33

*Breslin Realty Dev. Corp. v. Schackner*,
  397 F. Supp. 2d 390 (E.D.N.Y. 2005) ...........................................................7, 8

*Cedar Swamp Holdings, Inc. v. Zaman*,
  487 F. Supp. 2d 444 (S.D.N.Y. 2007).............................................................9

*City of N.Y. v. Gordon*,
  1 F. Supp. 3d 94 (S.D.N.Y. 2013).............................................................6, 7, 10

*Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*,
  271 F.3d 374 (2d Cir. 2001)................................................................17, 18, 20, 26

**Page**

*Crabhouse of Douglaston Inc. v. Newsday Inc.*,
  801 F. Supp. 2d 64 (E.D.N.Y. 2011) ...................................................30

*DDR Construction Services, Inc. v. Siemens Industry, Inc.*,
  770 F. Supp. 2d 627 (S.D.N.Y. 2011)...................................................24

*Duracell U.S. Operations, Inc. v. Energizer Brands, LLC*,
  2025 WL 2388287
  (S.D.N.Y. Aug. 18, 2025) ...................................................................21

*Empire Merchants, LLC v. Reliable Churchill LLLP*,
  902 F.3d 132 (2d Cir. 2018)................................................................23

*Flexborrow LLC v. TD Auto Fin. LLC*,
  255 F. Supp. 3d 406 (E.D.N.Y. 2017) .................................................30

*Frydman v. Verschleiser*,
  172 F. Supp. 3d 653 (S.D.N.Y. 2016)...................................................6

*Gray v. Busch Ent. Corp.*,
  886 F.2d 14 (2d Cir. 1989).................................................................33

*Gurung v. MetaQuotes Ltd.*,
  2024 WL 3849460
  (E.D.N.Y. Aug. 16, 2024) ...................................................................11

*Harris v. City of N.Y.*,
  186 F.3d 243 (2d Cir. 1999)................................................................33

*Holmes v. Sec. Inv. Prot. Corp.*,
  503 U.S. 258 (1992)............................................................................27

*Horn v. Med. Marijuana, Inc.*,
  80 F.4th 130 (2d Cir. 2023) ................................................................19

*Huang v. Hong Kong & Shanghai Banking Corp. LTD*,
  2022 WL 4123879
  (S.D.N.Y. Sep. 9, 2022) ......................................................................37

*Ideal Steel Supply Corp. v. Anza*,
  652 F.3d 310 (2d Cir. 2011)............................................................6, 24

*In re Agape Litig.*,
  773 F. Supp. 2d 298 (E.D.N.Y. 2011) .................................................37

Page

*In re First All. Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) ...................................................................36

*In re Namenda Direct Purchaser Antitrust Litig.*,
    331 F. Supp. 3d 152 (S.D.N.Y. 2018).......................................................27

*In re Parmalat Sec. Litig.*,
    412 F. Supp. 2d 392 (S.D.N.Y. 2006).......................................................28

*In re Refco Inc. Securities Litigation*,
    2011 WL 13168450
    (S.D.N.Y. Dec. 8, 2011)............................................................................37

*In re Sumitomo Copper Litig.*,
    995 F. Supp. 451 (S.D.N.Y. 1998)..........................................................7, 8

*In re Verestar, Inc.*,
    343 B.R. 444 (Bankr. S.D.N.Y. 2006)......................................................37

*Kirschner v. Bennett*,
    648 F. Supp. 2d 525 (S.D.N.Y. 2009).......................................................37

*Knipe v. Skinner*,
    999 F.2d 708 (2d Cir. 1993)......................................................................16

*Lama v. Malik*,
    58 F. Supp. 3d 226 (E.D.N.Y. 2014) ........................................................33

*Leveraged Leasing Admin. Corp. v. PacifiCorp Cap., Inc.*,
    87 F.3d 44 (2d Cir. 1996) .........................................................................35

*Lewin v. Richard Avedon Found.*,
    2015 WL 3948824 (S.D.N.Y. June 26, 2015) ..........................................34

*Licht v. Binance Holdings Ltd.*,
    2025 WL 625303
    (D. Mass. Feb. 5, 2025).......................................................................22, 27

*Madanes v. Madanes*,
    981 F. Supp. 241 (S.D.N.Y. 1997).........................................................7, 9

*Mahmood v. Rsch. in Motion Ltd.*,
    2012 WL 242836
    (S.D.N.Y. Jan. 24, 2012)...........................................................................34

**Page**

*Manhattan Telecommunications Corp. v. DialAmerica Marketing, Inc.*,
  156 F. Supp. 2d 376 (S.D.N.Y. 2001) .................................................................................9, 10

*Marks v. Energy Materials Corp.*,
  2015 WL 3616973
  (S.D.N.Y. June 9, 2015) .................................................................................................35

*Med. Marijuana, Inc. v. Horn*,
  145 S. Ct. 931 (2025) .....................................................................................................18

*Metro. Transp. Auth. v. Contini*,
  2005 WL 1565524
  (E.D.N.Y. July 6, 2005) .................................................................................................30

*Mid Atl. Telecom Inc. v. Long Distance Servs., Inc.*,
  18 F.3d 260 (4th Cir. 1994) ..........................................................................................19

*N.Y. State Nat'l Org. for Women v. Pataki*,
  261 F.3d 156 (2d Cir. 2001)..........................................................................................19

*Oki Semiconductor Co. v. Wells Fargo Bank, National Ass'n*,
  298 F.3d 768 (9th Cir. 2002) ........................................................................................24

*Palatkevich v. Choupak*,
  2014 WL 1509236
  (S.D.N.Y. Jan. 24, 2014).......................................................................................6, 8, 29

*Red Rock Sourcing LLC v. JGX LLC*,
  2024 WL 1243325
  (S.D.N.Y. Mar. 22, 2024) ................................................................................................5

*Ridge v. Phx. Bond & Indem. Co.*,
  553 U.S. 639 (2008)........................................................................................................24

*Rosemond v. United States*,
  572 U.S. 65 (2014).................................................................................................14, 15

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985)..........................................................................................................6

*Serin v. N. Leasing Sys., Inc.*,
  2009 WL 7823216
  (S.D.N.Y. Dec. 18, 2009) .....................................................................................6, 29, 31

**Page**

*Singh v. Illusory Systems, Inc.*,
    727 F. Supp. 3d 500 (D. Del. 2024)................................................................22

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
    605 U.S. 280 (2025)........................................................................................17

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)........................................................................................19

*State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*,
    375 F. Supp. 2d 141 (E.D.N.Y. 2005) ...........................................................31

*Staub v. Proctor Hosp.*,
    562 U.S. 411 (2011)........................................................................................20

*Superb Motors Inc. v. Deo*,
    776 F. Supp. 3d 21 (E.D.N.Y. 2025) ...............................................................8

*Taubenfeld v. Lasko*,
    324 So. 3d 529 (Fla. 4th DCA 2021) .......................................................34, 36

*Terminate Control Corp. v. Horowitz*,
    28 F.3d 1335 (2d Cir. 1994).................................................................17, 19, 20

*Trib. Co. v. Purcigliotti*,
    869 F. Supp. 1076 (S.D.N.Y. 1994), *aff'd sub nom.*,
    *Trib. Co. v. Abiola*, 66 F.3d 12 (2d Cir. 1995)..........................................29, 30

*U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*,
    303 F. Supp. 2d 432 (S.D.N.Y. 2004)..........................................................29-30

*United States Sec. & Exch. Comm'n v. Alpine Sec. Corp.*,
    354 F. Supp. 3d 396 (S.D.N.Y. 2018), *aff'd,* 982 F.3d 68 (2d Cir. 2020) ........13-14

*United States Sec. & Exch. Comm'n v. Alpine Sec. Corp.*,
    982 F.3d 68 (2d Cir. 2020).............................................................................26

*United States v. Aleskerova*,
    300 F.3d 286 (2d Cir. 2002)...........................................................................32

*United States v. Banki*,
    2010 WL 2076770
    (S.D.N.Y. May 25, 2010)................................................................................14

**Page**

*United States v. Delgado*,
  972 F.3d 63 (2d Cir. 2020), *as amended* (Sep. 1, 2020) ........................................................14

*United States v. Dist. Council of N.Y.C. & Vicinity of United Bhd. of Carpenters & Joiners of Am.*,
  778 F. Supp. 738 (S.D.N.Y. 1991) ....................................................................................16, 17

*United States v. Heras*,
  609 F.3d 101 (2d Cir. 2010) ....................................................................................................32

*United States v. Huezo*,
  546 F.3d 174 (2d Cir. 2008) ..............................................................................................15, 16

*United States v. Loc. 1804-1, Int'l Longshoremen's Ass'n*,
  812 F. Supp. 1303, 1327 (S.D.N.Y. 1993) ........................................................................15, 16

*United States v. Reed*,
  2022 WL 597180
  (S.D.N.Y. Feb. 28, 2022) .........................................................................................................14

*United States v. Turkette*,
  452 U.S. 576 (1981) .................................................................................................................11

*United States v. Yannotti*,
  541 F.3d 112 (2d Cir. 2008) ....................................................................................................31

*Weir v. Cenlar FSB*,
  2018 WL 3443173
  (S.D.N.Y. July 17, 2018) .......................................................................................................9, 10

*Yegiazaryan v. Smagin*,
  599 U.S. 533 (2023) .................................................................................................................29

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
  Rule 8 ..........................................................................................................................................7
  Rule 8(a) ............................................................................................................................ *passim*
  Rule 12(b)(6) .........................................................................................................................5, 33
  Rule 15 ......................................................................................................................................38

**Page**

18 U.S.C.
 §2.................................................................................................................3
 §2(a)...........................................................................................................15
 §1956...........................................................................................................7
 §1957...........................................................................................................7
 §1960...................................................................................................3, 6, 12
 §1960(a)......................................................................................................12
 §1961(1)(E)............................................................................................6, 13
 §1961(4)........................................................................................................7
 §1961(5)........................................................................................................6
 §1961(B)......................................................................................................12
 §2314...........................................................................................................7

31 U.S.C.
 §5311..........................................................................................................20
 §5311(2)........................................................................................................3
 §5312(a)(2)(R)............................................................................................13

## I.    PRELIMINARY STATEMENT[1]

### A.    The KuCoin Crypto-Wash Enterprise

Defendants Gan, Tang, and others founded KuCoin, one of the largest cryptocurrency ("crypto") exchanges in the world. ¶¶35-43. They operated and controlled KuCoin through several companies, including, Defendants Flashdot and Peken. ¶¶26-33. KuCoin grew rapidly by accessing the U.S. market by willfully violating numerous laws and regulations enacted to protect investors. ¶1.

