USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _______________
DATE FILED: 9/29/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES K. SUPPLES,

Plaintiff,

-v-

FLASHDOT LIMITED F/K/A PHOENIXFIN LIMITED, *et al.*,

Defendants.

1:24-cv-6316-GHW

MEMORANDUM OPINION & ORDER

GREGORY H. WOODS, United States District Judge:

In December 2024, unknown hackers stole over a million dollars' worth of cryptocurrency from Plaintiff James Supples. Mr. Supples alleges that a portion of his stolen cryptocurrency moved through a series of wallets and was ultimately deposited into KuCoin, a large cryptocurrency exchange. The Court previously dismissed the claims asserted in the first amended complaint in this action, but granted Mr. Supples leave to replead his state-law claims. Mr. Supples then filed the Second Amended Complaint asserting two claims—conversion and aiding and abetting conversion—against the entities and individuals that operated KuCoin (the "KuCoin Defendants"). The KuCoin Defendants moved to dismiss, arguing that Plaintiff had not adequately pleaded the elements of either claim. On July 15, 2026, Judge Sarah L. Cave issued a thoughtful report and recommendation, Dkt. No. 108 (the "R&R"), recommending that both claims be dismissed with prejudice and without leave to amend. Plaintiff timely objected, arguing that Judge Cave failed to consider new factual allegations in the Second Amended Complaint.

Although the Court's analysis diverges in part from the R&R's, the Court agrees with Judge Cave that the Second Amended Complaint does not adequately plead that the KuCoin Defendants converted or aided and abetted a conversion of Plaintiff's cryptocurrency under New York law. Because the Second Amended Complaint does not adequately plead that the KuCoin Defendants

knew they held stolen cryptocurrency, that Plaintiff made an adequate demand for its return, or that the KuCoin Defendants substantially assisted any conversion, the Second Amended Complaint does not state the required elements of either claim. Accordingly, the KuCoin Defendants' motion to dismiss is GRANTED.

## I. BACKGROUND

### a. Facts[1]

Familiarity with the facts of this case is presumed. The reader is referred to the R&R and to Judge Cave's first report and recommendation, Dkt. No. 80, for a comprehensive description of the facts and procedural history of this case.[2] A brief summary of the relevant factual allegations and procedural history is provided here for context.

Plaintiff alleges that on December 19, 2024, unknown hackers stole six different cryptocurrencies—then worth approximately $1.2 million—from his MEXC.com account. SAC ¶¶°26, 182. He alleges that forensic experts traced approximately $600,000 of the stolen cryptocurrency through intermediary wallets and into deposit addresses at KuCoin on December 20 and 21, 2024. *Id.* ¶¶ 182, 186–88. Plaintiff alleges that certain of those deposit addresses were placed on "blacklists," or "lists accessible to KuCoin . . . that identified those KuCoin wallet addresses as being involved with illicit activity, such as theft." *Id.* ¶¶ 10, 183. He alleges that three KuCoin deposit addresses were blacklisted on December 20, 2024, *id.* ¶ 183, and that KuCoin permitted additional deposits of Plaintiff's cryptocurrency into these blacklisted addresses on December 21, 2024, and transfers from them into KuCoin "hot wallets" on December 21 and 22, 2024, *id.* ¶¶ 189–93.

[1] The facts herein are taken from the Second Amended Complaint, Dkt. No. 90 ("SAC"), and are accepted as true for the purposes of this motion. *See, e.g.*, *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Unless otherwise indicated, this opinion uses acronyms and abbreviations as they were used in the R&R.

On December 23, 2024, Plaintiff contacted KuCoin, stating "[m]y wallets were hacked and my stolen SOLANA has been tracked and is currently in your exchange. The hack happened Dec 19, 2024, over 5200 Solana, BTC and Eth were stolen. The hackers Solana address is . . . ." *Id.* ¶ 184. Eight minutes later, apparently after a KuCoin representative responded, Plaintiff wrote: "Hi Wayne . . . . Please don't let these Solana leave your control!" *Id.* Plaintiff alleges that his pleas "fell on deaf ears" and that "the cryptocurrency was transferred out of KuCoin." *Id.* ¶ 185. And he alleges that on July 9 and 12, 2025, KuCoin permitted "additional" and "even more" cryptocurrency to be transferred from two of the blacklisted deposit addresses to KuCoin hot wallets. *Id.* ¶¶ 190–91.