Specifically, the KuCoin Defendants knowingly failed to register KuCoin as a money transmitting business ("MTB"), willfully violated the Bank Secrecy Act ("BSA") by failing to implement and maintain an effective anti-money laundering ("AML") program, and disregarded crucial know-your-customer ("KYC") rules – all in a deliberate effort to profit from the U.S. market without implementing controls required by law. ¶2. Their refusal to implement AML and KYC policies turned KuCoin into a magnet and hub for criminals to launder crypto stolen from Plaintiffs and the Class. ¶3. Crypto laundering, as acknowledged by Chainalysis, "underpins all other forms of cryptocurrency-based crime. If there's no way to access the funds, there's no incentive to commit crimes involving cryptocurrency in the first place." ¶112.

---

[1]    As used herein, "Plaintiffs" refers to plaintiffs Sofia Reca and James K. Supples. "AC" refers to the Plaintiffs' Amended Class Action Complaint, dated April 14, 2025 (ECF No. 49, cited as "¶" and "¶¶"). "Defendants" refers to defendants Flashdot Limited ("Flashdot"), Peken Global Limited ("Peken," and with Flashdot, "KuCoin"), Chun Gan and Ke Tang (collectively, the "KuCoin Defendants"), and Chainalysis, Inc. ("Chainalysis"). "Class Period" refers to the period between August 21, 2020 and the date of Judgment. ¶214. "KuCoin MTD" refers to the KuCoin Defendants' memorandum of law in support of their motion (ECF No. 66). "Def. Ex." refers to the exhibits attached to the Declaration of Matthew L. Craner in support of the KuCoin Defendants' motion (ECF No. 67). "Chainalysis MTD" refers to Chainalysis' memorandum of law in support of their motion (ECF No. 69). "Kaufman Decl." refers to the Declaration of Evan J. Kaufman and the exhibits ("Ex.") attached thereto, dated August 29, 2025, submitted herewith. Throughout this memorandum, unless otherwise noted, emphasis is added in quotations and internal quotation marks and citations are omitted. All capitalized terms that are not defined have the same meanings as ascribed to them in the AC.

Crypto is unique because, even after it is removed from the owners' possession, the location is publicly available and chain-of-title is permanently traceable on the public blockchain, which acts as a "ledger." ¶¶4, 107-108. Unless thieves eliminate the trail left on the ledger by laundering the crypto, they cannot remove it from the blockchain without being tracked. ¶4. Therefore, crypto-theft is not complete, and victims maintain the ability to potentially recover their crypto, until they are unable to track and prove ownership over their stolen assets. ¶¶109, 114.

Defendants were integral participants in the laundering of crypto at KuCoin. For years, the KuCoin Defendants allowed users to open accounts by simply providing an email address, and refused to implement *any* KYC or AML procedures, even though KuCoin's website recognized that "KYC can effectively reduce . . . money laundering . . . ." ¶52. The KuCoin Defendants encouraged users to access KuCoin illegally, ran KuCoin with utter disregard for regulations aimed at preventing crypto laundering, and treated criminals as a lucrative revenue source. ¶¶46-53, 57-69. Even though KuCoin had access to a list of accounts that were previously involved with illicit activity, KuCoin permitted those accounts to continue transacting on the platform, in some instances for *years*.[2] ¶¶54-55.

The KuCoin Defendants also knew about nefarious transactions from software provided by Chainalysis, a crypto–tracing analysis company. ¶¶180-181. The KuCoin Defendants announced a partnership with Chainalysis to make it appear as though KuCoin was committed to complying with the law, when Defendants knew that was not true, because the purpose of this "partnership," as both the KuCoin Defendants and Chainalysis knew, was to provide merely the appearance of compliance. ¶78. Even though KuCoin had access to alerts regarding potential crypto laundering and other illicit activities, KuCoin refused to implement adequate KYC and AML policies – or *any* policies at all –

---

[2]    After the filing of the AC, Plaintiffs' investigation uncovered that, between July 17, 2018 and April 11, 2025, more than $712 million was deposited into KuCoin wallets *after* being blacklisted.

or dedicate resources to prevent those activities. *Id.* Indeed, under the BSA, which was designed to "prevent the laundering of money and the financing of terrorism" (31 U.S.C. §5311(2); ¶60), KuCoin was required to, but failed to, file any suspicious activity reports ("SARs"), even though many transactions at KuCoin warranted SARs filings. ¶95.

On January 27, 2025, defendant Peken pled guilty and agreed to pay $297 million in criminal fines and forfeitures in response to charges filed by the Department of Justice ("DOJ") of operating an unlicensed MTB in violation of 18 U.S.C. §1960 and 18 U.S.C. §2.[3]  ¶88; *see also* Kaufman Decl. Ex. 1.  Defendants Gan and Tang admitted they "knowingly owned" a "money transmitting business that was not registered or licensed in the United States[,]" agreed that their "conduct . . . violated Title 18, United States Code, Sections 1960(a) and (b)(1)(A) and (B)[,]" and agreed to forfeit over $2.7 million in ill-gotten gains and forgo any future role in KuCoin's operations or management.  ¶¶11, 90; *see also* Kaufman Decl. Ex. 2 at 3-4; *id.* Exs. 3-4.  According to the DOJ, "in failing to implement even basic anti-money laundering policies, the defendants allowed KuCoin to operate in the shadows of the financial markets and be used as a haven for illicit money laundering, with KuCoin receiving over $5 billion and sending over $4 billion of suspicious and criminal funds." ¶98.

KuCoin's guilty plea to the DOJ's charges were in addition to: (i) a December 12, 2023 settlement of $22 million over charges by the New York Attorney General (¶¶104-105); (ii) a civil enforcement action by the Commodity Futures Trading Commission, announced on March 26, 2024 in the U.S. District Court for the Southern District of New York alleging, *inter alia*, that KuCoin's KYC procedures were a sham and KuCoin failed to comply with the BSA (¶¶100-103); and

---

[3]    Defendant Peken also acknowledged it "knowingly" engaged in such conduct, and "that the conduct affected interstate and foreign commerce."  ¶92; *see also* Kaufman Decl. Ex. 2 at 22-23.

(iii) regulatory actions against KuCoin by the Financial Services Authority of the Republic of Seychelles, the Ontario Securities Commission, and the Central Bank of the Netherlands. ¶106.

Defendants put revenues and growth before the law and enabled the KuCoin Crypto-Wash to flourish. Moreover, their participation was critical in the laundering of crypto stolen from Plaintiffs and the members of the Class.

**B.    Plaintiffs and the Class Were Directly Injured by the KuCoin Crypto-Wash Enterprise**

Defendants' scheme facilitated the laundering of stolen crypto at KuCoin by bad actors. ¶¶46, 54-56, 157-159. Due to the nature of crypto, the theft of Plaintiffs' crypto should be viewed as taking place in two primary phases, as the entire theft was not complete until the bad actors removed the stolen assets from the blockchain without being tracked. Each phase of the theft caused distinct and quantifiable injuries to Plaintiffs' property. "Phase 1" was the removal of the crypto from Plaintiffs' possession. "Phase 2," the laundering of the crypto at KuCoin, eliminated Plaintiffs' ability to track, prove ownership, and potentially recover their stolen assets. The bad actors did not complete the thefts, and Plaintiffs and the members of the Class did not suffer their full injuries, until the stolen crypto had been laundered at KuCoin during Phase 2.

Since Plaintiffs were able to track their crypto's location, prove their ownership of the crypto, and, with the assistance of the authorities, potentially recover their stolen assets, the crypto retained a portion of its value after it was removed from their possession but before it was laundered. ¶¶108-109, 164-166, 203, 213. As Chainalysis concedes, "[w]hen every transaction is recorded in a public ledger, it means that law enforcement always has a trail to follow, even years after the fact . . . ." ¶¶110, 114-115. It was not until Plaintiffs' crypto was laundered at KuCoin that the trail was

eliminated.  ¶¶164-166.  Accordingly, Plaintiffs suffered a distinct concrete injury from the laundering of their stolen crypto during Phase 2 of the theft at KuCoin.[4]  *Id.*

\*       \*       \*

Defendants launch a scattershot of arguments in support of their motions to dismiss.  They attempt to portray themselves as innocent bystanders in the laundering of crypto at KuCoin even though Defendants created and operated the mechanism for the laundering, knew KuCoin was regularly used for laundering, and refused to comply with laws enacted to prevent laundering. Defendants mischaracterize Plaintiffs' claims, point to other bad actors, and claim they should not be liable because several crypto exchanges engaged in similar wrongdoing.  Defendants' arguments reveal an utter lack of remorse for their admitted criminal conduct and the Court should reject Defendants' "other companies did it too" defense.  Defendants' arguments are without merit and Plaintiffs respectfully request that the Court deny Defendants' motions in their entirety.

## II.    ARGUMENT

To survive a Rule 12(b)(6) motion, a "plaintiff must allege only enough facts to state a claim to relief that is plausible on its face[.]"  *Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo*, 346 F. Supp. 3d 432, 452 (S.D.N.Y. 2018).  "Moreover, on a motion to dismiss, a court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side."  *Red Rock Sourcing LLC v. JGX LLC*, 2024 WL 1243325, at \*10 (S.D.N.Y. Mar. 22, 2024).  Plaintiffs need only "raise a right to relief above the speculative level."  *Id.*  "In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in

---

[4]     Defendants' accusation that Plaintiff Supples is seeking double recovery is baseless.  KuCoin MTD at 7.  The AC makes clear, "a material portion of the cryptocurrency stolen from plaintiff Supples was sent to at least one account at KuCoin" and he is seeking to recover only the portion "laundered through KuCoin."  ¶¶23, 242.

the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor." *Frydman v. Verschleiser*, 172 F. Supp. 3d 653, 658-59 (S.D.N.Y. 2016).

### A.    Plaintiffs Adequately Allege a RICO Violation Against All Defendants

"RICO is to be read broadly" and "liberally construed to effectuate its remedial purposes." "The statute's remedial purposes are nowhere more evident than in the provision of a private action for those injured by racketeering activity."[5] *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497-98 (1985). "In order to establish a RICO violation under §1962(c), . . . a plaintiff must show four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Serin v. N. Leasing Sys., Inc.*, 2009 WL 7823216, at *6 (S.D.N.Y. Dec. 18, 2009). The plaintiff must also establish "an injury to business or property." *City of N.Y. v. Gordon*, 1 F. Supp. 3d 94, 110 (S.D.N.Y. 2013). Section 1962(c) prohibits a "person employed by or associated with any enterprise from conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Palatkevich v. Choupak*, 2014 WL 1509236, at *11 (S.D.N.Y. Jan. 24, 2014).