**b. Procedural History**

This action was initiated on August 21, 2024 by named-plaintiff Sofia Reca. Dkt No. 1. On March 24, 2025, the KuCoin Defendants moved to dismiss the complaint. Dkt. Nos. 45–47. On April 14, 2025, an amended complaint was filed by Ms. Reca adding Mr. Supples as an additional named plaintiff. Dkt. No. 49. The Court denied the first motion to dismiss as moot in light of the amended complaint. Dkt. No. 52. On July 29, 2025, the KuCoin Defendants and Chainalysis each moved to dismiss the amended complaint. Dkt. Nos. 65–69. On November 13, 2025, Judge Cave issued her first report and recommendation, recommending that Plaintiffs' RICO claims be dismissed without prejudice and without leave to amend. Dkt. No. 80. Judge Cave also recommended that the Court decline to exercise supplemental jurisdiction over Plaintiffs' conversion claim and aiding and abetting claim, and should the Court exercise supplemental jurisdiction, Judge Cave recommended that both claims be dismissed with prejudice. The Court dismissed the RICO claims and Ms. Reca's state law claims with prejudice, but granted Mr. Supples leave to amend his state law claims. Dkt. No. 89.

Plaintiff filed the operative complaint—the Second Amended Complaint—on January 26,

2026. *See generally* SAC. The Second Amended Complaint asserts two claims under New York law: conversion and aiding and abetting a conversion of Plaintiff's stolen cryptocurrency. *See generally id.*

On February 25, 2026, the KuCoin Defendants filed their third motion to dismiss, Dkt. No. 97, and an accompanying memorandum of law, Dkt. No. 98. On March 27, 2026, Plaintiff filed his opposition, Dkt. No. 100 ("Opp'n"), and on April 10, 2026, the KuCoin Defendants filed their reply, Dkt. No. 102. Judge Cave heard oral argument on the motion to dismiss on June 23, 2026. *See* Dkt. Nos. 104–06.

**c. The R&R**

On July 15, 2026, Judge Cave issued her second report and recommendation in this action, recommending that the Court grant the KuCoin Defendants' motion to dismiss and dismiss Plaintiff's claims with prejudice and without leave to amend. *See generally* R&R. She concluded that, notwithstanding the new allegations in the SAC, Plaintiff still failed to plausibly allege the essential elements of his conversion and aiding and abetting conversion claims.

First, with respect to Plaintiff's conversion claim, Judge Cave concluded that "even with the additional allegations in the SAC, [Plaintiff] has not sufficiently pled that at the time his cryptocurrency arrived at KuCoin, the KuCoin Defendants actually knew or were willfully blind that the cryptocurrency had been stolen, as could excuse the demand-and-refusal requirement." R&R at 14. Judge Cave reasoned that "[t]he key point in time for assessing the allegations of the KuCoin Defendants' knowledge is when the cryptocurrency arrived at KuCoin, because lawful possession could not become unlawful 'until [the KuCoin Defendants were] informed of the defect of [their] title and ha[d] an opportunity to deliver the property to the true owner.'" *Id.* (quoting *Leveraged Leasing Admin. Corp. v. PacifiCorp Cap., Inc.*, 87 F.3d 44, 49 (2d Cir. 1996)). Because Plaintiff did not notify KuCoin of the theft until December 23, 2024—after KuCoin received the cryptocurrency on December 20 and 21—and because the relevant addresses were not blacklisted "until after the

fact[,]" Judge Cave concluded that the SAC did not plausibly allege that KuCoin knew the cryptocurrency was stolen when it arrived in KuCoin's possession. *Id.* at 14–15. She also concluded that "general knowledge of blacklists" is insufficient under the Court's prior ruling in this action, Dkt. No. 89, and that Plaintiff's remaining allegations of knowledge were conclusory. R&R at 15 (citing *Krys v. Pigott*, 749 F.3d 117, 131–32 (2d Cir. 2014) (finding allegations that defendants knew or consciously avoided knowledge of entity's insolvency were conclusory and implausible)).

Next, Judge Cave concluded that Plaintiff failed to satisfy the demand-and-refusal requirement for a conversion claim under New York law. R&R at 16–18. Judge Cave concluded that Plaintiff's December 23, 2024 emails to KuCoin sufficiently identified the property he claimed. *Id.* at 16. But she concluded that Plaintiff did not make the required demand for the return of that property because he asked KuCoin to maintain custody of the cryptocurrency, not to return it. *Id.* at 16–17 (citing SAC ¶ 184 ("Please don't let these Solana leave your control!")).

Even reading the December 23 emails as a demand for return, Judge Cave concluded that the SAC fails to plausibly allege that the KuCoin Defendants "refused" to do so. *Id.* at 17–18. She observed that the emails themselves show that "Wayne" from KuCoin responded within eight minutes of receiving Plaintiff's initial message, but Plaintiff does not include the content of that communication. *Id.* at 17. Judge Cave stated that the fact that KuCoin did respond contradicts Plaintiff's assertion that his "desperate pleas fell on deaf ears." *Id.* at 17–18 (quoting SAC ¶ 185). Judge Cave also noted that the SAC's repeated use of the passive voice fails to plausibly allege that the KuCoin Defendants transferred Plaintiff's cryptocurrency. *Id.* at 18. And she concluded that the December 23 emails—in which Plaintiff stated that his "stolen SOLANA . . . is currently in your exchange"—contradict the SAC's conclusory allegation that the KuCoin Defendants wrongfully transferred or disposed of Plaintiff's cryptocurrency prior to a demand. *Id.* (quoting SAC ¶¶ 184, 228).