The AC satisfies each of those elements by alleging Defendants, through the KuCoin Crypto-Wash Enterprise, engaged in a pattern of racketeering activity which "enabled bad actors to use KuCoin to launder stolen cryptocurrency so that it could not be tracked or recovered." ¶189. Specifically, Plaintiffs allege each Defendant engaged in indictable acts by: (i) committing, and aiding and abetting, acts constituting indictable offenses under 18 U.S.C. §1960 (relating to illegal money transmitters) and 18 U.S.C. §1961(1)(E) (act indictable under the BSA); and (ii) aiding and

---

[5]    Contrary to the KuCoin Defendants assertion, RICO claims are not limited to organized crime. KuCoin MTD at 9; *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 321 (2d Cir. 2011) ("The prohibitions set out in RICO are not limited to the activities of organized crime but rather extend to any person or entity engaging in a 'pattern of racketeering activity' as that term is defined in 18 U.S.C. §1961(5).").

abetting acts constituting indictable offenses under 18 U.S.C. §1956 (laundering of monetary instruments), 18 U.S.C. §1957 (engaging in monetary transactions in property derived from specified unlawful activity), and 18 U.S.C. §2314 (relating to interstate transportation of stolen property). ¶¶204-213.

### 1.    The AC Adequately Alleges a RICO Enterprise

The RICO Act defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4).  "Further, a plaintiff must allege and prove the existence of two distinct entities: (1) a person; and (2) an enterprise that is not simply the same person referred to by a different name." *Gordon*, 1 F. Supp. 3d at 111.  To allege an association in fact, Plaintiffs need only allege "a formal or informal group of persons, associated for a common purpose of engaging in a course of conduct which then functions as a continuing unit."  *Breslin Realty Dev. Corp. v. Schackner*, 397 F. Supp. 2d 390, 400 (E.D.N.Y. 2005).

"The Second Circuit has construed the enterprise element liberally and has held that an enterprise is properly pled even if the pleading reveals that the group exists solely for the commission of the fraudulent acts alleged in the complaint." *Id*.; *see also Madanes v. Madanes*, 981 F. Supp. 241, 252 (S.D.N.Y. 1997) ("The Second Circuit has adopted an expansive reading of the enterprise element.").  Moreover, "allegations of the existence of a RICO enterprise must meet only the 'notice pleading' requirements of Fed R.Civ.Pro. 8." *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 454 (S.D.N.Y. 1998).

### a.    The AC Adequately Describes the Role of Each Member of the Crypto-Wash Enterprise

The AC alleges defendants "Gan and Tang have directly or indirectly owned the various entities that collectively operate KuCoin . . . made the strategic decisions for KuCoin and exercised

day-to-day control over its operations and finances[, and] . . . oversaw and directed KuCoin's strategy of willfully disregarding U.S. KYC and AML laws and regulations so that customers could use KuCoin anonymously and from the United States." ¶178. Additionally, defendant "Gan opened an account with a third-party customer service software provider on behalf of KuCoin, and the third party's software and services were thereafter used to provide KuCoin customer service to U.S. customers[.]" ¶186(f). Defendant Tang also personally registered the "kucoin.com" web domain. ¶186(e).

The AC alleges Chainalysis "partner[ed]" with KuCoin "to make it appear as though KuCoin was committed to complying with the law when Defendants knew that was not true" and "KuCoin's statements about its partnership with Chainalysis provided KuCoin cover from scrutiny by regulators." ¶¶77-78, 179, 259; *see also Sumitomo*, 995 F. Supp. at 454 (finding a RICO enterprise where the complaint alleges defendants "coordinated their trading activities and public statements"); *Superb Motors Inc. v. Deo*, 776 F. Supp. 3d 21, 70 (E.D.N.Y. 2025) (upholding RICO claim where plaintiff alleged defendant "provided the operation with a veneer of legitimacy").

Contrary to Chainalysis' argument that Plaintiffs must allege it "participated in the operation or management" of the enterprise (Chainalysis MTD at 6-7), Plaintiffs need only demonstrate each defendant "had some part in directing the affairs of the enterprise." *Schackner*, 397 F. Supp. 2d at 400, 403 (upholding allegations of a RICO enterprise and noting "the allegation, albeit conclusory, that each defendant had a hand in the conduct and control of the enterprise"); *see also Choupak*, 2014 WL 1509236, at *11 ("The enterprise requirement is most easily satisfied when the enterprise is a formal legal entity.").

Finally, the AC alleges Flashdot "was the holding company of the KuCoin cryptocurrency exchange," and Peken "has operated KuCoin since in or about September 2019" and "is the current

owner of the KuCoin cryptocurrency trading platform."  ¶¶26, 28.  These are detailed allegations identifying each individual and their distinct role in the enterprise.  Thus, Plaintiffs have not "[m]erely str[ung] together a list of defendants and label[ed] them an enterprise[,]" as the KuCoin Defendants contend.  KuCoin MTD at 18 (citing *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007)); *see Madanes*, 981 F. Supp. at 252-53 (finding a RICO enterprise where plaintiff "has identified a core group of personnel which len[d] the enterprise the continuity and unity of purpose indicative of a RICO 'enterprise'"); *see also Angermeir v. Cohen*, 14 F. Supp. 3d 134, 144 (S.D.N.Y. 2014) ("Plaintiffs' [c]omplaint . . . does not simply lump Defendants together . . . it satisfies the requirements of Rule 8(a) because it gives [Defendants] fair notice of the basis for [Plaintiffs'] claims.").

**b.    The KuCoin Crypto-Wash Enterprise Is Distinct from KuCoin**

Defendants' attempt to characterize KuCoin and the KuCoin Crypto-Wash Enterprise as one entity fails.  KuCoin MTD at 18.  "The core question is whether the RICO enterprise is distinct from each of the RICO persons, in which case it satisfies the distinctness requirement."  *Palazzolo*, 346 F. Supp. 3d at 454-55 (upholding allegations of an enterprise "consisting of several distinct businesses and individuals associated with those businesses, as opposed to a single corporate entity associating solely with its employees or agents").  The AC alleges each defendant acted as an agent for the enterprise independent of the legal entity KuCoin and its "legitimate" business practices of serving non-U.S. investors.  KuCoin MTD at 18.

The KuCoin Defendants misguidedly rely on *Manhattan Telecommunications Corp. v. DialAmerica Marketing, Inc.*, 156 F. Supp. 2d 376, 381 (S.D.N.Y. 2001) and *Weir v. Cenlar FSB*, 2018 WL 3443173, at *5-*7 (S.D.N.Y. July 17, 2018) for the proposition that the KuCoin Crypto-Wash Enterprise was not distinct from KuCoin acting through its officers and vendors.  KuCoin

MTD at 18.  In *DialAmerica Marketing*, the court found plaintiff "failed to allege a single fact that demonstrates that [defendants] have united together to function as a continuing unit."  156 F. Supp. at 382.  The AC, however, alleges the KuCoin Defendants "affirmatively attempted to conceal the existence of KuCoin's U.S. customers to make it appear as if KuCoin was exempt from U.S. AML and KYC requirements."  ¶99(g).  Additionally, KuCoin marketed itself as an exchange where customers could trade "without having to undergo KYC."  ¶99(h).  These concrete steps demonstrate the KuCoin Defendants worked in unison to operate an unlicensed haven for money laundering and other illicit activity independent of KuCoin's legitimate cryptocurrency exchange.

Similarly, in *Cenlar FSB*, the court found that "[n]othing in [plaintiff's] allegations suggests that the vendors were aware" of the RICO activity.  2018 WL 3443173, at *6.  Here, however, the AC alleges Chainalysis' "partnership" with KuCoin was not, as Defendants describe, simply a vendor-customer relationship (KuCoin MTD at 18; Chainalysis MTD at 6); it was a calculated ploy to evade scrutiny by regulators.  ¶¶17, 70.  Indeed, "Chainalysis knew that KuCoin failed to implement" KYC and AML protocols because Chainalysis was "tracking the illicit transactions and providing KuCoin access to red flags and other information showing illicit transactions flowed through KuCoin accounts."  ¶¶202, 272.

These allegations more than satisfy the distinctness requirement for a RICO enterprise. *Gordon*, 1 F. Supp. 3d at 111 (finding a distinct RICO "person" and "enterprise" where plaintiff "identifies the RICO enterprise" and "alleges that [certain defendants] have been employed by or associated with that enterprise").

### c.    The AC Plainly Alleges a Common Purpose

The AC alleges Defendants "had the common purpose to maximize KuCoin's (and Chainalysis') revenues and market share by running KuCoin, and enabling KuCoin to be run, as a crypto exchange with virtually non-existent KYC or AML policies to serve U.S.-based customers

and customers from sanctioned jurisdictions, including bad actors who engaged in the laundering of cryptocurrency obtained as the result of hacks, ransomware attacks, and theft." ¶231. Despite Defendants' feeble attempt to characterize the KuCoin Crypto-Wash Enterprise's business purpose as "legitimate" (KuCoin MTD at 19), the KuCoin Crypto-Wash Enterprise had the "common or shared purpose of ensuring that KuCoin did not implement adequate KYC or AML policies so that KuCoin could generate massive fees and liquidity from the maximum number of people and increase market share, in violation of the law." ¶188.

KuCoin's legitimate business purpose as a cryptocurrency exchange is to provide a market for cryptocurrency investing and speculation. The KuCoin Crypto-Wash Enterprise, however, serves only as a vehicle to launder stolen assets to evade detection. ¶231. Even if the respective purposes of KuCoin and the KuCoin Crypto-Wash Enterprise were not as distinct, the Supreme Court has made clear that "[o]n its face, the definition [of enterprise] appears to include both legitimate and illegitimate enterprises within its scope; it no more excludes criminal enterprises than it does legitimate ones." *United States v. Turkette*, 452 U.S. 576, 580-81 (1981).[6]

Numerous government enforcement agencies, including the DOJ, agreed that creating a "hub and magnet for criminals and other bad actors to launder cryptocurrency" by operating an unlicensed MTB was not a "legitimate business purpose." ¶¶68, 88-106, 211(a). Defendants cannot represent that the KuCoin Crypto-Wash Enterprise had a legitimate business purpose when defendants Gan and Tang admitted they "knowingly owned . . . part of a money transmitting business that was not

---

[6]     *Gurung v. MetaQuotes Ltd.*, 2024 WL 3849460 (E.D.N.Y. Aug. 16, 2024), cited by the KuCoin Defendants (KuCoin MTD at 19), is clearly distinguishable. There, plaintiff alleged the defendant "provid[ed] software support in exchange for a monthly fee" without any concrete allegations of knowledge or intent to further the common purpose of the enterprise. *MetaQuotes*, 2024 WL 3849460, at *9. Here, however, the KuCoin Defendants promoted their partnership with Chainalysis "to make it appear as if it were seeking to comply with KYC and AML rules and regulations." ¶¶77, 272.

registered or licensed in the United States" and agreed their "conduct, as admitted, violated Title 18, United States Code, Sections 1960(a) and (b)(1)(A) and (B)."  ¶90.  Similarly, defendant Peken admitted that "KuCoin . . . violated United States law by failing to register with FinCEN as a money transmitting business" and "that the conduct affected interstate and foreign commerce."  ¶¶91-92.