Judge Cave also concluded that "[a]part from the demand-and-refusal requirement, the SAC fails to plausibly allege a Conversion Claim for the additional reason that [Plaintiff] fails to allege '[s]ome affirmative act' by the KuCoin Defendants that deprived [him] (and the Proposed Class members) of their cryptocurrency." *Id.* at 19 (citing *Amusement Indus., Inc. v. Midland Ave. Assocs., LLC*, 820 F. Supp. 2d 510, 534 (S.D.N.Y. 2011) (quoting *State v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 260 (2002))). Judge Cave noted that "the SAC carefully uses the passive voice . . . to obfuscate the absence of an allegation that the KuCoin Defendants performed any 'affirmative act' with respect to [Plaintiff's] or the Proposed Class members') cryptocurrency." *Id.* at 19 (citing *Acklin v. Eichner*, No. 20-CV-7042 (GHW), 2024 WL 775191, at *14 (S.D.N.Y. Feb. 26, 2024)). Instead, she explained, the SAC describes the KuCoin Defendants' failure to act, alleging that if the KuCoin Defendants had adequate anti-money-laundering or know-your-customer procedures, or had they "promptly addressed" Plaintiff's December 23 request, "the laundering could have (and should have) been prevented." *Id.* (quoting SAC ¶ 185).

Judge Cave concluded that Plaintiff does not allege a wrongful transfer by the KuCoin Defendants because the SAC is "all over the place as to where the cryptocurrency went, who moved it, and when"—alleging at times that bad actors moved it, that it "was transferred," and that the KuCoin Defendants transferred it before any demand. R&R at 20 (citing SAC ¶¶ 16, 185, 228). And even if the SAC could be read to allege a transfer by the KuCoin Defendants, it does not allege that any such transfer was wrongful. *Id.* at 20–21.

As to Plaintiff's aiding and abetting conversion claim, Judge Cave concluded that Plaintiff failed to plead actual knowledge, for the reasons discussed as to the conversion claim, and failed to plead substantial assistance, because maintaining the wallets through which the bad actors moved the stolen cryptocurrency, opening accounts, approving transfers, and commingling assets are routine services that do not amount to substantial assistance. R&R at 21–23. Finally, because

Plaintiff had "two—arguably, three—chances to allege viable claims" and neither requested leave to amend nor identified additional facts he could plead, Judge Cave recommended that dismissal be with prejudice and without leave to amend. *Id.* at 23.

**d. Objections to the R&R**

Plaintiff filed timely objections to the R&R on July 29, 2026. Dkt. No. 111 ("Objections" or "Obj."). Plaintiff argues that Judge Cave failed to credit or properly consider several of the new allegations added to the SAC after the Court previously identified the deficiencies in his state-law claims.

First, Plaintiff objects to the R&R's conclusion that the SAC fails to allege the required actual knowledge. Plaintiff argues that, while an aiding and abetting claim requires actual knowledge, "a conversion claim under New York law 'does not require defendant's knowledge that he is acting wrongfully, but merely an intent to exercise dominion or control over property in a manner inconsistent with the rights of another[.]'" Obj. at 7 (quoting *DeVito v. Neiman*, 548 F. Supp. 3d 314, 318 (E.D.N.Y. 2021)).

Plaintiff argues that the R&R mischaracterized the chronology and "overlooked the new facts alleged in the SAC" showing that portions of his cryptocurrency were deposited into KuCoin after the relevant deposit addresses had been placed on the Crypto Defenders Alliance ("CDA") blacklist and the FBI's IVAN database. Obj. at 7–8 (citing SAC ¶¶ 189–92). Specifically, he contends that KuCoin permitted the transfer of Plaintiff's stolen cryptocurrency into deposit addresses after those addresses had been blacklisted, and that KuCoin permitted two internal transactions of Plaintiff's stolen cryptocurrency from the blacklisted addresses to internal hot wallets on December 22, 2024. *Id.* at 8 (citing SAC ¶¶ 190–91). He argues that KuCoin, as a CDA member, had access to that blacklist and therefore knew that his cryptocurrency was being deposited into wallets identified as involved in criminal activity. *Id.* (citing SAC ¶ 58).

Plaintiff argues that regardless of what KuCoin knew when the cryptocurrency arrived on December 20, 2024, the subsequent transactions occurred after the relevant addresses had been identified on the CDA blacklist and IVAN database and therefore support a plausible inference that KuCoin knew it was dealing with stolen cryptocurrency. "Whatever Defendants knew when the crypto first arrived on December 20, 2024, their own later acts of dominion – accepting further deposits into the Blacklisted Addresses, sweeping the crypto into pooled hot wallets, and executing conversions – are each independently actionable." Obj. at 9.

Plaintiff argues that "[t]he R&R further erred by refusing to view Plaintiff's allegations holistically and in determining that the SAC's new allegations regarding industry-accepted red flags of theft . . . could not support an inference of actual knowledge or, at a minimum, willful blindness." Obj. at 12 (citing R&R at 15–16).