### 2.    Defendants Engaged in Far More than Two Predicate Acts

#### a.    Defendants' Predicate Acts of Operating an Unlicensed MTB and Violating the BSA

The AC more than adequately alleges Defendants engaged in the necessary two predicate actions to show a pattern.  An individual who "knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business" violates 18 U.S.C. §1960. *See* 18 U.S.C. §1960(a).  Pursuant to 18 U.S.C. §1961(B), a violation of 18 U.S.C. §1960 constitutes a predicate RICO act.

The AC alleges numerous predicate acts the KuCoin Defendants took in furtherance of their illegal operation of an unlicensed MTB.  *See*, *e.g.*, ¶¶128-129, 130-131, 139.  Indeed, in connection with their agreement to settle criminal charges, the KuCoin Defendants admitted to "knowingly" operating an unlicensed money transmitting business from at least September 2017 to December 2023.[7]  *See* ¶¶90-92.  During the plea and sentencing hearing in connection with the DOJ Indictment, Peken admitted, "[s]ince its launch, KuCoin has served approximately 1.5 million registered users located in the United States."[8]  ¶129; *see also* Kaufman Decl. Ex. 2 at 22.

---

[7]    Other than a paltry footnote where they halfheartedly contend they "do not concede" to engaging in offenses to which they pled guilty, and admitted they engaged in such conduct knowingly, the KuCoin Defendants do not meaningfully contest engaging in two predicate acts, nor can they.  KuCoin MTD at 10-11 n.8.

[8]    Gan and Tang logged on to kucoin.com from the U.S., meaning they knew that KuCoin failed to restrict access by users located in the U.S.  ¶131.

Furthermore, the AC pleads Defendants engaged in two predicate acts in connection with their BSA violations. Pursuant to 18 U.S.C. §1961(1)(E), a BSA violation constitutes a predicate RICO act. 18 U.S.C. §1961(1)(E). The BSA imposes reporting, recordkeeping, and controls requirements on covered "financial institutions," and MTBs "who engage[] as a business in the transmission of currency, funds, or value that substitutes for currency" and are required to register as such with FinCEN. 31 U.S.C. §5312(a)(2)(R).

Under the BSA, KuCoin was required to implement and maintain adequate KYC and AML policies and procedures, including filing SARs when necessary. ¶¶57-69. Gan, Tang, and KuCoin were aware of their U.S. AML obligations but willfully flouted those requirements. ¶99. KuCoin instructed users to not identify themselves as located in the U.S. and to "access the platform simply by declining to complete the KYC verification process." ¶142; ¶¶144-156. The KuCoin Defendants also "actively market[ed] to users based in the United States, including with an affiliate program" and even retained a marketing firm to target U.S. users. ¶186(b).

To make matters worse, those Defendants made it appear as though KuCoin was exempt from the BSA by concealing the existence of KuCoin's U.S. customer base, even though KuCoin had more customers from the United States than from any other nation. ¶¶99, 120. Furthermore, even though KuCoin operated its exchange in a manner that permitted "billions in suspicious transactions and potentially criminal proceeds[,]" including potentially hundreds of millions of dollars-worth of transactions by KuCoin wallets that had already been blacklisted, the KuCoin Defendants failed to file *any* SARs, in violation of the BSA. ¶95. "While a deficient AML program may create liability, the failure to timely file a complete SAR may also create liability." *United States Sec. & Exch. Comm'n v. Alpine Sec. Corp.*, 354 F. Supp. 3d 396, 424 (S.D.N.Y.

2018), *aff'd*, 982 F.3d 68 (2d Cir. 2020) (finding defendant violated BSA by failing to file SARs and noting that the SAR regulation "imposes an objective test").

In addition to engaging in acts in direct violation of the BSA, Gan and Tang also aided and abetted KuCoin's violations of the BSA by failing to fulfill their compliance duties as owners and managers of KuCoin. *United States v. Reed*, 2022 WL 597180, at \*2-\*3 (S.D.N.Y. Feb. 28, 2022) (denying motion to dismiss claim of aiding and abetting a violation of the BSA where owner of the FCM "does not explain why [the cryptocurrency exchange] did not fall literally within the definition of an FCM").

The AC also alleges Chainalysis engaged in two predicate acts in violation of RICO by aiding and abetting the KuCoin Defendants' operation of KuCoin as an unlicensed MTB and aiding and abetting the KuCoin Defendants' violations of the BSA.[9] *United States v. Banki*, 2010 WL 2076770, at \*4 (S.D.N.Y. May 25, 2010) ("[T]he operation of an unlicensed money transmitting business offense is . . . susceptible to an aiding and abetting theory."). In the Second Circuit, it is clear that "[t]he affirmative act requirement for accomplice liability raises no more than a low hurdle." *United States v. Delgado*, 972 F.3d 63, 74-76 (2d Cir. 2020), *as amended*, (Sep. 1, 2020) (noting that "in some cases, a defendant's presence may advance the commission of the crime").

Chainalysis was integral in enabling the KuCoin Crypto-Wash by providing KuCoin with a false veil of legitimacy. ¶¶180-181. *Rosemond v. United States*, 572 U.S. 65, 72-73 (2014) (to be liable for aiding and abetting a federal crime, "a person's involvement in the crime could be not merely partial but minimal too"). Chainalysis aided and abetted these BSA violations, enabling

---

[9]     Contrary to the plain language of the AC, Chainalysis argues: "Plaintiffs do not plead that Chainalysis aided and abetted . . . the operation of an unlicensed MTB[.]" Chainalysis MTD at 8; *see*, *e.g.*, ¶237(a) ("Defendants Gan, Tang, Flashdot, Peken Global, PhoenixFin, and Mek Global, *aided and abetted by Chainalysis*, conducted, and conspired to conduct, KuCoin as an unlicensed MTB from 2017 to at least July 2023[.]").

"KuCoin to make it appear as if it were seeking to comply with KYC and AML rules and regulations, even though that was not true."  ¶¶77-78.

Chainalysis provided KuCoin with, *inter alia*, proprietary KYT software to "detect as much high risk cryptocurrency activity as possible" and "track[] transactions associated with blacklisted wallets (flagged as previously involved in potentially illicit or fraudulent activity)."  ¶¶180-182. "Chainalysis was complicit with the KuCoin Defendants' refusal to prevent money laundering on the KuCoin platform in order to maintain the benefits of its partnership with KuCoin." ¶181; *Rosemond*, 572 U.S. at 77 ("[F]or purposes of aiding and abetting law, a person who actively participates in a criminal scheme knowing its extent and character intends that scheme's commission.").

### b. Defendants Engaged in at Least Two Predicate Acts by Aiding and Abetting Violations of 18 U.S.C. §§1956, 1957, and 2314

Even though the AC adequately alleges more than two predicate acts by each Defendant based on KuCoin's operation as an unlicensed MTB and violations of the BSA, Plaintiffs have also adequately alleged Defendants engaged in two predicate acts by aiding and abetting criminal activities indictable under 18 U.S.C. §§1956, 1957, and 2314.

Under 18 U.S.C. §2(a), anyone who aids or abets the commission of an offense against the United States is punishable as a principal.  18 U.S.C. §2(a).  To allege aiding and abetting a crime, Plaintiffs must assert "the underlying crime was committed by a person other than the defendant, that the defendant knew of the crime, and that the defendant acted with the intent to contribute to the success of the underlying crime." *United States v. Huezo*, 546 F.3d 174, 179 (2d Cir. 2008); *see also United States v. Loc. 1804-1, Int'l Longshoremen's Ass'n*, 812 F. Supp. 1303, 1327 (S.D.N.Y. 1993) ("In a civil RICO suit, the Court applies the criminal standard in determining aiding and abetting liability."), *modified*, 831 F. Supp. 167 (S.D.N.Y. 1993), *aff'd sub nom.*, *United States v. Carson*, 52 F.3d 1173 (2d Cir. 1995).

- 15 -

To demonstrate the "defendant acted with specific intent, [a plaintiff] need not establish that he knew all of the details of the crime, only that he joined the venture, [that he] shared in it, and that his efforts contributed towards its success." *Huezo*, 546 F.3d at 179-80 (alteration in original). Plaintiffs need only allege aiding and abetting of a federal crime under the lenient notice pleading standards of Rule 8(a). *United States v. Dist. Council of N.Y.C. & Vicinity of United Bhd. of Carpenters & Joiners of Am.*, 778 F. Supp. 738, 746-47 (S.D.N.Y. 1991).

First, Defendants do not dispute Plaintiffs sufficiently allege bad actors violated 18 U.S.C. §§1956, 1957, and 2314. ¶237. Second, each KuCoin Defendant knew, or should have known, bad actors opened and utilized KuCoin accounts to launder crypto, engaged in monetary transactions derived from criminal activities, and transferred crypto across state lines. ¶¶51-56. Even though Defendants had access to the Crypto Defender's Alliance ("CDA") blacklist, and even though the blacklist identified numerous KuCoin wallets, Defendants continued to service those KuCoin accounts, take custody of crypto transferred to those wallets after they were blacklisted, and enabled bad actors to utilize KuCoin's exchange to launder stolen funds.[10] ¶¶54-56.

Furthermore, Defendants acted with intent to contribute to the success of the underlying crimes by helping bad actors avoid providing identifying information and by refusing to implement adequate AML or KYC policies. ¶¶137-156, 237. *Longshoremen's Ass'n*, 812 F. Supp. at 1327 (upholding allegations of aiding and abetting a predicate act and noting that "were it not for the joint cooperation of each of these three defendants, the . . . scheme could not have succeeded"). Additionally, Chainalysis aided and abetted these violations by partnering with KuCoin to give

---

[10]    Defendants do not dispute they had access to the CDA blacklist or that they failed to freeze accounts that had previously been blacklisted. Defendants categorically failed to refute or otherwise mention the allegations regarding the CDA blacklist and the myriad of blacklisted wallets Defendants permitted bad actors to use after being blacklisted. Any attempt to do so on reply is improper. *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief.").

KuCoin the appearance of compliance. ¶¶77-78.  Through Chainalysis' KYT software, Defendants were aware of, yet continued aiding and abetting, the underlying violations.  ¶¶179-182.[11]

Chainalysis' contention that "Plaintiffs do not plead that Chainalysis aided and abetted . . . money laundering" is without merit.  Chainalysis MTD at 8.  The AC alleges "Chainalysis aided and abetted those actions constituting indictable offenses" under 18 U.S.C. §§1956, 1957, and 2314. ¶211(b).  Even had the AC not specifically named Chainalysis as having aided and abetted the predicate acts, they could still be found liable based on factual allegations regarding Chainalysis' involvement in the KuCoin Crypto-Wash Enterprise.  *See Carpenters & Joiners of Am.*, 778 F. Supp. at 753 (explaining that even though the paragraphs of the complaint "do not name [certain defendants], or accuse them of any wrongdoing, those paragraphs survive as predicate acts because [those defendants] are alleged to have aided and abetted the racketeering acts").