Plaintiff also objects to Judge Cave's conclusion that the SAC does not adequately plead demand and refusal. Obj. at 18–22. He argues that the R&R correctly concluded that his December 23 emails identified the property with sufficient specificity and that nothing more—such as an express request for return—was required; that a request to freeze property can constitute a demand; and that KuCoin's failure to act on his December 23 communications amounts to a refusal. *Id.* at 18–20 (citing *Republic of Liberia v. Bickford*, 787 F. Supp. 397, 400–02 (S.D.N.Y. 1992); *Grosz v. Museum of Mod. Art*, 772 F. Supp. 2d 473, 484 (S.D.N.Y. 2010), *aff'd*, 403 F. App'x 575 (2d Cir. 2010)).

Alternatively, Plaintiff argues that no demand was required because the SAC alleges wrongful disposition after KuCoin had notice of the illicit nature of the property. *Id.* at 9, 18 n.9.

Finally, Plaintiff objects to the R&R's conclusion that the SAC fails to plead an affirmative act or substantial assistance, arguing that the R&R drew an adverse inference from the SAC's use of the passive voice and overlooked new allegations that KuCoin pooled, commingled, and converted the stolen cryptocurrency through its hot wallets and internal market-making functions. Obj. at 22–

25. He also objects to dismissal with prejudice and without leave to amend, asserting that he "can allege more facts linking his stolen crypto to the CDA blacklist and the IVAN database." *Id.* at 25.

The KuCoin Defendants did not file objections but filed a brief responding to Plaintiff's Objections on August 12, 2026. *See generally* Dkt. No. 114. They argue that Plaintiff largely repeats arguments that Judge Cave rejected, and that Plaintiff improperly relies on facts and arguments not presented to her, including allegations about the FBI's IVAN database and a willful blindness theory. *Id.* at 2–3, 6 & n.5, 7.

## II. LEGAL STANDARD

### A. Standard of Review of a Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Parties may raise specific, written objections to the report and recommendation within fourteen days of being served with a copy of the report. *Id.*; *see also* Fed. R. Civ. P. 72(b)(2). The Court reviews for clear error those parts of the report and recommendation to which no party has properly objected. *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025); 28 U.S.C. § 636(b)(1). When a party lodges a proper objection, the Court reviews *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Nambiar*, 158 F.4th at 358–59. A proper objection is both timely and specific, meaning it must have "sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Nambiar*, 158 F.4th at 359 (citation omitted). "Merely referring the court to previously filed papers or arguments does not constitute an adequate objection." *Id.* (quoting *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002)).

"When a timely filed objection raises and properly briefs arguments previously rejected by the magistrate judge, the district judge must review those arguments *de novo*." *Id.* at 361. But objections that are "nonspecific or merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition" warrant only clear-error review. *Id.* (quoting *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022)).

Finally, a "proper objection generally may not raise new arguments not previously made before the magistrate judge." *Id.* at 359; *accord Piligian v. Icahn Sch. of Med. at Mt. Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." (citation omitted)).

**B. Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable

inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." A complaint must therefore contain more than "naked assertion[s] devoid of further factual enhancement." Pleadings that contain "no more than conclusions . . . are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss.

*Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (alterations in original) (quoting *Iqbal*, 556 U.S. at 678–79). Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (alteration in original) (citing *Twombly*, 550 U.S. at 555, 557).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)). In that context, "[a] court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis in original).

### C. Conversion

"Under New York law, 'conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 133 (2d Cir. 2022) (quoting *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006)). "To state a claim of conversion, the plaintiff

must allege that (1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another, (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused." *Id.* (quoting *Lefkowitz v. Bank of New York*, 676 F. Supp. 2d 229, 251 (S.D.N.Y. 2009)).

"New York law does not, however, always require that a demand be made and be met by a refusal to make out a claim of conversion." *Leveraged Leasing*, 87 F.3d at 49. For instance, "there is no requirement for demand and refusal if the defendant did not acquire the property through lawful means." *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 451 (S.D.N.Y. 2014) (citing *Leveraged Leasing*, 87 F.3d at 49). Nor is demand necessary where "[it] would be futile because the circumstances show that the defendant knows it has no right to the goods[.]" *Seventh Regiment*, 98 N.Y.2d 249, 260 (2002); *see also Leveraged Leasing*, 87 F.3d at 49–50; *Schottenstein v. Lee*, No. 22-CV-1197 (DLC), 2023 WL 4363002, at *2 (S.D.N.Y. July 6, 2023).