### 3.    The AC Adequately Alleges Causation

To bring suit under §1964(c), a plaintiff must plead "(1) the defendant's violation of §1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation." *Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d Cir. 2001). "[I]n order to merit standing, a civil RICO plaintiff must establish that the RICO violation at issue was a proximate cause of the injury to the plaintiff's business or property for which redress is sought." *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1344 (2d Cir. 1994).  "As the Supreme Court has explained, proximate cause is a 'flexible concept' that is 'generally not amenable

---

[11]    Chainalysis relies on the Supreme Court's recent decision in *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280 (2025) to avoid aiding and abetting liability, but Chainalysis engaged in the exact "pervasive, systemic, and culpable" conduct the Supreme Court held would be sufficient for liability. *Id.* at 292.  Indeed, Chainalysis went "beyond providing the good on the open market" and took "steps to promote the resulting crime and make it [their] own" by helping the KuCoin Defendants "make it appear as though KuCoin was committed to complying with the law when Defendants knew that was not true." *Id.*; *see also* ¶¶77-78.

to bright-line rules.'" *Alix v. McKinsey & Co.*, 23 F.4th 196, 206 (2d Cir. 2022).  The Supreme Court has "stressed the difficulty of achieving precision in fashioning a test for determining whether a plaintiff's injury was sufficiently 'direct' to permit standing under RICO." *Colin Serv.*, 271 F.3d at 381 (noting that the Supreme Court "expressly warned against applying a mechanical test detached from the policy considerations associated with the proximate cause analysis at play in the case").

To establish causation, "a plaintiff must plausibly allege the RICO violations were: (1)the proximate cause of his injury, meaning there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct; and that they were (2) the but-for (or transactional) cause of his injury, meaning that but for the RICO violation, he would not have been injured." *Alix*, 23 F.4th at 203.  Plaintiffs have adequately alleged both proximate and "but for" causation.

### a.    Plaintiffs Suffered a Concrete Injury When They Lost the Ability to Track, Prove Ownership over, and Potentially Recover Their Stolen Crypto

"A plaintiff has been 'injured in his business or property' if his business or property has been harmed or damaged.  Section 1964(c) requires nothing more." *Med. Marijuana, Inc. v. Horn*, 145 S. Ct. 931, 939 (2025).  New York Civil Practice Law and Rules defines "Property" as: "real property, personal property, money, negotiable instruments, securities, or *any thing of value or any interest in a thing of value*."  NY CPLR §1310 (2024).  Here, Plaintiffs' property (*i.e.*, crypto), and their interest in their property, was injured during Phase 2 of the theft when Defendants, along with the bad actors, engaged in conduct that resulted in the laundering of their stolen crypto.

After the stolen crypto was no longer in Plaintiffs' possession (*i.e.*, after Phase 1 of the theft), Plaintiffs continued to hold a property interest in the crypto and retain benefits, including the ability to track and prove ownership of the crypto on the permanent ledger of the blockchain.  ¶¶114-115; *see also* ¶¶162-163 (showing the movement of Plaintiffs' crypto after Phase 1 and into KuCoin accounts).  Plaintiffs' loss of the ability to prove ownership harms potential legal claims, and the

Second Circuit has made clear that "[t]here is no dispute that a legal cause of action constitutes a species of property protected by the Fourteenth Amendment's Due Process Clause." *N.Y. State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 163 (2d Cir. 2001); *Horn v. Med. Marijuana, Inc.*, 80 F.4th 130, 138 (2d Cir. 2023) ("nothing in RICO's text or structure provides for ignoring damage to a[] . . . legal entitlement"). Additionally, the ability to track and prove ownership of their stolen crypto was a valuable property interest because "victims often have a strong ability to track and potentially recover their stolen assets as long as the information is trackable on the blockchain." ¶¶108-109.

Plaintiffs' RICO claim seeks to recover for the concrete injury to their property that occurred during the Phase 2 laundering of the theft, which is a harm separate from, and in addition to, the harm caused during Phase I of the theft. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) ("'[c]oncrete' is not, however, necessarily synonymous with 'tangible' . . . we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete"). At trial, Plaintiffs intend to quantify the concrete financial loss incurred as a direct result of the laundering of their crypto at KuCoin. *See Horowitz*, 28 F.3d at 1343 (holding that the value of business opportunities lost due to defendant's RICO violations is compensable); *Mid Atl. Telecom Inc. v. Long Distance Servs., Inc.*, 18 F.3d 260, 264 (4th Cir. 1994) (noting that "lost customers and lost revenue" were "distinct and independent injuries").

Without any legal support, and ignoring the unique attributes of crypto, Defendants make the conclusory argument that the loss of Plaintiffs' ability to track, prove ownership, and potentially recover their stolen crypto is speculative or not concrete. KuCoin MTD at 13-14 n.9. Contrary to Defendants' argument, these were "thing[s] of value" under New York law and prior to the laundering, Plaintiffs continued to have an "interest in a thing of value." NY CPLR §1310 (2024). While Defendants may argue the AC has not specifically quantified the Phase 2 injuries, the Second

Circuit has made clear that "certainty as to the amount of damages is not required at the pleading stage." *Alix*, 23 F.4th at 207.

### b.    Defendants' Racketeering Activity Proximately Caused Plaintiffs' Injuries

"Proximate cause requires only some direct relation between the injury asserted and the injurious conduct alleged, and excludes only those link[s] that [are] too remote, purely contingent, or indirect." *Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011). Plaintiffs adequately allege there was a direct relationship between Plaintiffs' injuries and Defendants' injurious conduct.

The KuCoin exchange stripped Plaintiffs of their ability to track stolen crypto. ¶¶113-115. The KuCoin Defendants aided and abetted violations of indictable offenses under 18 U.S.C. §§1956, 1957, and 2314, which cannot be separated from the laundering itself. ¶¶211-212. And the KuCoin Defendants' operation of an unlicensed MTB and violations of the BSA, including their refusal to implement adequate AML and KYC policies and procedures, supported by the cover provided by Chainalysis, enabled the bad actors to utilize accounts at KuCoin and launder the crypto on KuCoin's exchange. ¶213.

The BSA is designed to "prevent the laundering of money and the financing of terrorism" and "protect the financial system of the United States from criminal abuse." 31 U.S.C. §5311. Plaintiffs were harmed by the KuCoin Defendants' violations of the BSA. ¶60. Accordingly, it was reasonably foreseeable the KuCoin Defendants' predicate acts would harm Plaintiffs and the members of the Class, which supports proximate causation. *Horowitz*, 28 F.3d at 1346 (finding proximate causation where RICO conduct was "a substantial factor in the sequence of responsible causation, and . . . [plaintiff's injuries were] reasonably foreseeable or anticipated as a natural consequence"); *Colin Serv.*, 271 F.3d at 384 ("We have stated a plaintiff has standing where the plaintiff is the direct target of the RICO violation.").

- 20 -

Defendants do not attempt to explain their argument that Plaintiffs purportedly failed to allege causation with respect to Defendants aiding and abetting violations of indictable offenses under 18 U.S.C. §§1956, 1957, and 2314.  Instead, they simply argue the AC does not adequately allege an indictable offense. KuCoin MTD at 10-11 n.8.  As discussed above in §II.A.2., Plaintiffs adequately allege those indictable offenses and, Defendants have waived any causation arguments with respect to those offenses. *Duracell U.S. Operations, Inc. v. Energizer Brands, LLC*, 2025 WL 2388287, at *2 n.1 (S.D.N.Y. Aug. 18, 2025) (the failure to raise an argument in an opening brief results in forfeiture).

Defendants' primary proximate causation argument is based on the faulty premise that "Plaintiffs' theory . . . overlooks numerous intervening steps and is too attenuated and remote to establish causation."  KuCoin MTD at 2.  Defendants inappropriately focus on conduct that took place during Phase 1 of the thefts and fail to address Plaintiffs' RICO injuries caused by Defendants' predicate acts during Phase 2. *Id*. at 11-14; Chainalysis MTD at 9.  Contrary to Defendants' false description, "[t]he gravamen of Plaintiffs' claim" is *not* "that Defendants' mere existence emboldened bad actors to scam Plaintiffs." KuCoin MTD at 11.  Similarly, contrary to Defendants' argument, Plaintiffs are not seeking to prove that "if KuCoin had complied with all related regulations, the alleged scammers would not have stolen . . . Plaintiffs' cryptocurrency." *Id*. at 8. Plaintiffs' RICO claims focus on the laundering of Plaintiffs' stolen crypto *at KuCoin*. ¶¶160-166, 213.  Plaintiffs do not need to prove Defendants' predicate acts caused the bad actors to steal the crypto in the first place.

Defendants then argue the AC cannot establish proximate causation "because the bad actors were intervening causes that severed any purported link to Plaintiffs' alleged injuries."  KuCoin MTD at 12.  Plaintiffs are not seeking to hold Defendants' liable for "the wrongful acts of unknown,

unrelated third parties," as contended by Defendants.  *Id.*  Rather, Plaintiffs are seeking to hold the

KuCoin Defendants liable for the injuries Plaintiffs suffered *at KuCoin* that were directly caused by

the KuCoin Defendants' criminal conduct.  ¶¶160-166, 213.  Similarly, Plaintiffs seek to hold

Chainalysis liable for its important role in providing cover to the KuCoin Defendants to make it

appear as if they were complying with AML policies and procedures.  ¶¶77-78, 259; *see also Astech-*

*Marmon, Inc. v. Lenoci*, 349 F. Supp. 2d 265, 270 (D. Conn. 2004) (finding proximate causation and

"declin[ing] to draw an arbitrary distinction" between the "clearly foreseen and anticipated"

intervening act and "the Defendants' allegedly illegal actions").

Defendants rely on *Licht v. Binance Holdings Ltd.*, 2025 WL 625303, at *1 (D. Mass. Feb. 5,

2025), which is distinguishable.  KuCoin MTD at 12-13.  The plaintiffs in *Licht* did not distinguish

the Phase 1 theft injury from the Phase 2 laundering injury and sought recovery for injuries caused

by the Phase 1 theft.[12]  Here, the conduct giving rise to RICO violations directly caused Plaintiffs'

injuries during the Phase 2 laundering.  Defendants' reliance on *Singh v. Illusory Systems, Inc.*, 727

F. Supp. 3d 500, 508 (D. Del. 2024) (KuCoin MTD at 13) is also misplaced.  Even though *Singh*

related to the theft of crypto, the similarities end there.  In *Singh*, the plaintiffs "suggest[ed] that the

mere existence of the [enterprise] caused [p]laintiffs' harms" and the "[p]laintiffs do not directly link

the lack of regulatory licensing (or its claim that the application for such might have been denied) to

[p]laintiffs' losses." 727 F. Supp. 3d at 509.  Here, Plaintiffs allege a direct link between KuCoin's

violations of the BSA, as well as the aiding and abetting of the bad actors' criminal conduct, to

Plaintiffs' losses.  ¶¶160-166.  Importantly, unlike in *Singh*, where the defendants were unaware of

---

[12]    The facts in *Licht* are distinguishable for other reasons as well.  Each of the *Licht* plaintiffs were the victims of a particular type of scam referred to as "pig butchering," and the "plaintiffs' primary theory is that defendants were involved in these pig butchering schemes" (*id*. at *17) and had Binance complied with the laws, it would have "stopp[ed] the schemes before the butchering." *Id*. at *1.  Plaintiffs, here, do not claim Defendants would have prevented the thefts during Phase 1.

the breaches in security, Defendants knew that bad actors used KuCoin to launder crypto through their KuCoin accounts, including through accounts that had previously been blacklisted.  ¶¶54-56, 150-154.