Where a defendant's possession was originally lawful, "a conversion occurs when the defendant refuses to return the property after a demand or sooner disposes of the property[.]" *Leveraged Leasing*, 87 F.3d at 49 (quoting *White v. City of Mount Vernon*, 221 A.D.2d 345 (N.Y. App. Div. 1995)). A defendant who came into possession lawfully "will be liable for transferring the property only if the transfer was in some way wrongful." *Regions Bank v. Wieder & Mastroianni, P.C.*, 526 F. Supp. 2d 411, 414 (S.D.N.Y. 2007), *aff'd*, 268 F. App'x 17 (2d Cir. 2008). For example, a defendant who obtained property lawfully can be liable for conversion where "the defendant knew the transfer would violate the superior property rights of another, yet disposed of the property anyway." *V&A Collection*, 46 F.4th at 134 (internal citations omitted); *see also Leveraged Leasing*, 87 F.3d at 50 ("[E]xercising rights of ownership—by, for example, selling property that you know belongs to someone else—constitutes conversion.").

### D. Aiding and Abetting Conversion

To state a claim for aiding and abetting conversion under New York law, Plaintiff must allege "the existence of a primary violation, actual knowledge of the violation on the part of the aider and abettor, and substantial assistance." *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 533 (S.D.N.Y. 2009); *see also SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018) ("Under New York law, the elements of . . . aiding and abetting a conversion[] and aiding and abetting a fraud are substantially similar." (internal quotations omitted)). To plead knowledge, Plaintiff must allege facts giving rise to a "strong inference" of the defendant's actual knowledge of the underlying harm, or of conscious avoidance such that "it can almost be said that the defendant actually knew because he or she suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge." *Kirschner*, 648 F. Supp. 2d at 544 (citation omitted). To plead substantial assistance, Plaintiff must allege that the defendant "affirmatively assist[ed], help[ed] conceal, or by virtue of failing to act when required to do so enable[d] the [underlying harm] to proceed." *Id.* (citation omitted).

## III. DISCUSSION

The Court treats Plaintiff's Objections as sufficiently specific to merit *de novo* review. Because Plaintiff has not adequately pleaded that the KuCoin Defendants knew they held stolen cryptocurrency when they disposed of it, that Plaintiff made an adequate demand for its return, or that the KuCoin Defendants substantially assisted any conversion, the motion to dismiss is granted.

### a. The SAC Does Not Adequately Plead a Conversion Claim

As Judge Cave correctly concluded, because the SAC does not adequately plead facts that excuse the demand-and-refusal requirement, and does not adequately plead demand or refusal, Plaintiff has failed to state a claim for conversion under New York law.

**i. The SAC Does Not Adequately Plead Facts That Excuse Plaintiff from Pleading Demand and Refusal**

Because the SAC does not adequately plead that the KuCoin Defendants unlawfully came into possession of Plaintiff's cryptocurrency or that the KuCoin Defendants knew that they were in possession of stolen cryptocurrency, Plaintiff is not excused from the demand-and-refusal requirement to state a claim of conversion under New York law.

As an initial matter, the SAC does not allege that KuCoin obtained the stolen cryptocurrency unlawfully in the first instance. Instead, the SAC alleges that bad actors successfully deposited and laundered stolen cryptocurrency through KuCoin. SAC ¶¶ 16, 176. The relevant inquiry to determine whether Plaintiff is excused from the demand-and-refusal requirement is whether he adequately pleaded that the KuCoin Defendants knew that they "ha[d] no right" to Plaintiff's cryptocurrency. *Seventh Regiment*, 98 N.Y.2d at 260.

The Court agrees with Judge Cave that "even with the additional allegations in the SAC, [Plaintiff] has not sufficiently [pleaded] that at the time his cryptocurrency arrived at KuCoin, the KuCoin Defendants actually knew or were willfully blind that the cryptocurrency had been stolen, as could excuse the demand-and-refusal requirement." R&R at 14. Plaintiff's stolen cryptocurrency was allegedly transferred to KuCoin on December 20 and December 21, 2024, *see* SAC ¶ 186, and Plaintiff does not adequately plead that the KuCoin Defendants knew by either date that they were in possession of stolen cryptocurrency.

Plaintiff's allegations that the deposit of his cryptocurrency "would have triggered many of the red flags . . . widely accepted by industry participants," SAC ¶ 180, do not show that the KuCoin Defendants knew the cryptocurrency was stolen. That KuCoin "should have automatically flagged the $600,000 worth of inflows on December 20, 2024 and December 21, 2024 as high-risk deposits," SAC ¶ 186, does not show that the KuCoin Defendants *knew* when they received those deposits that they were someone else's stolen property. Even considered together, *see* Obj. at 12,

these allegations at most plead that the KuCoin Defendants should have known the deposits might be stolen—not that they knew that they were. *See Marks v. Energy Materials Corp.*, No. 14-CV-8965 (GHW), 2015 WL 3616973, at *5 (S.D.N.Y. June 9, 2015) (dismissing conversion claim where plaintiff "pled no facts whatsoever suggesting [defendant] actually knew that [seller] lacked the authority to sell [the property]" and "alleged only that [defendant] was 'on notice of the need' to inquire regarding [seller's] purported authority").