Furthermore, contrary to Defendants' argument that their predicate acts were "too remote" to satisfy proximate causation, it is difficult to imagine more direct conduct relating to the laundering of the stolen crypto than the aiding and abetting of the laundering itself and violations of laws enacted to prevent laundering.  KuCoin MTD at 13.  *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 141 (2d Cir. 2018), relied on by the KuCoin Defendants, is distinguishable. KuCoin MTD at 11, 13.  In *Empire Merchants*, the Second Circuit held the plaintiff had not alleged it was directly injured because, among other reasons, Empire alleged "it was injured because it *would have* sold more liquor but for the smuggling operation."  902 F.3d at 145 (emphasis in original).  Here, Plaintiffs' injury is not speculative or hypothetical.  Rather, Plaintiffs actually lost their ability to track and prove ownership of their crypto.

The Second Circuit held proximate causation was adequately alleged when an injury was far more speculative than alleged here, in *Alix*, 23 F.4th 196.  In *Alix*, the plaintiff alleged it was injured as a result of a lost business opportunity.  The court examined the likelihood that *Alix* would have obtained the business had defendants not engaged in the wrongful conduct.  *Id.* at 209-210.  Here, it cannot be seriously disputed Plaintiffs lost the ability to track and prove ownership of their crypto. Only Plaintiffs' injury based on the loss of their ability to potentially recover their crypto requires an inquiry into what would have occurred had Defendants not engaged in the wrongful conduct.  As in *Alix*, it is reasonable to infer that Plaintiffs would have potentially been able to recover their crypto had it not been laundered at KuCoin.  *Id.*

The KuCoin Defendants' reliance on *DDR Construction Services, Inc. v. Siemens Industry, Inc.*, 770 F. Supp. 2d 627, 653 (S.D.N.Y. 2011) misses the mark. KuCoin MTD at 14. In *DDR*, a third entity defrauded New York City, and, as the court held, for the plaintiff "to have felt any injury, several intervening acts share responsibility" with defendants and "there are several other parties with an incentive to sue for the violations described." 770 F. Supp. 2d at 653. Here, Defendants' aiding and abetting of the laundering, along with their refusal to implement adequate KYC and AML policies, directly led to Plaintiffs' injuries. And Defendants have not demonstrated (nor can they) that anyone else is "better situated to sue" than Plaintiffs. *Alix*, 23 F.4th at 208; *Ridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 659 (2008) (holding plaintiffs established proximate causation even though defendant's RICO predicate acts were directed at a third party); *Anza*, 652 F.3d at 326 ("if defendants' [racketeering activity] has not sufficiently directly harmed [plaintiff] to meet the standard of proximate cause, we find it difficult to envision anyone who could show injury proximately caused by that investment—or to fathom to whom Congress meant to grant a private right of action under subsection (a)").

Defendants' reliance on *Oki Semiconductor Co. v. Wells Fargo Bank, National Ass'n*, 298 F.3d 768 (9th Cir. 2002) is similarly misplaced. KuCoin MTD at 16; Chainalysis MTD at 10-12. In *Oki*, thieves stole and then sold semiconductors, and, with the assistance of a Wells Fargo bank teller, laundered the proceeds from the sale. 298 F.3d at 774. Oki filed suit seeking to "hold Wells Fargo [not the bank teller] liable for the theft of its semiconductors." *Id*. at 773. The court in *Oki* held the "direct and proximate cause of Oki's loss was not [the bank teller's] money laundering at Wells Fargo; it was [the] theft." *Id*. at 774. Unlike in *Oki*, the theft of Plaintiffs' crypto in the instant matter was not complete until after the laundering; and due to the unique traceability of crypto, the laundering itself caused a distinct injury to Plaintiffs. ¶¶164-166.

Furthermore, contrary to Chainalysis's argument, Plaintiffs do not "concede that only KuCoin could have prevented the alleged money laundering." Chainalysis MTD at 11. Chainalysis played an important role in the KuCoin Crypto-Wash by helping KuCoin make it falsely appear as if it was complying with required rules and regulations.[13] ¶¶77-78.

Chainalysis argues the comparison of Defendants to a getaway driver during a bank robbery defeats proximate causation because a "getaway driver is not the proximate cause of the victim's losses–the theft is." Chainalysis MTD at 12. Chainalysis misses the point by focusing on the injury caused by Phase 1 of the theft as opposed to Phase 2. Keeping with the same metaphor, however, Defendants did not just drive the car. They also provided the robbers with a tool to remove a tracking device embedded in the stolen goods.

### c.    Defendants' Racketeering Activity Was the "But For" Cause of Plaintiffs' Injuries

"But for Defendants' scheme, Plaintiffs and the putative Class . . . would have been able to track and potentially recover their stolen crypto." ¶203; *see also* ¶¶164, 242. The KuCoin Defendants knew bad actors used KuCoin to launder stolen crypto. ¶¶43-45, 180-181. They viewed those criminals as a revenue source, however, so they encouraged them to use KuCoin to launder crypto and refused to take steps to protect Plaintiffs and the Class members. ¶181. Even though numerous KuCoin wallets were blacklisted and associated with illicit conduct, KuCoin continued servicing those accounts in violation of the BSA and refused to take steps to block nefarious conduct through those accounts. ¶¶54-56, 180-181.

First, since the KuCoin Defendants controlled and operated the KuCoin exchange, the bad actors would have been unable to launder the crypto had the KuCoin Defendants not aided and

---

[13]    There is no "split" as to how Plaintiffs must plead causation (Chainalysis MTD at 10 n.4), as the Second Circuit has made clear that Plaintiffs need only plead that the "racketeering enterprise" directly injured Plaintiffs. *Baisch v. Gallina*, 346 F.3d 366, 374-75 (2d Cir. 2003).

abetted their efforts.  Second, had the KuCoin Defendants not refused to implement adequate AML and KYC policies and procedures, KuCoin would have either: (i) prevented the bad actors from opening or using KuCoin accounts to launder Plaintiffs' stolen crypto; or, at a minimum, (ii) identified the bad actors involved or filed SARs as a result of the suspicious transactions made in connection with the laundering.  This would have enabled Plaintiffs to pursue their stolen assets after they were transferred out of KuCoin.  ¶115.  *United States Sec. & Exch. Comm'n v. Alpine Sec. Corp.*, 982 F.3d 68, 73 (2d Cir. 2020) (stating, "Congress concluded that . . . records and reports [under the BSA] have a high degree of usefulness in criminal...investigations or proceedings."); *Colin Serv.*, 271 F.3d at 385 (finding direct causation where "no class of potential plaintiffs" have been more "directly injured" than those who brought suit).

As with their proximate causation argument, Defendants' "but for" causation argument inappropriately focuses on the Phase 1 initial theft instead of the Phase 2 laundering that caused Plaintiffs' RICO injuries.  Therefore, Plaintiffs do not need to show the bad actors "would not have stolen Plaintiffs' cryptocurrency" (KuCoin MTD at 15); and the intervening steps fabricated by Defendants in support of their argument with respect to non-KuCoin platforms are irrelevant.  *Id*. at 16 (discussing "the complex, multi-step scheme that the hackers allegedly undertook *before* interacting with KuCoin").

The KuCoin Defendants wrongly argue "Plaintiffs' theory assumes" that had KuCoin complied with the BSA, bad actors would not have tried to launder the crypto, or they would have been unsuccessful at laundering the stolen crypto through other platforms.  *Id*. at 15.  What may have happened outside of KuCoin is not relevant.  Plaintiffs were injured by the laundering of their stolen crypto *at KuCoin*, and only conduct that caused the injuries at KuCoin need to be examined.  The

proper question is whether the crypto laundering would have occurred *at KuCoin* "but for" Defendants' predicate acts. The answer to that question is no.

The KuCoin Defendants also argue they cannot be the "but for" cause of Plaintiffs' injuries because other crypto exchanges may have also violated the law, refused to implement AML and KYC policies, and enabled bad actors to launder stolen crypto. KuCoin MTD at 15 n.10 (referencing lawsuit against Binance). Defendants cannot insulate themselves from liability for their own racketeering conduct by pointing to other crypto exchanges engaging in similar criminal conduct. *Am. Optical Corp. v. N. Am. Optical Corp.*, 489 F. Supp. 443, 452 (N.D.N.Y. 1979) ("the existence of other wrongdoers is not an excuse for defendant[s'] misconduct").

Defendants incorrectly describe Plaintiffs' injury by stating: "Plaintiffs assume they would have been able to recover their stolen cryptocurrency." KuCoin MTD at 16. Contrary to Defendants' description, Plaintiffs allege that prior to losing the ability to track and prove ownership of their crypto, "victims often have a strong ability to track and *potentially* recover their stolen assets." ¶109. Defendants' list of factual issues purportedly impacting the likelihood of recovery misses the point, because those items relate to the quantification of the injury and not whether Plaintiffs lost the ability *to potentially* recover stolen assets.[14]  KuCoin MTD at 16.

Defendants' remaining arguments are meritless. Contrary to the KuCoin Defendants' argument that the "harm was directly caused by the scammers" (KuCoin MTD at 16 (citing *Licht*, 2025 WL 625303, at *40)), the acts of a defendant need not be the sole cause of an injury. *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 179 (S.D.N.Y. 2018) ("[P]laintiffs do not have to prove that the unlawful activity that the defendants allegedly engaged in was the sole cause of their injuries[.]"); *see also Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 267-69 (1992)

---

[14]    RICO claims are "properly measured under the more liberal pleading requirements of Rule 8(a)." *Angermeir*, 14 F. Supp. 3d at 145.

(noting that Congress intended for the Sherman Act and RICO Act to have the same causation standard). The timing of the laundering of Mr. Supples' crypto in December 2024, after KuCoin purportedly adopted a KYC program for new customers, does not defeat causation. KuCoin MTD at 16. KuCoin's KYC and AML program continued to be inadequate, as shown by KuCoin's continued relationship with the notorious currency mixer Tornado Cash and KuCoin's illegal servicing of more than 150,000 New York customers. ¶¶104, 236. It was not until January 2025 when Defendants pled guilty and paid over $300 million to settle the DOJ's criminal charges. ¶¶10-11, 88.