Nor do Plaintiff's allegations regarding the "blacklists" show that KuCoin was aware the deposits were of stolen cryptocurrency. Plaintiff alleges that certain of the deposit addresses were blacklisted on December 20, 2024, and that approximately $100,000 of his stolen cryptocurrency was deposited into one of those addresses the next day. SAC ¶¶ 189–90. Plaintiff alleges that these "blacklists" were "accessible to KuCoin" and "identified [certain] KuCoin wallet addresses as being involved with illicit activity[.]" SAC ¶¶ 10, 58, 183. But these allegations do not support a plausible inference that the KuCoin Defendants knew they possessed stolen cryptocurrency for two reasons. First, that the blacklists were "accessible to KuCoin" does not show that the KuCoin Defendants learned from them that they held Plaintiff's stolen cryptocurrency. Plaintiff does not allege that any of the KuCoin Defendants reviewed the blacklists, received an alert, or otherwise learned that the addresses were blacklisted before December 23, 2024. And KuCoin's alleged membership in the CDA, SAC ¶ 58, establishes that KuCoin had access to the CDA blacklist, not that it knew the information contained in the blacklist. Second, the fact that an address was flagged for "illicit activity" does not show that the KuCoin Defendants knew that any—much less, every—deposit to that address involved stolen property.

Plaintiff also argues that, "whatever [the KuCoin] Defendants knew when the crypto[currency] first arrived on December 20, 2024," their "later acts of dominion are independently actionable." Obj. at 9. On this point, the Court's analysis diverges from the R&R,

which focused on whether the KuCoin Defendants knew the cryptocurrency was stolen when they received it. R&R at 14 ("The key point in time for assessing the allegations of the Defendants' knowledge is when the cryptocurrency arrived at KuCoin . . . "). But *Leveraged Leasing* explains that lawful possession can become unlawful once the possessor is "informed of the defect of his title and ha[s] an opportunity to deliver the property to the true owner." 87 F.3d at 49 (citation omitted). Knowledge gained after receipt but before disposal is therefore also relevant: if the KuCoin Defendants learned after receiving the cryptocurrency that it was stolen and disposed of it anyway, that disposal would be wrongful, and Plaintiff would not need to plead demand and refusal. *See id.* at 50; *V&A Collection*, 46 F.4th at 133; *Regions Bank*, 526 F. Supp. 2d at 416.

Even so, Plaintiff's allegations fall short. The SAC does not adequately plead that the KuCoin Defendants transferred or disposed of Plaintiff's stolen cryptocurrency *after* learning that it had been stolen.

The SAC alleges that "KuCoin permitted six distinct transfers involving Plaintiff Supples' stolen cryptocurrency after the KuCoin deposit addresses were blacklisted[,]" SAC ¶ 232, but, as explained, the addresses' presence on blacklists is not sufficient to show that the KuCoin Defendants knew about the stolen cryptocurrency. And all six of the transfers—four deposits on December 21, 2024 and two transfers to KuCoin hot wallets on December 21 and 22—preceded Plaintiff's December 23 emails to KuCoin. SAC ¶¶ 190–92.

Plaintiff conclusorily alleges that after his December 23 emails, "KuCoin subsequently facilitated the laundering and conversion of the cryptocurrency so it was rendered untraceable, and the cryptocurrency was transferred out of KuCoin." SAC ¶ 185. But the SAC does not say when these events occurred or plausibly allege any specific transfers of Plaintiff's cryptocurrency after December 23, 2024. The SAC alleges only that "[i]n the event that Plaintiff's . . . stolen cryptocurrency exited the KuCoin exchange, KuCoin wrongfully transferred or disposed of" it.

SAC ¶ 229. That allegation is not enough to move the possibility that Plaintiff's cryptocurrency was transferred from KuCoin after December 23, 2024 "across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570.

The July 2025 transfers do not alter this conclusion. The SAC alleges that on July 9 and July 12, 2025, KuCoin "permitted even more cryptocurrency to be transferred" from two blacklisted deposit addresses to KuCoin hot wallets. SAC ¶ 190–91. These transfers occurred after Plaintiff's December 23 notice to KuCoin and after the filing of the amended complaint in this action. *Id.* But the SAC does not allege that those transfers included any of Plaintiff's cryptocurrency; it alleges only that "additional" and "even more" cryptocurrency moved from those addresses. *Id.* That cryptocurrency was transferred from the same deposit addresses is not sufficient to show that KuCoin permitted Plaintiff's stolen cryptocurrency to be transferred.

None of the allegations in the SAC, even when taken together, adequately plead that the KuCoin Defendants knew they were in possession of stolen cryptocurrency before that cryptocurrency was transferred off its platform. Therefore, Plaintiff has failed to allege facts excusing him from pleading demand and refusal.

**ii. The SAC Does Not Adequately Plead that Plaintiff Demanded that His Cryptocurrency Be Returned.**

Because the SAC does not adequately plead facts that excuse the demand-and-refusal requirement, Plaintiff must allege that he demanded the return of his cryptocurrency and that the KuCoin Defendants refused. As Judge Cave correctly concluded, Plaintiff has not adequately pleaded either that he demanded the return of his cryptocurrency or that KuCoin refused. R&R at 16–18.