Chainalysis attempts to portray itself as an innocent service provider by arguing it "worked against the thieves' interests by providing software that could have been used to potentially identify them." Chainalysis MTD at 12. Chainalysis ignores it tracked the flow of stolen assets into KuCoin, knew KuCoin generated fees from bad actors, and provided cover to enable the KuCoin Defendants to maintain the KuCoin Crypto-Wash. ¶¶78, 179-181; *see also In re Parmalat Sec. Litig.*, 412 F. Supp. 2d 392, 403-04 (S.D.N.Y. 2006) (finding but for causation where the defendants' racketeering activity caused "inaction" to potentially stop the injury). In the absence of Chainalysis' conduct, the authorities would have cracked down on KuCoin's compliance violations sooner.

### 4.    The AC Adequately Alleges a Domestic Injury

The KuCoin Defendants conflate the AC's allegations to argue plaintiffs cannot "allege and prove a domestic injury to business or property." KuCoin MTD at 21. In doing so, the KuCoin Defendants incorrectly focus on the location of the third-party hackers (*id*. at 21-22) and ignore the AC's well pled allegations establishing Plaintiffs' injuries arose in the United States: (i) Plaintiffs are

U.S. residents who held crypto located in the U.S.[15] and third parties targeted their U.S. assets (¶¶22-23); (ii) KuCoin's exchange, housed on U.S. servers, was where the stolen cryptocurrency was laundered and where the traceability of Plaintiffs' crypto was eliminated (¶24); and (iii) the KuCoin Defendants actively serviced and targeted U.S.-based customers for KuCoin (¶¶19, 42). *Yegiazaryan v. Smagin*, 599 U.S. 533, 545-56 (2023) (holding defendant "took domestic actions" and the "injurious effects of the racketeering activity largely manifested in [the U.S.]").

### 5. The AC Adequately Alleges RICO Conspiracy Under §1962(d)

"The essence of a RICO conspiracy is an agreement to commit a substantive violation." *Choupak*, 2014 WL 1509236, at *21. The Second Circuit has made clear a plaintiff need only establish each defendant "knew about and agreed to facilitate the scheme." *Gallina*, 346 F.3d at 377. Plaintiffs need only "allege facts from which it can be inferred that defendants consciously agreed to engage in a RICO conspiracy." *Trib. Co. v. Purcigliotti*, 869 F. Supp. 1076, 1101 (S.D.N.Y. 1994), *aff'd sub nom.*, *Trib. Co. v. Abiola*, 66 F.3d 12 (2d Cir. 1995).

Defendants overlook the AC's clear language to argue it does not allege a conspiracy under §1962(d). The AC sufficiently alleges each defendant "with knowledge and intent . . . agreed": "(i) to execute the scheme; (ii) to enable customers to use KuCoin without requiring KYC or implementing AML policies, including U.S.-based users; and (iii) to gain market share and maximize fees and liquidity[.]" ¶¶196, 199. These allegations alone are sufficient under the liberal pleading requirements of Rule 8(a), but the AC goes further and describes each defendant's agreement to participate in, and knowledge of, the KuCoin Crypto-Wash Enterprise. *Serin*, 2009 WL 7823216, at *14; *see also U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d

---

[15]    The AC explicitly alleges that both of the Plaintiffs' wallet accounts were located in the U.S. ¶¶22-23. Any challenge to these allegations by Defendants at this stage is inappropriate and can be determined by the Court only after discovery has been conducted by the parties.

432, 454 (S.D.N.Y. 2004) (denying motion to dismiss RICO conspiracy claim where "conclusory statements [in the complaint] [were] buttressed by . . . more specific allegations").

Defendants Gan and Tang "admitted that they knowingly owned . . . part of a money transmitting business that was not registered or licensed in the United States" and agreed that their "conduct, as admitted, violated Title 18, United States Code, Sections 1960(a) and (b)(1)(A) and (B)."  ¶90; *see also* Kaufman Decl. Exs. 3-4.  Similarly, defendant Peken admitted that "KuCoin [knowingly] . . . violated United States law by failing to register with FinCEN as a money transmitting business" and "that the conduct affected interstate and foreign commerce."  ¶¶91-92; *see also* Kaufman Decl. Ex. 2 at 22-23.  *See Metro. Transp. Auth. v. Contini*, 2005 WL 1565524, at *5 (E.D.N.Y. July 6, 2005) (denying motion to dismiss RICO conspiracy claim where plaintiff "alleged [an individual defendant] to have been in charge of the day-to-day operations of [a corporate defendant]," such that the individual was alleged to be "a sufficiently high level employee to impute knowledge of the wrongdoing on [the corporate defendant]").[16]

Moreover, the AC alleges Chainalysis and the KuCoin Defendants agreed to a partnership "to make it appear as if [KuCoin] were seeking to comply with KYC and AML rules and regulations, even though that was not true." ¶77; *see also Crabhouse of Douglaston Inc. v. Newsday Inc.*, 801 F. Supp. 2d 64, 90 (E.D.N.Y. 2011) (denying motion to dismiss RICO conspiracy claim where plaintiff alleged each defendant "agreed to participate in a scheme whose ultimate objective must have been known to its participants" and where one defendant, "who operated solely at the behest of his

---

[16]    The KuCoin Defendants' reliance on *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406 (E.D.N.Y. 2017) is misplaced.  KuCoin MTD at 20.  Unlike *Flexborrow*, here the KuCoin Defendants *admitted* to "knowingly" owning an unlicensed MTB, and took concerted efforts to avoid AML and KYC requirements under the BSA.  ¶¶91-92; *see Purcigliotti*, 869 F. Supp. at 1101 ("A defendant's agreement may be inferred from circumstantial evidence of his status in the enterprise or knowledge of the wrongdoing.").

superiors, would have known that the purpose behind his task" was to further the fraudulent scheme).

Plaintiffs do not, as Chainalysis contends, assert "bald conclusion[s] that Defendants 'agreed to participate in . . . the conspiracy[.]'" Chainalysis MTD at 9 (citing ¶198). Instead, the AC alleges Chainalysis knew that "even though KuCoin had access to information and red flags alerting KuCoin to potential crypto laundering and other illicit activities, KuCoin refused to implement adequate KYC and AML policies and procedures or dedicate resources to attempt to prevent those activities" and that "Chainalysis was complicit with the KuCoin Defendants' refusal to prevent money laundering on the KuCoin platform in order to maintain the benefits of its partnership with KuCoin." ¶78.

Chainalysis does not dispute it had access to information showing KuCoin ignored clear signs of money laundering, yet Chainalysis continued its partnership with KuCoin to further the conspiracy. *Serin*, 2009 WL 7823216, at *14 (upholding allegations of RICO conspiracy where plaintiff alleges "each of the individual [d]efendants, by nature of their positions . . . knew of the general nature of the conspiracy and facilitated the furtherance of the conspiracy; and that none of the [d]efendants have withdrawn or otherwise dissociated themselves from the conspiracy or the other conspirators"). Indeed, Chainalysis need "not agree to commit or facilitate each and every part of the substantive offense," and "it suffices that [Chainalysis] adopt[ed] the goal of furthering or facilitating the criminal endeavor." *United States v. Yannotti*, 541 F.3d 112, 122 (2d Cir. 2008); *see also State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141, 151 (E.D.N.Y. 2005) (denying motion to dismiss RICO conspiracy claim against defendants whom plaintiffs alleged to have played a "'support' role . . . in furtherance of the pattern of racketeering activity").

Finally, the AC alleges each defendant "benefitted financially from the scheme in the form of profits and income derived directly from their participation in the scheme[,]" which "supports an inference that Defendants knowingly participated in the conspiracy." *Palazzolo*, 346 F. Supp. 3d at 464-65. "As a result of KuCoin's inadequate KYC and AML policies, KuCoin, Gan, and Tang were able to collect significant transaction fees, increase liquidity on the KuCoin exchange, and drive revenue and profits by furthering their image as promoters of anonymous and unregulated financial transactions, attracting bad actors, fraudsters, and other transacting parties seeking to evade scrutiny." ¶272.

Additionally, "Chainalysis earned lucrative fees from KuCoin by tracking the illicit transactions and providing KuCoin access to red flags and other information showing illicit transactions flowed through KuCoin accounts." *Id.*; *see also United States v. Heras*, 609 F.3d 101, 111 (2d Cir. 2010) (holding "anticipated compensation" based on possible "achievement of [a] . . . scheme" may "support[] a jury inference that a defendant knows and has adopted the conspiracy's goals"); *United States v. Aleskerova*, 300 F.3d 286, 293 (2d Cir. 2002) ("A defendant's knowing and willing participation in a conspiracy may be inferred from . . . evidence that the defendant . . . received or expected to receive a share of the profits from the conspiracy.").

### B. Plaintiffs Adequately State Conversion and Aiding and Abetting Conversion Claims

#### 1. Any Statute of Limitations Defense Is Either Inapplicable or Without Merit

As a threshold matter, contrary to the KuCoin Defendants' assertions, the parties *do not* agree that "New York law governs the conversion and aiding and abetting claims." KuCoin MTD at 22 n.14. As the AC alleges, Plaintiff Reca is an individual domiciled in Surfside, Florida (¶22) who is entitled to timely bring her common law claims under Florida law – the location of the injury alleged in the operative pleading – pursuant to Florida's four-year statute of limitations. *See Bove v. PBW*

*Stock Exch., Inc.*, 382 So.2d 450, 452-53 (Fla. 2d DCA 1980) (citing Fla. Stat. §95.11(3), which applies a four-year statute of limitations for conversion and aiding and abetting claims in Florida); *see also Gray v. Busch Ent. Corp.*, 886 F.2d 14, 15 (2d Cir. 1989) (when the domiciles of the parties differ, the location of the injury determines the governing substantive law); *Harris v. City of N.Y.*, 186 F.3d 243, 249 (2d Cir. 1999) (explaining an "Amended Complaint[] is the legally effective pleading for Rule 12(b)(6) purposes"). Moreover, any statute of limitations defense asserted by Defendants does not apply to Plaintiff Supples who, in December 2024, had cryptocurrency stolen and laundered through KuCoin. ¶23.

Further, even assuming *arguendo* New York's three-year statute of limitations applies to Plaintiff Reca, her claims for conversion and aiding and abetting would be equitably tolled because Reca exercised reasonable diligence by attempting to sue the bad actor who stole her crypto. *See* Def. Ex. 1. Courts have emphasized that plaintiffs bear the burden of demonstrating equitable tolling applies, which requires showing both diligence in pursuing their legal rights and the presence of extraordinary circumstances that prevented timely filing. *See Lama v. Malik*, 58 F. Supp. 3d 226, 233 (E.D.N.Y. 2014) (equitable tolling applies when the plaintiff acts with reasonable diligence and it is justified by extraordinary circumstances). Here, KuCoin's wrongful conduct was hidden from the public for years and it was not until the DOJ unsealed the indictment against defendants Peken, Gan, and Tang that the full extent of Defendants' wrongful conducted was unearthed and known to class members such as Plaintiff Reca. ¶¶11, 88-99; *see also* Kaufman Decl. Ex. 5. Defendants' own citations of authority acknowledge this deceptive conduct can amount to extraordinary circumstances

and weigh in favor of invoking the doctrine of equitable tolling to defeat Defendants' statute of limitations defense.[17]  *See* KuCoin MTD at 23-24.