As Judge Cave explained, to plead a demand, Plaintiff must plead his "legal ownership of a specific identifiable piece of property" and that he issued to the KuCoin Defendants a "demand to return the property[.]" R&R at 16 (quoting *Regions Bank*, 526 F. Supp. 2d at 413–14). Such a

demand must be "sufficiently definite and complete to apprise the defendant of the specific property claimed." *Thyroff v. Nationwide Mut. Ins. Co.*, 360 F. App'x 179, 181 (2d Cir. 2010) (summary order) (citation omitted). The Court respectfully disagrees with Judge Cave that Plaintiff's December 23 communication was specific enough to identify the property he claimed. Though Plaintiff told KuCoin the date of the theft and provided the hackers' Solana address, he did not identify how much of the cryptocurrency held belonged to him. SAC ¶ 184. He wrote that "over 5200 Solana, BTC and Eth were stolen," but asserted that only his Solana was at KuCoin. *Id.* Because the "5200" figure combines three different cryptocurrencies—Solana, Bitcoin, and Ethereum—it does not reveal how many Solana coins, even approximately, were taken from Plaintiff, much less how many were held in the hackers' account at KuCoin. At most, Plaintiff's December 23 email informed KuCoin that Plaintiff was asserting ownership of less than 5,200 Solana coins in a specific address—and maybe not even that, since "over" 5,200 of those coins were stolen. Identifying the address where the stolen property was held is not the same as identifying the stolen property, because the address could hold assets from many sources. Indeed, Plaintiff alleges that the wallet used to launder his cryptocurrency received a $150,000 transfer days earlier, "presumably from the theft of a different victim's crypto." SAC ¶ 188. KuCoin could not reasonably infer from Plaintiff's email that every Solana coin in that address belonged to Plaintiff. Without that information, KuCoin was not "informed of the defect of [its] title" in any specific property or given "an opportunity to deliver the property to the true owner." *Leveraged Leasing*, 87 F.3d at 49 (citation omitted).

Because Plaintiff does not adequately plead that Plaintiff identified the property he claimed with sufficient specificity, the Court need not reach whether Plaintiff adequately requested the return

of that property or whether the KuCoin Defendants refused such a request.[3]

**b. The SAC Does Not Adequately Plead an Aiding and Abetting Conversion Claim**

Judge Cave correctly concluded that Plaintiff has failed to plead that the KuCoin Defendants had actual knowledge of a conversion of Plaintiff's cryptocurrency and has failed to plead that the KuCoin Defendants provided "substantial assistance" in the conversion of Plaintiff's property. R&R at 21–23.

Because the SAC does not plausibly allege that the KuCoin Defendants knew they held Plaintiff's stolen cryptocurrency, it necessarily fails to allege facts giving rise to the "strong inference" of actual knowledge required for aiding and abetting liability. *Kirschner*, 648 F. Supp. 2d at 544. Plaintiff's conscious-avoidance theory fails for the same reasons: allegations that KuCoin had access to blacklists and should have recognized red flags do not show that the KuCoin Defendants "suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge." *Id.* (quoting *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 367–68 (S.D.N.Y. 2007)); *see also United States v. Nektalov*, 461 F.3d 309, 315 (2d Cir.

[3] In any event, the Court agrees with Judge Cave's conclusion that the SAC does not plausibly plead either a demand for the return of the cryptocurrency or a refusal. Plaintiff's only request to KuCoin was to not "let these Solana leave your control"—that is, that KuCoin keep Plaintiff's stolen cryptocurrency. SAC ¶ 184. The only case that Plaintiff cites in support of his contention that a request to freeze property can suffice as a demand—*Republic of Liberia v. Bickford*, 787 F. Supp. 397, 400–02 (S.D.N.Y. 1992), Obj. at 19—does not hold that a request to freeze property, without more, constitutes a demand for its return. There, the plaintiffs alleged they made "repeated demands" for an accounting of the held finances and provided notice to the defendants that they were not "authorized to transfer or dispose" that property, and that defendants "assert[ed] that said monies and other property shall remain at [d]efendants' sole disposition and control[.]" *Id.* at 399, 401–402. Here, Plaintiff does not allege any such facts to support that he made a demand for the return of his property. Nor does the SAC plausibly plead refusal. Plaintiff relies on *Grosz v. Museum of Modern Art*, Opp'n at 15, which recognized that "[a] refusal need not use the specific word 'refuse' so long as it clearly conveys an intent to interfere with the demander's possession or use of his property." 772 F. Supp. 2d at 483 (quoting *Feld v. Feld*, 279 A.D.2d 393, 395 (N.Y. App. Div. 2001)). But the SAC identifies no communication or action that "clearly conveys an intent to interfere" with Plaintiff's ownership of the cryptocurrency. KuCoin's alleged "failure to return Plaintiff's cryptocurrency[,]" Opp'n at 15, cannot be reasonably interpreted as a refusal of Plaintiff's request. Indeed, KuCoin could not have—at the same time—followed Plaintiff's instruction to not "let [the] Solana leave [its] control" and returned those Solana coins to Plaintiff. And unlike in *OL USA LLC v. Maersk A/S*, 730 F. Supp. 3d 66, 70 (S.D.N.Y. 2024), where the defendant "ignored" the plaintiff's communications, the SAC's own screenshots indicate that KuCoin responded to Plaintiff within eight minutes. SAC ¶ 184; R&R at 17–18. Regardless of the content of the response, the fact that KuCoin replied to Plaintiff so quickly undermines any allegation that he was ignored, or that his request "fell on deaf ears." SAC ¶ 185.