### 2.    Plaintiffs Adequately State a Conversion Claim

A plaintiff alleging conversion under Florida law "must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property."  *Taubenfeld v. Lasko*, 324 So. 3d 529, 541-42 (Fla. 4th DCA 2021).  The AC sufficiently alleges each element.

First, Plaintiffs allege ownership over their crypto laundered through KuCoin.  ¶¶22-23, 249-250.  As can be done with Plaintiffs' specific, identifiable cryptocurrency, the Class members' cryptocurrency assets at issue are specific, identifiable property and can be traced to and from KuCoin accounts.  ¶251.

Second, Plaintiffs allege KuCoin wrongfully asserted dominion over their crypto when it facilitated transfers of Plaintiffs' stolen crypto to the KuCoin exchange without following KYC and AML protocols to screen for bad actors and criminal activity.  ¶¶257-258.  As a result of the knowingly inadequate KYC and AML policies, the KuCoin Defendants were able to affirmatively and unlawfully retain possession of stolen cryptocurrency, collect substantial transaction fees, increase liquidity on KuCoin's exchange, and drive revenue and profits by furthering KuCoin's image as a promoter of anonymous and unregulated financial transactions, attracting bad actors seeking to evade scrutiny.  ¶258.  Accordingly, Plaintiffs adequately state a claim for conversion.

---

[17]    Defendants' remaining authority does not state otherwise.  By delaying their public guilty pleas until January 2025, Defendants' "affirmative conduct [became] the primary reason why the claimant failed to pursue his claims in a timely fashion."  *Mahmood v. Rsch. in Motion Ltd.*, 2012 WL 242836, at *5 (S.D.N.Y. Jan. 24, 2012); *see also Lewin v. Richard Avedon Found.*, 2015 WL 3948824, at *5 (S.D.N.Y. June 26, 2015) ("[E]quitable tolling . . . is only available when the party is unable, through due diligence, to discover that he has any claim at all.").

Defendants attempt to interject a knowledge requirement into Plaintiffs' conversion claim by applying New York law. KuCoin MTD at 24-25; *see also Amusement Indus., Inc. v. Midland Ave. Assocs., LLC*, 820 F. Supp. 2d 510, 534 (S.D.N.Y. 2011) (conversion claim must allege "someone, intentionally and without authority, assume[d] or exercise[d] control over personal property belonging to someone else, interfering with that person's right of possession"). Even assuming *arguendo* New York law governs Plaintiffs' conversion claim, Plaintiffs still adequately state a claim for conversion. The KuCoin Defendants are not, as they assert, "innocent possessors," as they refused to implement KYC and AML policies, despite conceding the failure to do so would enable "fraud, money laundering, and terrorist financing" on KuCoin's exchange. KuCoin MTD at 25; ¶¶52, 96. As such, Plaintiffs were not required to make any effort to contact KuCoin regarding their stolen assets. *Leveraged Leasing Admin. Corp. v. PacifiCorp Cap., Inc.*, 87 F.3d 44, 49-50 (2d Cir. 1996) ("[W]here the defendant holds the property unlawfully . . . no demand and refusal are necessary to render the defendant liable.").

Further, Plaintiffs allege the KuCoin Defendants knew bad actors were transferring crypto to KuCoin. ¶252. Because KuCoin had access to lists of blacklisted wallets designated by other exchanges and government authorities, the KuCoin Defendants had actual knowledge that cryptocurrency deposited into KuCoin by bad actors associated with these wallets was obtained through illicit or fraudulent means. ¶¶53-54, 253. Specifically, the KuCoin Defendants permitted numerous CDA-blacklisted KuCoin deposit addresses to continue using the platform after the date of blacklisting, *with one such deposit account receiving over 20,000 transfers valued at more than $2,300,000 after it was blacklisted.* [18] ¶¶55-56, 255.

---

[18]    This brazen conduct is a far cry from the "passive indifference" described in the KuCoin Defendants' cited authority. KuCoin MTD at 24-25; *Marks v. Energy Materials Corp.*, 2015 WL 3616973, at *5 (S.D.N.Y. June 9, 2015) (defendant was an innocent possessor where "Plaintiff

Finally, the KuCoin Defendants knew that they were in possession of stolen cryptocurrency because of, among other things, KuCoin's partnership with Chainalysis.  ¶¶70-78, 259.  KuCoin partnered with Chainalysis to implement KYT software "to expose and block money laundering and other illicit actions in real-time and further deepen KuCoin's commitment to security and compliance."  ¶¶70, 180.  Chainalysis' KYT platform provided KuCoin with knowledge through alerts that "detect as much high risk cryptocurrency activity as possible with fewer false positives." ¶¶180, 259.

### 3.    Plaintiffs Adequately State a Claim for Aiding and Abetting Conversion

To state a claim for aiding and abetting conversion under Florida law, a plaintiff must allege: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor."  *Lasko*, 324 So. 3d at 543-44; *see also Amusement Indus., Inc.*, 820 F. Supp. 2d at 535-536 ("[a] claim for aiding and abetting conversion" under New York law "requires proof of . . . knowledge of the violation" and "substantial assistance").  Substantial assistance occurs when one "affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables [the fraud] to proceed."  *Id*. at 536.  Plaintiffs meet the underlying violation and knowledge prongs as to the KuCoin Defendants for the reasons stated above in §II.A.2.

The AC details how Defendants offered substantial assistance by, *inter alia*, failing to identify or report suspicious bad actors or transactions to the authorities, and by willfully preventing

---

alleged only that [Defendant] was 'on notice of the need' to inquire").  Allegations of willfully ignoring suspicious or illegal activity are sufficient to plead actual knowledge. *See In re First All. Mortg. Co.*, 471 F.3d 977, 999 (9th Cir. 2006) ("That [the bank] came upon red flags which were seemingly ignored was enough to establish actual knowledge under the California aiding and abetting standard[.]").

Plaintiffs from recovering their assets by failing to use Chainalysis's KYT software to identify the thieves.  ¶¶267-271; *see also* §II.A.2.

Additionally, Chainalysis earned lucrative fees from KuCoin by tracking the illicit transactions and providing: (i) access to blacklisted KuCoin deposit addresses; and (ii) other proprietary information showing illicit transactions flowed through KuCoin accounts.[19]  ¶272.  At the same time, Chainalysis knew KuCoin did not use Chainalysis' software solutions or services to prevent crypto laundering and publicly highlighted its partnership with Chainalysis for appearances only.  This, in turn, provided KuCoin cover from regulatory scrutiny so the KuCoin Defendants could continue avoiding KYC and AML laws.  *Id.*  In effect, the KuCoin Defendants and Chainalysis were consciously participating in the conversion of Plaintiffs' and the Class members' cryptocurrency, such that their assistance in the conversion was pervasive, systemic, and culpable.[20]  ¶273.

## C.    Leave to Amend

Plaintiffs submit that their claims are sufficiently pled under the Rule 8(a) pleading standard. *Angermeir*, 14 F. Supp. 3d at 145 (Rule 8(a) applies to RICO claims); *In re Verestar, Inc.*, 343 B.R.

---

[19]    The AC details Chainalysis' self-described ability to detect money laundering and other illicit actions involving blacklisted KuCoin deposit addresses (¶¶70-78, 180-181) – which is far more than the "red flags" and "suspicious circumstances" alleged in Chainalysis' cited authority.  *Huang v. Hong Kong & Shanghai Banking Corp. LTD*, 2022 WL 4123879, at *5 (S.D.N.Y. Sep. 9, 2022).

[20]    Defendants' reliance on *In re Refco Inc. Securities Litigation*, 2011 WL 13168450 (S.D.N.Y. Dec. 8, 2011) is easily distinguishable, as the plaintiff there was unable to demonstrate the bank defendants "knew that any transfers to or from [the bad actors] were unauthorized."  *Id.* at *12. Here, Plaintiffs allege in detail that Defendants had access to multiple blacklisted wallets and other information showing illicit transactions flowed through KuCoin accounts.  ¶272.  Similarly, Defendants' citation to *Kirschner v. Bennett*, 648 F. Supp. 2d 525 (S.D.N.Y. 2009) is misplaced because unlike here, the plaintiff failed to allege "defendants' knowing about, or doing anything to facilitate, the looting of customer accounts."  *Id.* at 545; *see also Bigio v. Coca-Cola Co.*, 675 F.3d 163, 175 (2d Cir. 2012) (dismissing aiding and abetting conversion claim based on conclusory allegations of knowledge); *In re Agape Litig.*, 773 F. Supp. 2d 298, 325-27 (E.D.N.Y. 2011) (same).

444, 467 (Bankr. S.D.N.Y. 2006) (Rule 8(a) applies to conversion claims).  Nevertheless, should the Court find the AC to be deficient in any respect, Plaintiffs respectfully request leave to amend. *Barron v. Helbiz, Inc.*, 2021 WL 4519887, at *3 (2d Cir. Oct. 4, 2021) (consistent with Rule 15's "permissive standard," leave to amend should be "freely give[n]").  If the Court deems it necessary, Plaintiffs can amend the complaint to include additional facts, including facts concerning the likelihood of recovery by victims of crypto-theft prior to laundering and the value of transactions at KuCoin through previously identified blacklisted wallets.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs request that the Defendants' respective motions be denied in their entirety.

DATED:  August 29, 2025                     Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
EVAN J. KAUFMAN
JONATHAN A. OHLMANN


                                            */s/ Evan J. Kaufman*
                                            EVAN J. KAUFMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com
johlmann@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ERIC I. NIEHAUS (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
ericn@rgrdlaw.com

- 38 -

SILVER MILLER
DAVID C. SILVER (admitted *pro hac vice*)
JASON S. MILLER (*pro hac vice* forthcoming)
4450 NW 126th Avenue, Suite 101
Coral Springs, FL  33065
Telephone:  954/516-6000
dsilver@silvermillerlaw.com
jmiller@silvermillerlaw.com

*Attorneys for Plaintiff*

**CERTIFICATE OF WORD COUNT**

I, Evan J. Kaufman, hereby certify that the foregoing memorandum of law complies with the formatting and word-count limitations pursuant to Rule 7.1 of the United States District Court for the Southern District of New York and the Court's Order, dated August 5, 2025 (ECF No. 72), because it contains 12,435 words.

*/s/ Evan J. Kaufman*
EVAN J. KAUFMAN