2006) ("In our opinions examining the doctrine, we have stressed that it is essential to the concept of conscious avoidance that the defendant must be shown to have decided not to learn the key fact, not merely to have failed to learn it through negligence." (internal quotations and brackets omitted)). At most, Plaintiff alleges facts that support an inference that KuCoin did not follow generally recognized industry standards, not that Plaintiff knew but chose to avoid learning about its possession of Plaintiff's stolen cryptocurrency.

The SAC also fails to plead substantial assistance. Plaintiff points to allegations that KuCoin took custody of deposits, pooled and commingled them in hot wallets, approved transactions, and operated internal market-making functions. Obj. at 23–25; SAC ¶¶ 168–73, 227, 254. But "opening accounts and approving transfers, even where there is a suspicion of fraudulent activity, does not amount to substantial assistance." *In re Agape Litig.*, 681 F. Supp. 2d 352, 365 (E.D.N.Y. 2010)); *see also* Dkt. No. 89 at 26. To the extent that Plaintiff faults KuCoin for failing to block or freeze the relevant accounts, "mere inaction does not amount to 'substantial assistance'" absent a duty to act, which the SAC does not plausibly allege. *SPV Osus Ltd.*, 882 F.3d at 345; *see also* R&R at 22–23.

## IV. LEAVE TO AMEND

Judge Cave recommended that the Court deny Plaintiff leave to amend, reasoning that Plaintiff neither requested leave to amend nor suggested any additional allegations he might plead to bolster his claims. R&R at 23 (citing Dkt. Nos. 100, 106). She also noted that Plaintiff "has now had two—arguably, three—chances to allege viable claims against the KuCoin Defendants, a circumstance in which courts in this District routinely deny further leave to amend." *Id.* (citing *Binn v. Bernstein*, No. 19-CV-6122 (GHW) (SLC), 2020 WL 4550312, at *34 (S.D.N.Y. July 13, 2020) (collecting cases), *adopted by,* 2020 WL 4547167 (S.D.N.Y. Aug. 6, 2020)).

It is the "usual practice" upon dismissing a complaint "to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The

court should freely give leave when justice so requires."). That is especially true where a plaintiff has not yet had the opportunity to amend the complaint with the benefit of a ruling from the Court. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."). Nevertheless, leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch*, 551 F.3d at 126. "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim . . . ." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).

Though there have been three motions to dismiss filed, Plaintiff has only had one opportunity to amend the complaint with the benefit of a ruling from the Court—"[i]t is the District Court's ruling, not [a] defendant's arguments in support of a motion to dismiss, that puts a plaintiff on notice of the complaint's deficiencies." *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017) (summary order) (citing *Loreley Fin. (Jersey) No. 3*, 797 F.3d at 190); *see also id.* ("Before learning from the court what are its deficiencies, the plaintiff cannot know whether he is capable of amending the complaint efficaciously."). The Court therefore does not deny leave to amend based on the number of Plaintiff's prior pleadings.

Plaintiff urges the Court to grant leave to amend, asserting that he "can allege more facts linking his stolen crypto to the CDA blacklist and the IVAN database[.]" Obj. at 25. But additional allegations linking Plaintiff's cryptocurrency to those lists would not cure the SAC's deficiencies. As explained above, an address's appearance on a blacklist does not show that the KuCoin Defendants knew that any particular deposit on their platform was stolen, and more blacklist allegations would

not show an adequate demand, refusal, or transfer of Plaintiff's cryptocurrency by the KuCoin Defendants after they learned it was stolen. Plaintiff's proposed amendments would fail to cure the deficiencies of the SAC and are therefore futile. In any event, because Plaintiff did not request leave to amend before Judge Cave, and because "[n]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all," Plaintiff's argument on this point is waived. *Piligian*, 490 F. Supp. 3d at 716. Accordingly, leave to amend is denied.

## V. CONCLUSION

For the foregoing reasons, the KuCoin Defendants' motion to dismiss is GRANTED. Plaintiff's claims are dismissed with prejudice. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 97, enter judgment for Defendants, and close the case.

SO ORDERED.

Dated: September 29, 2026
New York, New York

GREGORY H. WOODS
United States District Judge